UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA HALEY, Individually and On Behalf of All Others Similarly Situated, | Civil Action No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| | **(ERISA)** |
| vs. | |
| TEACHERS INVESTMENT and ANNUITY ASSOCIATION, | |
| Defendant. | DEMAND FOR JURY TRIAL |

INTRODUCTION

1.     Plaintiff Melissa Haley ("Plaintiff") seeks to recover money that Teachers Investment and Annuity Association ("Defendant") unlawfully took from her retirement account in the Washington University Retirement Savings Plan (the "Washington University Plan"). Plaintiff borrowed money from her retirement account on four separate occasions. She has completely repaid two of the loans, plus interest, and is currently repaying the other two loans. All of the interest Plaintiff paid in connection with those loans should have been credited to Plaintiff's account. Defendant, however, did not credit the full amount of paid interest to Plaintiff's account. Instead, Defendant credited a smaller amount of interest to her account and kept the remainder for itself. By keeping money for itself that should have been credited to Plaintiff's account, Defendant violated and continues to violate the Employee Retirement Income Security Act of 1974 ("ERISA"). The conduct at issue is systematic. Defendant is retaining interest paid by similarly situated investors across the country. The amount of Defendant's ill-gotten gains exceeds $50 million per year.

- 1 -

JURISDICTION

2.     Plaintiff brings this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), and (3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides "district courts of the United States shall have exclusive jurisdiction of civil actions" that bring claims for violations of ERISA.

VENUE

3.     Venue is proper in this District under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. §§ 1391(b) and (c), which provides that in an action bringing claims for violation of ERISA, venue is proper in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. Here, the Defendant has its principal place of business in the District and, therefore, resides in the District and Defendant's alleged breaches took place in this District.

PARTIES

4.     Plaintiff is a participant (as defined by ERISA § (7), 29 U.S.C. § 1002(7)) in the Washington University Plan. The Washington University Plan is an employee pension benefit plan within the meaning of ERSIA §3(2)(A), 29 U.S.C. § 1002(2)(A). Washington University offers to its employees the ability to participate in the Washington University Plan. The Washington University Plan is an individual account plan within the meaning of ERSIA §3(34), 29 U.S.C. § 1002(34).

5.     Plaintiff took four loans from her Washington University Plan individual account. Plaintiff took the first loan on May 10, 2011 in the principal amount of $ 1,612.01. The loan carried an interest rate of 4.42%. She repaid the loan in full on August 29, 2014. Plaintiff took the second loan on January 8, 2013 in the principal amount of $1,000.00. That loan carried an interest rate of

4.22%. She repaid the loan in full on March 10, 2015. Plaintiff took the third loan on September 2, 2014 in the principal amount of $8,500. That loan has a variable interest rate that is currently set at 4.44%. Plaintiff is in the process of paying off the third loan. Plaintiff took the fourth loan on March 17, 2015 in the principal amount of $7,500. The fourth loan has a variable interest rate that is currently set at 4.17%. Plaintiff is in the process of paying off the fourth loan.

6.      Defendant is a life and annuity insurance company organized under the laws of the State of New York with its principal place of business in New York, New York. Defendant provides an array of financial services for employee benefit plans. Defendant provides these services to the Washington University Plan. Defendant also provides these services to similarly situated retirement plans that are within the class as defined below (the "Plans").

NATURE OF THE ACTION

ERISA Fiduciaries

7.      Defendant is an ERISA fiduciary to Plaintiff, the Washington University Plan, and all other similarly situated retirement plans and retirement plan participants. Fiduciaries to retirement plans owe the plans and their participants duties described as the "highest known to the law." *Donovan v. Bierwirth,* 680 F.2d 263, 272 n. 8 (2d Cir.1982),.

8.      ERISA fiduciaries are required to act with the care, skill, prudence and diligence that would be exercised by someone who is experienced and knowledgeable about choosing such service providers and selecting such investments. Most fundamentally, ERISA fiduciaries are required to act solely in the best interests of plan participants. ERISA § 404(a)(1)(A), 29 U.S.C. 1104(a)(1)(A).

Retirement Plan Loans

9.      More than 20% of all participants in retirement plans have plan loans outstanding.

This statistic has held true since the early 2000's. For many retirement plan participants, when the need for short-term liquidity arises, a retirement plan loan provides an attractive solution. Typically, receiving a retirement plan loan is not a taxable event and it has no impact on a participant's credit rating. Assuming the loan is paid back in accordance with its terms (in most cases within five years), it usually will have little impact on retirement savings progress.

10.     In virtually every retirement plan that provides for participant loans, the participant's individual account is the lender and the participant is the borrower. Principal and interest charged on the loan balance is repaid by the participant to the participant's own retirement account. As such, the cost of a retirement loan can be minimal, neutral, or even positive (if the market goes down). In sum, when retirement plan participants borrow from their plan account, they can obtain funds for short-term needs without incurring any tax liability, and they restore their plan accounts by repaying the loan, and the interest paid on the loan, to their accounts.

11.     Ordinarily, when a plan participant borrows from a plan account, the participant is deemed to have invested a portion of his or her account in the loan. The loan proceeds are derived from liquidating the participant's investments, and the loan effectively becomes a "fund" in which the participant has invested. As an example, suppose that a participant has a current plan account balance of $60,000, allocated equally among three different mutual funds, Fund A, Fund B, and Fund C, and the participant elects to borrow $6,000 from the plan account. The plan trustee will liquidate $2,000 from each of the three investment funds and will distribute the $6,000 to the participant in exchange for a note signed by the participant, obligating the participant to repay the loan at a stated rate of interest.

12.     The usual retirement plan loan process is exemplified by the description in the Charles Schwab standardized loan policy for 401(k) plans:

*Each loan shall be an earmarked investment of the Participant's account*. Subject to any restrictions on withdrawals from a particular investment fund, loan proceeds will be taken pro rata from the investment fund or funds in which the Participant's account balance is invested. However, loan proceeds will *not* be taken from any portion of a Participant's account that is invested in an employer stock investment fund. If a Participant has a Personal Choice Retirement Account®, such Participant will be contacted if funds in this account need to be liquidated to provide loan proceeds. As a loan is repaid, a Participant's payments will be allocated to the investments he or she has selected under the Plan (or, where appropriate, investments that are considered the Plan's default investment fund(s)) on a pro-rata basis, based on the investment election in effect on the date a payment is deposited to the Plan. (Emphasis added.)

13.     Participant loans are governed by 29 CFR § 2550.408b-1, which requires, among other conditions, that a loan must bear a reasonable rate of interest. As provided in 29 CFR § 2550.408b-1(e), "[a] loan will be considered to bear a reasonable rate of interest if such loan provides *the plan* with a return commensurate with the interest rates charged by persons in the business of lending money for loans which would be made under similar circumstances." (Emphasis added.)

14.     Suppose at the time of the participant's loan, the commercial rate for such loans is 6%. As a result of the loan transaction described in paragraph 12, the participant's account will have $18,000 invested in each of Fund A, Fund B, and Fund C, and will have $6,000 invested in a loan paying 6% interest. All of the installment loan repayments will be credited to the participant's account, and the participant will earn the rate of interest charged on the loan.

Defendant's Retirement Plan Loans

15.     Defendant does not follow this loan process. Instead, Defendant requires a participant to borrow from Defendant's general account rather than from the participant's own account. In order to obtain the proceeds to make such a loan, Defendant requires each participant to transfer 110% of the amount of the loan from the participant's plan account—in our example,

Fund A, Fund B, and Fund C—to Defendant's "Traditional Annuity,"[1] as collateral securing repayment of the loan. The Traditional Annuity is a general account product that pays a fixed rate of interest, currently 3%.

16.     The Traditional Annuity is a general account product, which means that all of the assets are held in Defendant's general account and are owned by Defendant.  Therefore, Defendant also owns all the assets transferred to its general account to "collateralize" the participant loan.

17.     Because the participant loan is made from Defendant's general account, the participant is obligated to repay the loan to Defendant's general account, and the general account earns all of the interest paid on the loan, in contrast to the loan programs for virtually every other retirement plan in the country, where the loan is made from and repaid to the participant's account and the participant earns all of the interest paid on the loan.

18.     As noted above, Plaintiff currently has two outstanding loans from her Washington University Plan account. The first loan bears a current interest rate of 4.44%, and the second bears a current interest rate of 4.17%. The interest rate for both loans, in another break from standard plan loan policy, is variable. By contrast, as an example, the Schwab standardized loan policy states: "The interest rate on the loan will be a reasonable rate of interest to be determined based on current interest rates charged by persons in the business of lending money for similar loans *at the time the loan is made. The interest rate will remain fixed over the loan term and will not be renegotiated.*" (Emphasis added.) The Traditional Annuity is paying an interest rate of 3%. Therefore, Plaintiff's "collateral" invested in the Traditional Annuity, which is 110% of the loan amount, is earning 3% for Plaintiff, while Defendant is earning 4.44% and 4.17% respectively.

19.     Defendant has engineered a retirement loan process that enables it to earn additional

---

[1] Effective in July 2016, loan "collateral" was invested in a TIAA Retirement Loan certificate.

income at the expense of retirement plan participants equal to the spread between the loan interest rate paid by participants and the interest rate received by participants for investment in the Traditional Annuity (or, now, a Retirement Loan certificate). The loan process that is the subject of this lawsuit is the epitome of self-dealing.

20.     In its capacity as fiduciary to the Washington University Plan, Defendant failed to act in a prudent manner and failed to act exclusively in the retirement plan participants' best interests, in rank violation of ERISA §§ 403 and 404, 29 U.S.C. §§ 1103, 1104, by: (a) requiring collateral for loan repayment to be invested in an investment vehicle in which participants did not benefit from all the investment gain, and in which Defendant profited by taking a portion of the investment return, (b) by charging excessive and unreasonable fees for administering a plan loan program, and (c) requiring a transfer of plan assets to or for the use and benefit of Defendant. That is, there is no legitimate or prudent reason why plan participants who desire to borrow money from their individual accounts are required to first transfer that money, plus 10%, to Defendant's general account, then borrow the money from the general account, and pay Defendant interest on their own borrowed money.

21.     It is worth repeating, Defendant's general account holds ERISA plan assets because participants who borrow money from their retirement plan accounts are required to deposit "collateral" as security for repayment of the money into Defendant's general account.

Washington University Plan Loans

22.     The Washington University Plan offers participants the opportunity to borrow from their retirement accounts, as stated in the Retirement Savings Plan Loan Policy ("Loan Policy") attached as Exhibit 1 to this complaint:

## PARTICIPANT LOANS

Participants may borrow against a portion of the employee, pre-tax contributions of their plan account. Participants may not borrow against the contributions that have been made by the University. All participant loans are administered by the vendor that holds the participant account, TIAA, and are subject to the rules and requirements established by the vendor.

Loan Policy at 1.

23.    Employees of sponsors of qualified retirement plans are "parties in interest" to the employer's plan. ERISA § 3(14), 29 U.S.C. § 1002(14).

24.    A loan between a plan and a party in interest is prohibited by the prohibited transaction rules of ERISA § 406(a)(1)(B), which prohibit the "lending of money or other extension of credit between the plan and a party in interest" in the absence of an available exemption.

25.    Section 408(b)(1) of ERISA provides a statutory exemption for loans to plan participants, provided certain conditions are met, as described in ERISA § 408(b)(1) and the regulations issued thereunder.

26.    Of particular relevance to the claims in this case is 29 CFR 2550.408b-1(a)(3)(i):

The term "participant loan" refers to a loan *which is arranged and approved by the fiduciary administering the loan program primarily in the interest of the participant* and which otherwise satisfies the criteria set forth in section 408(b)(1) of the [ERISA]. . . . *[A] loan program containing a precondition designed to benefit a party in interest (other than the participant) is not afforded relief by section 408(b)(1)* or this regulation. In this regard, section 408(b)(1) recognizes that a program of participant loans, like other plan investments, must be prudently established and administered for the exclusive purpose of providing benefits to participants and beneficiaries of the plan. (Emphasis added.)

27.    The Washington University Plan Loan Policy makes it clear that Defendant is the fiduciary administering the loan program, as quoted above: "All participant loans are administered by the vendor that holds the participant account, TIAA [Defendant], and are subject to the rules and requirements established by the vendor." Exhibit 1, Loan Policy at 1.

28.     Defendant determines what the loan interest rate on participant loans will be: "Participants will be charged a fixed market rate of interest on the loan which is determined by the vendor at the time the loan is initiated." (Loan Policy at 1.) Note, the Washington University Plan Loan Policy provides that the interest rate will be fixed, whereas Plaintiff's loan statement from Defendant state that "Interest on this loan is charged using a variable rate." Therefore, in addition to the other claims made in this Complaint, Defendant is in violation of ERISA § 404(a)(1)(D) requiring plan fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan.  29 U.S.C. § 1104(A)(1)(D).

29.     Defendant requires retirement plan participants who wish to borrow money from the retirement accounts to deposit "collateral" in an amount equal to 110% of the borrowed amount into the TIAA Traditional Annuity or, for loans initiated after May 2016, into a TIAA "Retirement Loan Certificate," as security for repayment of the loan:

> **Collateral**: Participant loans will be secured using the participant's employee, pre-tax contributions in the plan account. The amount of collateral will be 110% of the loan amount. That portion of the participant's account held as collateral will be invested in a TIAA Retirement Loan certificate.
> (Loan Policy at 2.)

30.     Participants' collateral continues to earn interest for the participant's account while the loan is outstanding, but participants do not receive the full amount of interest paid on the loan. Defendant's website states:

> **Does my TIAA loan collateral amount continue to earn interest while my loan is outstanding?**
>
> Yes. The amount held as collateral for your loan will earn TIAA contractual interest, and additional amounts as declared by TIAA's Board of Trustees.

This is not the interest rate to pay back your loan, but rather the rate TIAA will credit your loan collateral.[2]

31.     The rate of return of the Traditional Annuity and the interest rate provided by the Retirement Loan certificate, as well as the interest rate paid by participants for the participant loans, are set at the discretion of Defendant.  Since Defendant earns the spread between the rate provided by the Traditional Annuity or the Retirement Loan certificate and the interest rate of the loan, Defendant determines its compensation for all retirement loans.

32.     One of the conditions for the regulatory exemption from ERISA's prohibited transaction rules is that "no more than 50% of the present value of a participant's vested accrued benefit may be considered by a plan as security for the outstanding balance of all plan loans made to that participant." 29 CFR 2550.408b-1(f)(2)(i).  The Washington University Plan Loan Policy states that a participant cannot borrow more than 45% of the value of the participant's account. The purpose of this limitation is so the remaining 55% of the participant's account can serve as security for repayment of the plan loan.  And even this provision is overmuch security for repayment of the loan. For example, if a participant borrows $9,000 from her account valued at $20,000 and then defaults on repayment of the loan, her account will be reduced by the $9,000 loan amount, and her account will then be valued at $11,000, with no resulting loss or liability to the Plan. The only way the Washington University Plan could suffer a loss (if at all) would be if the remaining value of the participant's account was reduced to zero due to investment losses. Even in that case, the participant's account would be reduced to zero but the Washington University Plan itself would not have suffered any actual loss.

33.     There is no reason for requiring participants who take a loan from their retirement

---

[2] Available at  https://www.tiaa.org/public/support/faqs/loans (last viewed December 20, 2016).

plan account to deposit collateral in the Traditional Annuity or in a Retirement Loan certificate other than to permit Defendant to extract additional fees from plan participants who take loans from their accounts and for Defendant to earn additional compensation for itself, at the expense of retirement plan participants who should receive the entire benefit of interest they have paid on money they borrowed from their retirement plan accounts.

34.     Defendant's loan procedure is a direct violation of the provisions of 29 CFR 2550.408b-1(a)(3)(i).

35.     Under Section 404, a fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act solely in the best interests of the participants and beneficiaries. Defendant, by creating and engaging in the activities identified herein with respect to retirement plan loans has and continues to violate Section 404 of ERISA.

36.     Prior to July, 2016, the Washington University Plan utilized two record keepers and two custodians. The Washington University Plan Annual Returns field on Form 5500 during this period identify Defendant and Vanguard as both record keepers and custodians to the plan. The Washington University Plan's 2014 Form 5500 states:

> The Plan provides for a separate accumulation account for each Participant that meets the requirements of Internal Revenue Code (IRC) Section 403(b). Plan contributions are invested, at the direction of each Participant, in one or more of the Funding Vehicles available to Participants under the Plan. "Funding Vehicles" means any group or individual annuity contract that meets the requirements of Code Section 403(b)(l) or custodial account that meets the requirements of Code Section 403(b)(7) that are approved by the Plan Administrator and issued by **TIAA-CREF or Vanguard Fiduciary Trust Company ("Vanguard"), collectively the "Plan Custodians"**, with respect to a Participant or the Plan.

Washington University Savings Plan 2014 Form 5500, Independent Auditor's Report at p. 5. (Emphasis added).

37.     Participants who chose to invest in the Vanguard menu of investment choices, and who took a loan from their retirement accounts were not subject to the same self-dealing

procedures imposed by Defendant. Instead, principal loan repayments and all interest payments were credited entirely by Vanguard to participants' account.

38.    29 C.F.R. 2550.408b-2(c) states in no uncertain terms that, "*[n]o contract* or arrangement for services between a covered plan and a covered service provider, nor any extension or renewal, *is reasonable within the meaning of section 408(b)(2) of the Act* and paragraph (a)(2) of this section *unless* the "covered service provider" (specifically defined to include plan record keepers, custodians, brokers and investment platform providers) receives no more than reasonable compensation in relation to the services provided. *Id*. (Emphasis added).

39.    More specifically, a covered service provider must disclose to the responsible plan fiduciary, *inter alia*, all indirect compensation, including:

> *A description of all indirect compensation* (as defined in paragraph (c)(1)(viii)(B)(2) of this section) that the covered service provider, an affiliate, or a subcontractor reasonably expects to receive in connection with the services described pursuant to paragraph (c)(1)(iv)(A) of this section; including identification of the services for which the indirect compensation will be received, identification of the payer of the indirect compensation, and a description of the arrangement between the payer and the covered service provider, an affiliate, or a subcontractor, as applicable, pursuant to which such indirect compensation is paid.
>
> …
>
> If the covered service provider reasonably expects *recordkeeping services* to be provided, in whole or in part, without explicit compensation for such recordkeeping services, *or when compensation for recordkeeping services is offset or rebated based on other compensation received by the covered service provider, an affiliate, or a subcontractor, a reasonable and good faith estimate of the cost to the covered plan of such recordkeeping services*, including an explanation of the methodology and assumptions used to prepare the estimate and a detailed explanation of the recordkeeping services that *will be provided to the covered plan*. The estimate shall take into account, as applicable, the rates that the covered service provider, an affiliate, or a subcontractor would charge to, or be paid by, third parties, or the prevailing market rates charged, for similar recordkeeping services for a similar plan with a similar number of covered participants and beneficiaries.

29 C.F.R. 2550.408b-2(c)(1)(iv)(C)(2), (D)(2) (Emphasis added.)

40.     If the requirements of 29 C.F.R. 2550.408b-2(c) are not met, the responsible plan fiduciary's decision to enter into a contract with a service provider to provide services to the plan constitutes a non-exempt prohibited transaction, in violation 29 U.S.C. § 1106, unless the responsible plan fiduciary can establish:

> The responsible plan fiduciary did not know that the covered service provider failed or would fail to make required disclosures *and reasonably believed* that the covered service provider disclosed the information required by paragraph (c)(1)(iv) or (vi) of this section;

> The responsible plan fiduciary, *upon discovering that the covered service provider failed to disclose the required information, requests in writing that the covered service provider furnish such information*; and

> If the covered service provider fails to comply with such written request within 90 days of the request, then the *responsible plan fiduciary notifies the Department of Labor* of the covered service provider's failure, in accordance with paragraph (c)(1)(ix)(E) of this section.

29 C.F.R. 2550.408b-2(c)(1)(ix) (emphasis added).

41.     None of the Annual Returns for the Washington University Plan filed with the US Department of Labor on Form 5500 contain any information or disclosure that Defendant is receiving indirect compensation with respect to the loan program by keeping a portion of the interest on paid by plan participants on amounts borrowed from their own accounts.

## CLASS ACTION ALLEGATIONS

42.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of a qualified retirement plan to bring an action individually on behalf of the plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109(a).

43.     In acting in this representative capacity, and to enhance the due process protections of unnamed retirement plan participants and beneficiaries of such plans, as an alternative to direct individual actions on behalf of the plan under 29 U.S.C. §§1132(a)(2) and (3), Plaintiff seeks to

certify this matter as a class action on behalf of the Washington University Plan and all other similarly situated retirement plans that are serviced by Defendant and that offer participant loans. Plaintiff seeks to certify, and to be appointed as representative of, the following class ("Class"):

> All individual account retirement plans qualified under Code section 403(b) and serviced by Teachers Investment and Annuity Association that offer a participant loan program at any time from February 5, 2011 through the date of judgment.

44. This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. The proposed Class includes hundreds if not thousands of 403(b) plans and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to the Class because the illegal participant loan procedures described in the preceding allegations were applied universally to all 403(b) plans for which Defendant provides investment, record keeping and other services. Thus, common questions of law and fact include the following, without limitation: whether Defendant arranged and administered a loan program that contained elements designed to benefit Defendant at the expense of Plaintiff and putative Class members in violation of ERISA Section 404(a)(1); whether the loan program designed and administered by Defendant constitutes prohibited transactions in violation of ERISA Sections 406(a)(1)(B), 406(a)(1)(D), and 406(b)(1); the damages suffered by Plaintiff and putative Class members; and what Class-wide equitable and other relief the Court should impose in light of Defendant's ERISA violations.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant in the Washington University Plan during the time period at issue in this action, and all similarly situated plans and plan participants were harmed in a similar fashion by Defendant's ERISA violations.

d.      Plaintiff is an adequate representative of the Class because she was a participant in the Washington University Plan, she took several participant loans from the Washington University Plan, she has no interest that is in conflict with the Class, she is committed to the vigorous representation of the Class, and she has engaged experienced and highly qualified ERISA and class action attorneys to represent the Class.

45.      Prosecution of separate actions by individual participants or beneficiaries for these breaches of fiduciary duties would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant in respect to the discharge of its fiduciary duties to the Plaintiff and putative Class members.

46.      A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all putative Class members is impracticable, the losses suffered by individual retirement plan participants and individual plans may be small and it would be impracticable to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no Class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

47.      Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

<u>COUNT I</u>
**Prohibited Transaction – Lending of Money or Other Extension of Credit Between a Plan
and a Party in Interest; Breach of Duties of Loyalty and Prudence;
Excessive Investment and Service Provider Fees**

48.     Plaintiff repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

49.     ERISA § 406(a)(1)(B), 29 U.S.C. §1106(a)(1)(B), provides that a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect lending of money or other extension of credit between the plan and a party in interest.

50.     Defendant is a fiduciary responsible for arranging for and administering the participant loan program with respect to the Plans.

51.     Defendant is a fiduciary responsible for determining the interest rate for participant loans, for transferring assets from the accounts of participants who take loans from their retirement accounts to the Defendant's Traditional Annuity or to a Retirement Loan certificate, and for determining the interest rate participants will receive on their loan "collateral" invested in the Traditional Annuity or in Retirement Loan certificate.

52.     By designing and administering a loan program in a manner intended to benefit Defendant at the expense of Plaintiff and Class members, violated its duty of loyalty set forth in ERISA § 404(a).

53.     By designing and administering a loan program that violated the conditions for the exemption available for plan loans set forth in 29 CFR 2550.408b-1, Defendant has caused the Washington University Plan and the Plans to engage in prohibited transactions in violation of ERISA § 406(a).

54.     Defendant is liable under 29 U.S.C. §1109(a) to make good to Plaintiff and the

Class losses resulting from the prohibited transactions alleged in this Count and is subject to other equitable or remedial relief as appropriate.

<u>COUNT II</u>
**Prohibited Transaction--Transfer of Plan Assets to or for the Use of a Party in Interest; Dealing With the Assets of a Plan in Its Own Interest or Its Own Account**

55.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

56.    ERISA § 406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D), prohibits a plan fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect… transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

57.    ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) provides that a "party in interest" includes "a person providing services to [a] plan."

58.    ERISA § 406(b)(1), 29 U.S.C. §1106(b)(1) prohibits a plan fiduciary from dealing with the assets of a plan in its own interest or for its own account.

59.    Defendant is a party in interest with respect to Plaintiff, the Washington University Plan,  and the Class, providing record keeping, custodial, and other investment and administrative services to qualified 403(b) retirement plans across the country.

60.    The requirement that retirement plans must transfer a portion of a participant's account to Defendant as security for repayment participant plan loan constitutes a prohibited transfer of plan assets to or for the use and benefit of Defendant, a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D).

61.    By requiring that the Plaintiff and Class members transfer a portion of a participant's retirement savings to Defendant as security for repayment of a participant loan, as a

result of which Defendant will earn the spread between the interest charged to the participant for the loan and the interest paid by Defendant to the plan participant through the Traditional Annuity or the Retirement Loan certificate, Defendant is dealing with plan assets for its own interest or its own account in violation of ERISA § 406(b)(1), 29 U.S.C. §1106(b)(1).

62.     Defendant is liable under 29 U.S.C. §1109(a) for all losses to Plaintiff and Class members resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

COUNT III
**Prohibited Transaction - Excessive and Unreasonable Compensation for Services in Violation of ERISA §408(b)(2)**

63.     Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

64.     Section 406(a)(1)(C) of ERISA, 29 USC § 1106(a)(1)(C), generally prohibits the direct or indirect furnishing of services between a plan and a party-in-interest.

65.     Section 408(b)(2) of ERISA, 29 USC § 1108(b)(2)  exempts from the prohibitions of ERISA § 406(a)(1)(C) "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, ***if no more than reasonable compensation is paid therefor***" (emphasis added).

66.     Defendant sets its own compensation for administering retirement participant plan loans by determining the interest rate to be charged for participant loans and determining the interest rate that would be paid by the Traditional Annuity or the Retirement Loan certificate, earning as compensation the spread between those two interest rates.

67.     The spread between the interest rates charged for participant loans and the interest rates that would be paid by the Traditional Annuity or the Retirement Loan certificate constitutes

excessive and unreasonable compensation in relation to the services provided.

68.      By creating a process that measured Defendant's compensation for the loan program as the spread between the rate charged for a participant loan the rate paid on participants' collateral, Defendant is effectively earning an asset-based fee for a fixed level of service, which constitutes excessive and unreasonable compensation.

69.      Defendant is liable under 29 U.S.C. §1109(a) for any losses to Plaintiff and the Class resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

COUNT IV
**Breach of Fiduciary by Failing to Administer the Plan in Accordance With the Documents and Instruments Governing the Plan**

70.      Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

71.      ERISA § 404(a)(1)(D) requires plan fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan.  29 U.S.C. § 1104(A)(1)(D).

72.      The Washington University Plan Loan Policy provides that the interest rate will be fixed, whereas Plaintiff's loan statement from Defendant state that "Interest on this loan is charged using a variable rate."

73.      Charging participants a variable interest rate on plan loans when the Loan Policy, one of the documents or instruments governing the Washington University Plan, requires that loans carry a fixed rate of interest, violates Defendant's fiduciary obligation to discharge its duties in accordance with the documents and instruments governing the plan.

74.      Defendant is liable under 29 U.S.C. §1109(a) for any losses to Plaintiff and the Class resulting from the breaches of fiduciary duty alleged in this Count and is subject to other

equitable or remedial relief as appropriate.

## COUNT V

### Non-Fiduciary Liability for Fiduciary Breach

75.     Plaintiff repeats and realleges the allegations contained above as if fully stated herein.

76.     Washington University, as a fiduciary to the Washington University Plan, is a fiduciary with respect to the selection of Defendant as the record keeper, investment manager and retirement plan participant loan administrator.

77.     The authority provided in ERISA Section 502(a)(3) to a plan participant, beneficiary, or fiduciary to bring a civil action for appropriate equitable relief extends to a suit against a non-fiduciary "party in interest" to a prohibited transaction barred by section 406.[3]

78.     Washington University, as the named fiduciary to the Washington University Plan, has either failed adequately to understand the details and consequences of Defendant's loan procedures and the resulting illegal transfer of plan assets, or Defendant's unlawful use of plan assets, or Defendant's excessive and unreasonable compensation, or, understanding the consequences of Defendant's unlawful loan procedure, nonetheless approved such procedure, thereby causing the Washington University Plan to engage in transactions prohibited by ERISA § 406.

79.     Defendant knew or should have known that its loan program violated sections 406(a) and 406(b) of ERISA and, as the recipient of (i) an illegal transfer of plan assets, and (ii) excessive and unreasonable compensation for administration of a plan loan program, is liable to Plaintiff and Class members for disgorgement of the proceeds of the illegal arrangement.

---

[3] *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

80.     Defendant is liable under 29 U.S.C. §1109(a) for losses to Plaintiff and the Class resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.


PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

A.     Certify this action as a class action as stated here and appoint Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B.     Declare that Defendant breached its fiduciary duties to Plaintiff and the Class;

C.     Enjoin Defendant from further violations of its fiduciary responsibilities, obligations, and duties and from further engaging in transactions prohibited by ERISA;

D.     Order that Defendant restore to Plaintiff and the Class all losses resulting from its serial breaches of fiduciary duty;

E.      Award Plaintiff reasonable attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Class;

F.     Order Defendant to pay prejudgment interest; and

G.     Award such other and further relief as the Court deems equitable and just.

DATED this 3rd day of February, 2017.

By:     /s/ John J. Nestico
        John J. Nestico (JN8156)
        Garrett W. Wotkyns*
        Michael McKay*
        SCHNEIDER WALLACE COTTRELL
        KONECKY WOTKYNS LLP
        8501 N. Scottsdale Road, Suite 270
        Scottsdale, Arizona  85253
        Telephone: (480) 428-0145
        Facsimile: (866) 505-8036
        jnestico@schneiderwallace.com

- 21 -

gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com


Todd Schneider*
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California  94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com


Todd S. Collins*
Shanon J. Carson*
Ellen T. Noteware*
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365
tcollins@bm.net
scarson@bm.net
enoteware@bm.net
*Attorneys for Plaintiff*


*Pro Hac Vice application forthcoming