UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA HALEY, *individually and on behalf of all others similarly situated*,<br><br>                          Plaintiff,<br><br>            -v-<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,<br>                          Defendant. | 17-CV-855 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Melissa Haley brings this putative class action against Defendant Teachers Insurance and Annuity Association of America ("TIAA"), alleging that TIAA breached its fiduciary duty to the Washington University Retirement Savings Plan under section 404(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a), and engaged in prohibited transactions in violation of sections 406(a)(1) and 406(b), 29 U.S.C. §§ 1106(a)(1), 1106(b).  Plaintiff seeks monetary and equitable relief under ERISA.  Defendant moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  For the reasons that follow, the motion is granted in part and denied in part.

## I.     Background

Unless otherwise noted, the following facts are taken from the Corrected Class Action Complaint (the "Complaint") and are assumed true for purposes of this motion.

Plaintiff Melissa Haley is an employee of Washington University and a participant in the Washington University Retirement Savings Plan ("the Plan"), an employee pension benefit plan regulated by ERISA.  (Dkt. No. 5 ("Compl.") ¶¶ 1, 4; Dkt. No. 22-1 ("SPD") at 3, 5.)  Defendant

TIAA is an insurance company that provides financial services to employee benefit plans, including the Plan.  (Compl. ¶ 6.)

The Plan offers participants the opportunity to take out a loan against a portion of their retirement accounts.  (Compl. ¶ 22; Dkt. No. 1-1 at 2.)  Washington University, the Plan Administrator (SPD at 20), contracted with two outside vendors, TIAA and Vanguard, to administer these participant loans.  (SPD at 12; Dkt. No. 22-5.)[1]  For loans administered by TIAA, participants are "require[d] . . . to borrow from Defendant's general account rather than from the participant's own account."  (Compl ¶ 15.)  Thus, participants must first "transfer 110% of the amount of the loan from the participant's plan account . . . to Defendant's 'Traditional Annuity,'" a TIAA financial product that pays a fixed rate of interest.[2]  (Id.)  The amount transferred to a Traditional Annuity serves as the collateral securing the loan.  (Id.).  The participant then repays the loan to Defendant's general account, which also earns the interest paid on the loan.  (Id. ¶ 17.)  The interest rate for TIAA's participant loans is variable.  (Id. ¶¶ 18, 28.)  Plaintiff alleges that Defendant has discretion to set the variable interest rate that

---

[1]  "The Court can properly consider the Plan and the Summary Plan Description [('SPD')] on this motion to dismiss because they are essential to the plaintiffs' ERISA claims," and "the plan documents plainly are integral to [the] complaint."  *Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 568 n.3 (S.D.N.Y. 2012) (second quoting *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011)).  Also, "[i]n resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

[2]  At the time this suit was filed, the Traditional Annuity paid 3% interest.  (Compl. ¶ 15.)  For loans initiated after May 2016, participants must deposit their collateral in a different instrument, called a "Retirement Loan Certificate."  (Compl. ¶ 29.)  There is no indication in the Complaint that these two instruments differ in any meaningful way.  For ease of reference, the Court will hereinafter use the term "Traditional Annuity" to signify any investment vehicle in which TIAA houses participants' loan collateral.

participants pay on their loans and the interest rate that participants earn on their collateral. (Compl. ¶ 31.)

Plaintiff alleges that TIAA's retirement loan process is anomalous: Usually, loans are made directly from the participant's retirement account, with no transfer of funds to the loan vendor's general account, and interest rates on participant loans are typically fixed. (*Id.* ¶¶ 17–18.) TIAA retains for itself the difference, or "spread," between (a) the loan interest rate paid by participants and (b) the interest rate received by participants as investment income from the Traditional Annuity. (*Id.* ¶ 19.) In other words, participants do not receive the full amount of the interest they earn on their collateral, because some of it (*i.e.*, the "spread") is taken by TIAA as compensation for administering the loan. (Compl. ¶¶ 30–31.)

Plaintiff took out four separate participant loans: (1) in 2011, she took out a loan for $1,612.01, which carried an interest rate of 4.42%; (2) in 2013, she took out a $1,000 loan, with a 4.22% interest rate; (3) in 2014, she took out an $8,500 loan, with a variable interest rate currently set at 4.44%; and (4) in 2015, she took a $7,500 loan, with a variable interest rate currently set at 4.17%. (Compl. ¶ 5.) Plaintiff has fully repaid the first and second loans, and she is in the process of repaying the third and fourth. (*Id.*)

Plaintiff filed this putative class action in February 2017, claiming that Defendant's administration of retirement loans to Plan participants violates ERISA. Counts I through IV allege that TIAA itself violated its duties as an ERISA fiduciary, whereas Count V alleges that TIAA is liable as a nonfiduciary for breaches by the Plan Administrator. (Compl. ¶¶ 48–80.) TIAA has moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. (Dkt. No. 20.)

## II.    Legal Standards

"Article III restricts [the subject matter jurisdiction of] federal courts to the resolution of cases and controversies. . . . That restriction requires that the party invoking federal jurisdiction have *standing*—the personal interest that must exist at the commencement of the litigation." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 55 (2d Cir. 2016) (second alteration in original) (quoting *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 732 (2008)).

"A Rule 12(b)(1) motion challenging subject matter jurisdiction [for lack of Article III standing] may be either facial or fact-based.  When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the 'Pleading'), the plaintiff has no evidentiary burden." *Id.* at 56.  "Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading." *Id.* at 57.  In opposition to a fact-based motion, plaintiffs "need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* (quoting *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)).  But "if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," then the plaintiff is "entitled to rely on the allegations in the Pleading," *id.*, which must be accepted as true and construed in favor of the plaintiff, *see Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 357 (2d Cir. 2016).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] judge ruling on a

defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, courts must draw "all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007).

## III. Discussion

TIAA moves to dismiss for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). The Court addresses each in turn.

### A. Standing

"[T]he irreducible constitutional minimum of standing contains three elements: (1) an injury in fact to a legally protected interest that is both (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical, (2) a causal connection between the injury and the conduct complained of, and (3) that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Crupar-Weinmann v. Paris Baguette Am., Inc.*, 861 F.3d 76, 79 (2d Cir. 2017) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

TIAA contends that Plaintiff has failed to plausibly allege injury-in-fact. (Dkt. No. 21 at 9–10.)[3] It argues that Plaintiff was not actually injured because she actually saved money on

---

[3] It is clear that the second and third elements of standing are adequately pleaded here. Plaintiff's alleged injury, *i.e.*, the loss of interest on her retirement account funds, is "fairly traceable to the defendant's allegedly unlawful conduct," *i.e.*, its procedures and compensation for administering retirement loans. *Lujan*, 504 U.S. at 590 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). And her injury is "likely to be redressed by the requested relief," *i.e.*, money

fees by using TIAA, rather than Vanguard, to administer her loans. (Dkt. No. 21 at 10.) According to TIAA's calculations, Vanguard's retirement loan program, which charges participants fixed fees, would have cost Plaintiff approximately $500–600 *more* in total. (Dkt. No. 21 at 7.) TIAA relies on *Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P. v. State St. Corp.*, No. 09 Civ. 10533, 2010 WL 1223777 (D. Mass. Mar. 25, 2010), in which the plaintiff failed to allege injury-in-fact on an ERISA claim for breach of the duty of prudence regarding investment strategy. The *Fishman* court "compar[ed] the performance of the imprudent investments with the performance of a prudently invested portfolio" and found that the defendants' allegedly imprudent investments actually outperformed a hypothetical prudently invested portfolio. *Id.* at *4, 7 (quoting *Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008)). Therefore, the court held that injury-in-fact was not plausibly alleged.

In contrast, Plaintiff has adequately alleged injury-in-fact here. Because TIAA contests standing based on evidence beyond the pleadings (Dkt. No. 21 at 7 n.12), the Court treats its Rule 12(b)(1) motion as "fact-based" rather than "facial." *See Carter*, 822 F.3d at 57. At this stage, however, TIAA's evidence of Vanguard's fees is insufficient to "contradict [Plaintiff's] plausible allegations," which are "themselves sufficient to show standing"; thus, Plaintiff is "entitled to rely on the allegations in the Pleading" to establish standing. *Id.* In other words, the Court concludes that TIAA's evidence that Vanguard's fees would have been higher is not enough, standing alone, to negate Plaintiff's allegations that TIAA's fee structure caused her injury-in-fact.

---

damages and an injunction prohibiting defendant's allegedly illegal conduct going forward. *Id.* (quoting *Allen*, 468 U.S. at 751).

At bottom, Plaintiff alleges that she was injured because TIAA's retirement loan fees were unreasonably high, rendering various aspects of TIAA's loan program impermissible under ERISA. (*E.g.*, Compl. ¶¶ 65, 68.) If this is true, Plaintiff's financial injury clearly constitutes an injury-in-fact. *See, e.g.*, *Malone ex rel. Univ. of Chicago Ret. Income Plan for Employees v. Teachers Ins. & Annuity Ass'n of Am.*, No. 15 Civ. 8038, 2017 WL 913699, at *3 (S.D.N.Y. Mar. 7, 2017) ("Plaintiffs allege the Plans are being overcharged for defendant's services as the Plans' services provider. This is a concrete injury-in-fact."). As Plaintiff points out, Vanguard's fees are not necessarily the proper baseline for evaluating whether TIAA's fees were actually unreasonable, as Defendant has introduced no evidence that Vanguard's more expensive fees are themselves ERISA-compliant. (Dkt. No. 26 at 11.)

TIAA's failure to identify an appropriate baseline for evaluating whether Plaintiff was in fact injured distinguishes this case from *Fishman*. In that case, even the plaintiff's expert "agree[d] with the conclusion that the hypothetical investments would have been outperformed by the actual investments made by the defendants." *Fishman*, 2010 WL 1223777, at *7. Without more persuasive evidence that its fees did not actually injure Plaintiff, Defendant cannot shift the burden to Plaintiff "to come forward with evidence of [her] own" to demonstrate the existence of standing at the motion-to-dismiss phase. *Carter*, 822 F.3d at 57; *see also Watson v. Consol. Edison of N.Y.*, 594 F. Supp. 2d 399, 407 (S.D.N.Y. 2009) ("[T]he question of whether the benefits plaintiffs received . . . were in fact the actuarial equivalent of benefits pursuant to other pension plans presents a complex question of fact that is not properly resolved on a motion to dismiss.").[4]

---

[4] The parties also dispute whether Plaintiff would have standing to seek injunctive relief under ERISA § 502(a)(3), even if she had not adequately alleged a financial injury-in-fact.

TIAA's Rule 12(b)(1) motion is therefore denied.

## B.     Merits

TIAA also moves to dismiss the Complaint for failure to state a claim.  As a threshold

matter, it contends that Counts I through IV fail because Plaintiff has not plausibly alleged that

TIAA was an ERISA fiduciary with respect to its retirement loan program.  (Dkt. No. 21 at 11–

16.)  In addition, it claims that Plaintiff has failed to state a claim as to all counts on the merits.

(Dkt. No. 21 at 17–22.)

### 1.     Fiduciary Status

"The 'threshold question' in every case alleging breach of fiduciary duty is whether the

service provider 'was acting as a fiduciary . . . when taking the action subject to [the]

complaint.'"  *Rosen v. Prudential Ret. Ins. & Annuity Co.*, No. 17 Civ. 239, 2017 WL 4534782,

at *2 (2d Cir. Oct. 11, 2017) (alterations in original) (quoting *Pegram v. Herdrich*, 530 U.S. 211,

226 (2000)).  Under the relevant ERISA provisions, "a person is a fiduciary with respect to a

plan to the extent (i) he exercises any discretionary authority or discretionary control respecting

management of such plan or exercises any authority or control respecting management or

disposition of its assets, . . . or (iii) he has any discretionary authority or discretionary

responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  "Subsection one

imposes fiduciary status on those who exercise discretionary authority, regardless of whether

such authority was ever granted; [s]ubsection three describes those individuals who have actually

been granted discretionary authority, regardless of whether such authority is ever exercised."

---

(*See* Dkt. No. 26 at 13; Dkt. No. 27 at 4–5.)  The Court need not reach these arguments, in light
of its conclusion that Plaintiff has adequately alleged a monetary injury.

*Rosen*, 2017 WL 4534782, at *2 (alteration in original) (quoting *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 63 (2d Cir. 2006)).

"ERISA . . . defines 'fiduciary' not in terms of formal trusteeship, but in *functional* terms of control and authority over the plan . . . ." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262 (1993). Therefore, in determining fiduciary status, courts consider "the actual discretionary authority held by the purported fiduciary rather than its particular label or title." *Rosen*, 2017 WL 4534782, at *2. "The Supreme Court has emphasized the limiting effect of the statutory phrase 'to the extent'" in § 1002(21)(A) "because an ERISA fiduciary 'may wear different hats.'" *Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070, 2017 WL 2684065, at *2 (S.D.N.Y. June 20, 2017) (quoting *Pegram*, 530 U.S. at 225). "Accordingly, 'a person may be an ERISA fiduciary with respect to certain matters but not others.'" *Id.* (quoting *Coulter v. Morgan Stanley & Co.*, 753 F.3d 361, 366 (2d Cir. 2014)).

The key question is therefore "whether [TIAA] was acting as a fiduciary (that is, was performing a fiduciary function) *when taking the action subject to complaint*." *Pegram*, 530 U.S. at 226 (emphasis added). TIAA contends that it is not a fiduciary with respect to the design of its participant loan program or its negotiations about fees with the Plan Administrator. (Dkt. No. 21 at 12–15.)

In general, "[a]n entity that negotiates a contract with an ERISA benefits plan at arm's length and has no other relationship to the plan . . . is not a fiduciary with respect to the selection of the contract terms governing the plan." *Hannan v. Hartford Fin. Servs., Inc.*, 688 F. App'x 85, 88–89 (2d Cir. 2017); *see also Santomenno v. Transamerica Life Ins. Co.*, No. 16-56418, 2018 WL 1022460, at *4 (9th Cir. Feb. 23, 2018) (noting that "three of our sister Circuits have held that a plan administrator is not an ERISA fiduciary when negotiating its compensation with

a prospective customer" and adopting the same rule). This is because an outside vendor generally "has no authority over or responsibility to the plan and presumably is unable to exercise any control over the [plan] trustees' decision whether or not, and on what terms, to enter into an agreement with [it]." *Hannan*, 688 F. App'x at 89 (alterations in original) (quoting *F.H. Krear & Co. v. Nineteen Named Trs.*, 810 F.2d 1250, 1259 (2d Cir. 1987)). Nonetheless, a vendor can "can . . . *become* a fiduciary with respect to particular contract terms, such as the terms of its own compensation, if the terms grant it *discretionary authority or control*." *Id.* (emphasis added); *see also Patrico*, 2017 WL 2684065, at *3 ("After the service provider enters into an agreement with a plan, however, 'the agreement may give [the service provider] such control over factors that determine the actual amount of its compensation that [it] thereby becomes an ERISA fiduciary with respect to that compensation.'" (alterations in original) (quoting *F.H. Krear*, 810 F.2d at 1259)). Therefore, as the parties agree, TIAA is a fiduciary with respect to the loan program, and its attendant fees, only if it (a) exercised some discretionary authority (b) when taking the action subject to complaint.

Among other things, Plaintiff points to TIAA's "control and discretion to change the 'Rate Schedule' for all plan participants" in support of her contention that TIAA exercised sufficient control over its fees. (Dkt. No. 26 at 15.) The Retirement Loan Contract between TIAA and Washington University provides that TIAA "may, from time to time substitute a new Rate Schedule" for the one initially established by the contract. (Dkt. No. 22-5 at 24.) The original Rate Schedule sets the interest rate that participants will receive on their loan collateral rate at 3%. (*Id.*) In short, under the contract, participants' collateral will earn 3% during the life of their loan, *unless* TIAA chooses to change the Rate Schedule.

TIAA's compensation consists of the "spread between the loan interest rate paid by participants and the interest rate received by participants for investment in the Traditional Annuity." (Compl. ¶ 19.) Because the Rate Schedule is the subtrahend in the equation used to determine TIAA's fees, TIAA effectively has *discretion* to increase or decrease its fees by adjusting the Rate Schedule.[5]

The fact that TIAA has discretion to change the Rate Schedule is not, however, sufficient to make it an ERISA fiduciary; it must also have been "performing a fiduciary function . . . *when taking the action subject to complaint*." *See Pegram*, 530 U.S. at 226 (emphasis added); *see also In re Express Scripts/Anthem ERISA Litig.*, No. 16 Civ. 3399, 2018 WL 339946, at *16 (S.D.N.Y. Jan. 5, 2018) ("[T]he guiding question is whether [Defendant] was acting as a fiduciary 'when taking the action subject to complaint,' [and] whether or not [Defendant] exercised discretion with respect to other aspects of Plan administration is immaterial." (quoting *Pegram*, 530 U.S. at 226)). In other words, in order to establish fiduciary status, plaintiffs must also allege a "nexus" between defendants' discretion and "the wrongdoing alleged in the Complaint." *Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co. (U.S.A)*, 768 F.3d 284, 297 (3d Cir. 2014).

Critically, the Complaint is devoid of any allegations that TIAA actually exercised its discretion over the Rate Schedule in order to raise its fees. *See id.* at 296 (holding that plaintiffs had not adequately alleged nexus where they failed to "allege that [Defendant] breached a

---

[5]    In mathematical terms: TIAA's Compensation (or "spread") = (Loan Interest Rate) – (Rate Schedule). (Dkt. No. 22-5 at 18, 24.)

The Loan Interest Rate is "variable." As explained below, the Retirement Loan Contract makes this variable rate contingent on a "Reference Interest Rate," which is determined by factors over which TIAA may have discretion under certain circumstances. (*See* Dkt. No. 22-5 at 18.)

fiduciary duty by . . . altering their fees").  To the contrary, the Complaint alleges that the Rate

Schedule is currently 3%.  (Compl. ¶ 15.)  This initial 3% rate was not set at TIAA's discretion,

but was negotiated as part of TIAA's contract with Washington University.  *See, e.g.*, *Patrico*,

2017 WL 2684065, at *3 ("[W]hen a service provider that has no relationship to an ERISA plan

is negotiating a contract with that plan, the service provider 'is not an ERISA fiduciary with

respect to the terms of the agreement for [its] compensation.'" (second alteration in original)

(quoting *F.H. Krear*, 810 F.2d at 1259)).  The absence of a nexus between TIAA's discretion

over the Rate Schedule and the challenged fee structure precludes Plaintiff from establishing

fiduciary status on this basis.

Plaintiff's other attempts to establish fiduciary status also fail for similar reasons.  First,

Plaintiff argues that TIAA has "control and discretion to set the interest rate it pays to all Plan

participants" who take out retirement loans.  (Dkt. No. 26 at 15.)  However, in support of this

argument, Plaintiff cites the section of the Retirement Loan Contract that defines the Loan

Interest Rate that participants *pay* on their principal.  (*Id.*; Dkt. No. 22-5 at 18.)  The Retirement

Loan Contract sets out a formula for determining this "Loan Interest Rate":

> If, as of the adjustment date, the then-current Reference Interest Rate
> is at least ½% per year higher or lower than the Loan Interest Rate
> then applicable to the Outstanding Loan Balance, the Loan Interest
> Rate on the Outstanding Loan Balance will be set equal to the then-
> current Reference Interest Rate.  Otherwise the Loan Interest Rate
> on the Outstanding Loan Balance will remain unchanged.

(Dkt. No. 22-5 at 18.)  Thus, any change to the variable Loan Interest Rate is not itself

discretionary, but is instead wholly contingent on the "Reference Interest Rate."  The Reference

Interest Rate is also defined by a formula in the contract, which gives TIAA some discretion by

virtue of its aforementioned control over the Rate Schedule.  Section 36 states:

36. The Reference Interest Rate is the higher of:

A) the Published Monthly Average[6] for the calendar month ending two months before the date on which the Loan Interest Rate is determined; and

B) the interest rate . . . as stated in the applicable Rate Schedule, plus one percent per year.

(Dkt. No. 22-5 at 18.)  In other words, the contract effectively sets a *floor* of 1% on the "spread" by making the Reference Interest Rate (*i.e.*, the minuend in the compensation equation) the *higher* of the Published Monthly Average and an amount 1% greater than the Rate Schedule interest rate.  Recall that TIAA retains discretion to change the Rate Schedule "from time to time."  Were it to exercise this discretion and choose to lower the Rate Schedule, it could also change the Reference Interest Rate (assuming subsection 36.B applied).

Nonetheless, TIAA's potential discretion over the Reference Interest Rate (by virtue of its control over the Rate Schedule) does not give rise to fiduciary status.  As explained above, there is no allegation that TIAA ever exercised its discretion to change the Rate Schedule.  The absence of such allegations is fatal to Plaintiff's theory of fiduciary status.  *See Pegram*, 530 U.S. 226; *Santomenno*, 768 F.3d at 297.  For the same reasons, TIAA did not exercise any "direct discretionary control over its own compensation."  (Dkt. No. 26 at 16.)  Although it may have been able to raise its compensation by lowering the Rate Schedule (assuming subsection 36.A applied),[7] the Complaint is devoid of any allegation that the Rate Schedule was ever changed.

Finally, Plaintiff contends that TIAA is a fiduciary because, once participants transfer their collateral to the Traditional Annuity, "Defendant has complete and unfettered control" over

---

[6]      This contract term refers to "the Monthly Average Corporates yield" as reported by Moody's Investors Service Inc.  (Dkt. No. 22-5 at 18.)

[7]      If subsection 36.B applies, then TIAA's compensation would be 1%, regardless of whether it exercised its discretion to adjust the Rate Schedule and Loan Interest Rate.  In other words, if subsection B is triggered, TIAA has no discretion over its "spread," even if it can change the minuend and subtrahend in the compensation equation.

Plan assets. (Dkt. No. 26 at 14.) Although "a person is a fiduciary with respect to a plan to the extent (i) he . . . exercises any authority or control respecting management or disposition of its assets," 29 U.S.C. § 1002(21)(A), TIAA's "control over the separate account can support a finding of fiduciary status only if [Plaintiff's] claims for breach of fiduciary duty arise from [TIAA's] *handling of the separate account*," *Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 913 (7th Cir. 2013) (emphasis added). But Plaintiff "does not allege that [TIAA] in any way mismanaged the separate account," *id.*; instead, the Complaint states that TIAA merely held Plaintiff's collateral in a Traditional Annuity, which paid 3% interest, as required under TIAA's Retirement Loan Contract with the Plan Administrator. (*See* Compl. ¶ 18; Dkt. No. 22-5 at 17–20.) "Because the actions [Plaintiff] complains of do not implicate [TIAA's] control" over the collateral, TIAA's control over the collateral "does not render [it] a fiduciary." *Leimkuehler*, 713 F.3d at 914.

In short, TIAA may have had some discretion to raise its own compensation by effectively increasing the "spread," but Plaintiff fails to allege that TIAA ever exercised such discretion, to Plaintiff's detriment or otherwise. Under *Pegram*'s functional nexus requirement, Plaintiff cannot establish that TIAA acted as an ERISA fiduciary. Counts I through IV, which are all asserted against TIAA as a fiduciary, must be dismissed.

## 2. Equitable Relief

Count V seeks equitable relief under ERISA § 502(a)(3) against TIAA as a *nonfiduciary* based on Washington University's alleged breach of its fiduciary duty in agreeing to TIAA's loan procedures. (Compl. ¶¶ 76–80.) Plaintiff seeks "disgorgement of the proceeds" of TIAA's allegedly illegal retirement loan program and to "[e]njoin Defendant from . . . further engaging in transactions prohibited by ERISA." (Compl. at 20–21.) TIAA responds that Count V must be dismissed because Plaintiff effectively seeks money damages, which are not available under

§ 502(a)(3) (Dkt. No. 21 at 20–22): Defendant argues that "[s]uits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' . . . since they seek no more than compensation for loss resulting from the defendant's breach of legal duty. And '[m]oney damages are, of course, the classic form of *legal* relief,'" which is not authorized under § 502(a)(3). *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (last alteration in original) (citation omitted) (first quoting *Bowen v. Massachusetts,* 487 U.S. 879, 918–919 (1988) (Scalia, J., dissenting), second quoting *Mertens*, 508 U.S. at 255).

First, the Court concludes that Plaintiff has alleged facts sufficient to support a claim for the equitable remedy of disgorgement. Count V seeks disgorgement for TIAA's knowing participation in Washington University's violation of ERISA § 406(a).[8] (Compl. ¶¶ 78–79.) Generally, "[t]he 'key factor' in determining whether 'restitution' [or disgorgement] is legal or equitable 'is whether a claimant was seeking restitution from a defendant's general funds, in which case the claim was legal, or whether a claimant was seeking to recover money that could be traced to . . . particular [property] held by a defendant, in which case the claim was equitable.'" *Severstal Wheeling, Inc. v. WHX Corp.*, 659 F. App'x 28, 31 (2d Cir. 2016) (third and fourth alterations in original) (quoting *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 155 (2d Cir. 2014)). Nonetheless, as the Supreme Court explained in *Great-West*, there is a "limited exception" to this general traceability rule: "If. . . a plaintiff is entitled to a constructive trust on particular property held by the defendant, he may

---

[8]  To the extent that Plaintiff also alleges that TIAA violated ERISA § 406(b), that claim fails, because TIAA was not acting as a plan fiduciary.

also recover profits produced by the defendant's use of that property, even if he cannot identify a particular res containing the profits sought to be recovered." *Great West*, 534 U.S. at 214 n.2.

Where plaintiffs seek to recover profits from a nonfiduciary which were derived from allegedly knowing participation in a § 406(a) violation, courts have permitted disgorgement claims to proceed under § 502(a)(3). *See, e.g.*, *In re Beacon Assocs. Litig.*, 818 F. Supp. 2d 697, 708 (S.D.N.Y. 2011) ("Although the profits Plaintiffs seek to recover from [the nonfiduciary defendant] cannot be clearly traced to a particular sum of money or property once clearly in Plaintiffs' possession, they are alleged to result from the improper use of Plaintiffs' property. The relief Plaintiffs seek can therefore be characterized as equitable."); *see also F.T.C. v. Verity Int'l, Ltd.*, 443 F.3d 48, 67 n.10 (2d Cir. 2006) ("We emphasize that equitable restitution is not limited to an award of the very funds that unjustly enriched the defendant and are still in the defendant's possession. Rather, tracing principles apply to allow a plaintiff to follow unjustly obtained funds into their product in the defendant's possession."); *Malone*, 2017 WL 913699, at *6 (distinguishing between plaintiffs' *surcharge* theory[9] of equitable relief against a nonfiduciary in *Mertens*, 508 U.S. at 251–53, 263, where plaintiffs could not recover compensatory damages, and a *disgorgement* theory of equitable relief against a nonfiduciary who knowingly participated in a § 406(a) violation, which may be permissible). In sum, Plaintiff's allegations satisfy *Great-West*'s traceability requirement for disgorgement, insofar as she alleges

---

[9] "[W]here . . . a plan participant brings suit against a 'plan fiduciary . . .' for breach of fiduciary duty relating to the terms of a plan, any resulting injunction coupled with 'surcharge'—'monetary compensation for a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment'—constitutes equitable relief under § 502(a)(3)." *New York State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2015) (fourth and fifth alterations in original) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011)).

that TIAA unjustly generated profits from her property, after obtaining that property as loan collateral via a transaction that allegedly violated § 406(a) of ERISA.

Moreover, even if the Court were to agree with TIAA that disgorgement is an unavailable remedy, that would not, by itself, justify dismissal of Count V. Plaintiff also seeks "other equitable . . . relief as appropriate," including "[e]njoin[ing] Defendant . . . from further engaging in transactions prohibited by ERISA." (Compl at 21.) Section 502(a)(3) authorizes suit by a plan participant "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). Consequently, to the extent that Plaintiff seeks injunctive relief prohibiting TIAA from knowingly participating in § 406(a) violations in the future, such relief would also qualify as "equitable" under § 502(a)(3). *New York State Psychiatric Ass'n v. UnitedHealth Grp.*, 798 F.3d 125, 135 (2d Cir. 2015) ("[T]o the extent [Plaintiff] . . . seeks to enjoin [Defendant] from *committing future breaches*, the relief sought would count as 'equitable relief' under § 502(a)(3)." (emphasis added)). Thus, Defendant's contention that Count V must be dismissed as unauthorized by ERISA is incorrect.

Finally, with the issue of remedies resolved, the Court addresses whether Plaintiff has adequately alleged a claim that TIAA knowingly participated in a plan fiduciary's violation of ERISA § 406(a). "The Supreme Court has held that equitable claims based on § 406(a) violations may be brought against non-fiduciaries under ERISA § 502(a)(3)." *Patrico*, 2017 WL 2684065, at *4 (citing *Harris Tr. & Sav. Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 245–51 (2000)). In order to state a claim against a nonfiduciary, "a plaintiff must prove all of the elements of a § 406(a) claim . . . , including that a plan fiduciary had 'actual or constructive

knowledge of the facts' that give rise to the § 406(a) violation . . . ." *Id.* (quoting *Harris Tr. & Sav. Bank*, 530 U.S. at 251). In relevant part, § 406(a) prohibits a fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a: . . . (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or] (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan . . . ."[10] ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1).

First, Plaintiff claims that TIAA's retirement loan fee structure resulted in "excessive and unreasonable compensation," in violation of ERISA § 406(a)(1)(C) and § 408(b)(2).[11] To state a claim for excessive compensation, "Plaintiffs must allege not only that the [non-fiduciary] defendants knew that they received excessive compensation, but also that the plan fiduciaries knew or should have known that the payment tendered to Defendants was unreasonable." *Allen v. Bank of Am. Corp.*, No. 15 Civ. 4285, 2016 WL 4446373, at *9 (S.D.N.Y. Aug. 23, 2016) (alteration in original) (quoting *Laborers' Pension Fund v. Arnold*, No. 00 Civ. 4113, 2001 WL 197634, at *8 (N.D. Ill. Feb. 27, 2001)).

Plaintiff alleges that Washington University, as named fiduciary, "either failed adequately to understand the details and consequences of Defendant's loan procedures . . . or, understanding the consequences of Defendant's unlawful loan procedure, nonetheless approved such procedure." (Compl. ¶ 78.) As to TIAA, Plaintiff likewise alleges that it "knew or should have known that its loan program violated section[] 406(a)" because it received "excessive and

---

[10]     It is undisputed that, as a service provider, TIAA qualifies as a "party in interest." (Dkt. No. 21 at 18.)

[11]     Section 408(b)(2) establishes an exception to § 406's prohibited transactions, which allows fiduciaries to "[c]ontract[] or mak[e] reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2).

unreasonable compensation for administration of a plan loan program." (Compl. ¶ 79.) The only point further supporting these conclusory allegations of constructive knowledge is the allegation that TIAA's loan retirement procedures are anomalous, both in their "spread"-based fee structure and in requiring participants to transfer their assets to TIAA's general account as collateral. (Compl. ¶¶ 11–12.) Plaintiff identifies two specific vendors, Charles Schwab and Vanguard (the latter of which Washington University also used as a retirement loan administrator until July 2016), which follow the "normal" procedure (*i.e.*, do not require an asset transfer and do not compensate themselves from the interest earned by participants' collateral). (Compl. ¶¶ 12, 36–37.)

The Court concludes that these allegations are insufficient to state a claim for knowingly excessive compensation in violation of § 406(a)(1)(C) and § 408(b)(2). *See Cunningham v. Cornell Univ.*, No. 16 Civ. 6525, 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017) ("[A]bsent some evidence of self-dealing or other disloyal conduct, allegations that the Plans violated § 406(a) by paying [nonfiduciaries] for recordkeeping services—even allegations that the Plans paid too much for those services—do not, without more, state a claim." (quoting *Sacerdote v. New York Univ.*, No. 16 Civ. 6284, 2017 WL 3701482, at *14 (S.D.N.Y. Aug. 25, 2017))). As Defendant points out, there is no *prima facie* reason to think that "asset-based fees," like those charged by TIAA, are inherently more expensive for participants. *Cf. Sweda v. Univ. of Pennsylvania*, No. 16 Civ. 4329, 2017 WL 4179752, at *8 (E.D. Pa. Sept. 21, 2017) (explaining that the decision whether to charge asset-based or per-participant recordkeeping fees is "a question open to the discretion of a reasonable plan administrator"; there are "lawful explanations for . . . an [asset-based] arrangement, and the plaintiffs need something more than a claim that there may be (or even are) cheaper options available").

To the extent that Plaintiff's § 502(a)(3) claim seeks injunctive relief for violations of § 406(a)(1)(C), that claim is dismissed.

That leaves the Court to address Plaintiff's claim for equitable relief to redress TIAA's alleged violations of § 406(a)(1)(D). That subsection "prohibits fiduciaries from causing the plan to engage in a transaction if [they] know[] or should know that such transaction constitutes a direct or indirect 'transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan.'" *Solis v. Koresko*, 884 F. Supp. 2d 261, 295 (E.D. Pa. 2012) (quoting ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D)), *aff'd sub nom. Sec'y U.S. Dep't of Labor v. Koresko*, 646 F. App'x 230 (3d Cir. 2016).

TIAA contends that § 406(a)(1)(D) is violated only if plan assets are transferred "for the benefit" of a party in interest, *i.e.*, with an impermissible motivation. (Dkt. No. 21 at 18.) Plaintiff interprets the statute to categorically prohibit any transfer of plan assets to a party in interest, regardless of motive. (Dkt. No. 26 at 20.) The Court concludes that the statute is best read as a categorical prohibition on transferring plan assets (although the text is rendered slightly harder to interpret by a missing comma).[12] For the reasons given by the court in *Solis*, the Court concludes that "transfers of plan assets to parties in interest are per se violations of ERISA Section 406(a)(1)(D) regardless of the motivations of the parties involved in the transaction." 884 F. Supp. 2d at 296 (drawing a distinction between "use" prong (which requires intent) and "transfer" prong (which does not), based on plain text and legislative history).[13]

---

[12]     "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (D) *transfer to, or use by or for the benefit of[,]* a party in interest, of any assets of the plan . . . ." 29 U.S.C. § 1106(a)(1) (emphasis added).

[13]     The Court also rejects TIAA's argument that it was *required* to effect a transfer of participants' collateral in order to satisfy ERISA's "participant loan exception" to otherwise prohibited transactions. That exception removes participant loans from § 406's purview,

Therefore, Plaintiff's claim survives if she has adequately alleged that "plan assets" were transferred to TIAA as loan collateral.[14] "ERISA provides no explicit definition of 'plan assets.'" *Haddock v. Nationwide Fin. Servs., Inc.*, 419 F. Supp. 2d 156, 167 (D. Conn. 2006). "With respect to participant contributions," however, Department of Labor "regulations provide that 'the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution to the plan.'" *Id.* at 168 (quoting 29 C.F.R. § 2510.3–102(a)). Here, the collateral was drawn from Plaintiff's contributions (Compl. ¶ 22); therefore, the funds were "plan assets" under the relevant regulation, and Plaintiff has adequately alleged that the transfer of these assets to a party in interest was a prohibited transaction under ERISA § 406(a)(1)(D).

---

provided that those loans are "adequately secured." ERISA § 408(b)(1), 29 U.S.C. § 1108(b)(1). TIAA fails to explain, however, why it was required to effect a transfer of funds to adequately secure participant loans, especially in light of Plaintiff's allegations that such a procedure was anomalous among loan administrators. In other words, there seem to be other ways to ensure that participant loans are adequately secured, and they do not constitute violations of § 406(a)(1)(D).

[14]    TIAA also argues in its reply brief that the Plan participants' loan collateral does not constitute a "plan asset" because "ERISA **expressly excludes** the general account assets held under guaranteed-benefit policies from being 'plan assets.'" (Dkt. No. 27 at 8 (emphasis in original) (citing ERISA § 401(b)(2), 29 U.S.C. § 1101(b)(2)).) It is true that, under ERISA's "guaranteed benefit policy exception," if a contract allocates investment risk to the insurer, then funds held pursuant to that contract are not considered "plan assets" under ERISA. *See John Hancock Mut. Life Ins. Co. v. Harris Tr. & Sav. Bank*, 510 U.S. 86, 106 (1993). Moreover, the Court recognizes that the Traditional Annuity undisputedly provides participants with a fixed rate of return. (*See* Dkt. No. 22-5 at 24 (fixing the Rate Schedule at 3% from the day on which the Premium (*i.e.*, the initial payment) is paid, and specifying that any change in the Rate Schedule does not have retroactive effect).)

Nonetheless, Defendant is not entitled to dismissal of Plaintiff's claim on the basis of ERISA's guaranteed benefit policy exception. The applicability of the exception was raised for the first time in Defendant's reply brief (Dkt. No. 27 at 8), and "arguments raised for the first time in reply should not be considered, because the plaintiff[] had no opportunity to respond to those new arguments." *Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012). TIAA is free to revisit the argument in a subsequent motion.

### C.     Leave to Amend

Plaintiff requests leave to amend, "in the event any of her claims are deemed deficient." (Dkt. No. 26 at 22.)

"Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, '[a] court should freely give leave [to amend] when justice so requires.'"  *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (alterations in original) (quoting Fed. R. Civ. P. 15).  Generally, "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party."  *Id.* (alteration in original) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)).

As to Counts I through IV, the Court agrees with TIAA that leave to amend would be futile.  (Dkt. No. 27 at 10.)  As explained above, as a matter of law, TIAA cannot be considered a Plan fiduciary because it did not exercise discretionary authority over Plan assets in administering the retirement loan program.

To the extent that Count V seeks injunctive relief for excessive compensation under ERISA § 406(a)(1)(C), the Court cannot conclude, at this stage, that amendment would be futile: To the contrary, Plaintiff may yet be able to allege that "colorable grounds exist to support the proposed claim."  *In re Express Scripts/Anthem ERISA Litig.*, 2018 WL 339946, at *24 (quoting *Allison v. Clos–ette Too, L.L.C.,* No. 14 Civ. 1618, 2015 WL 136102, at *2 (S.D.N.Y. Jan. 9, 2015)).  The Court will reserve judgment on the futility of any amendments until it has had the opportunity to review the amended complaint.  *See United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, No. 10 Civ. 9650, 2018 WL 565707, at *4 (S.D.N.Y. Jan. 25, 2018) ("Courts assess futility by determining whether the proposed claim could survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").  In light of the early stage of this litigation, and the fact

that Plaintiff has not yet filed any amended complaint, the Court also cannot conclude that amendment would result in undue delay or prejudice. Leave to amend is granted as to Count V.

## IV. Conclusion

For the foregoing reasons, TIAA's motion dismiss is GRANTED in part and DENIED in part. Only Count V survives the motion to dismiss. Plaintiff may file an amended complaint, provided that she does so within 30 days.

The Clerk of Court is directed to close the motion at Docket Number 20.

SO ORDERED.

Dated: March 26, 2018
      New York, New York

                                        J. PAUL OETKEN
                             United States District Judge