UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA HALEY, Individually and On Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>vs.<br><br>TEACHERS INVESTMENT and ANNUITY ASSOCIATION,<br><br>   Defendant. | Civil Action No. 1:17-cv-00855-JPO<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

## INTRODUCTION

1. Plaintiff Melissa Haley ("Plaintiff") seeks to recover money that Teachers Investment and Annuity Association ("Defendant") unlawfully took from her retirement account in the Washington University Retirement Savings Plan (the "Washington University Plan"). Plaintiff borrowed money from her retirement account on four separate occasions. She has completely repaid two of the loans, plus interest, and is currently repaying the other two loans. The interest Plaintiff paid in connection with those loans should have been credited to Plaintiff's account. Defendant, however, did not credit the full amount of paid interest to Plaintiff's account. Instead, Defendant credited a smaller amount of interest to her account and kept the remainder for itself. By keeping money for itself that should have been credited to Plaintiff's account, Defendant violated and continues to violate the Employee Retirement Income Security Act of 1974 ("ERISA"). The conduct at issue is systematic. Defendant is retaining interest paid by similarly situated investors across the country. The amount of Defendant's ill-gotten gains exceeds $50 million per year.

- 1 -

2.      This Amended Class Action Complaint is being filed pursuant this Court's leave to amend granted in its Order of March 26, 2018, DOC 28 at 23.  The comparison First Amended Class Action Complaint is attached as Exhibit 2 to this complaint

3.      Plan loans to participants are specifically prohibited by ERISA § 406(a)(1)(B), unless the loans meet strict conditions specified by applicable federal regulations, including, among others:

    a.  The loan program must be prudently established and administered for the exclusive purpose of providing benefits to participants of the plan;

    b.  The loans must provide ***the plan***, not the plan loan administrator, with a reasonable rate of interest;

    c.  The loan program must not contain a pre-condition that benefits a party in interest other than the participant.

4.      Defendant's loan program violates and has violated these rules in multiple ways:

    a.  Defendant's loan program, without a valid reason, requires participants to transfer collateral equal to 110% of the loan amount into one of Defendant's general account products.  Normal, prudent plan loans to participants in qualified retirement plans do not require the posting of any collateral, because in the event of a default, the participant's account balance will simply be reduced by the amount of the outstanding loan balance. The sole purpose of the collateral requirement is to provide additional compensation to Defendant, equal to the spread between the rate of investment return on Defendant's general account and the much lower rate of interest credited to  the participant's collateral;

    b.  Defendant, not the plans, receives the interest paid by participants on plan loans,

and the plans receive only the much lower amount of interest paid by Defendant on the participants' collateral; meaning that, by definition, the plans do not receive a reasonable rate of interest.

5.      Further, because the participants' collateral is invested as an undivided portion of Defendant's general account, and Defendant therefore retains the spread between the overall rate of return on the general account and the interest credited on the collateral, there has been a transfer of plan assets to, or use by or for the benefit of, a party in interest, which is prohibited by ERISA § 406(a)(1)(D).

6.      Finally, Defendant's administration of the loan program constitutes a service agreement between Defendant and the ERISA-covered 403(b) plans serviced by Defendant that is prohibited by ERISA § 406(a)(1)(C) unless, among other conditions, the plans pay no more than reasonable compensation in relation to the services actually being provided.  The aggregate compensation being received by Defendant for loan services, measured by the excess of (i) the return on the investment of the collateral through the general account, over (ii) the interest credited to participants with respect to participants' collateral, greatly exceeds a reasonable fee in relation to the services provided.  The applicable rules are spelled out in explicit detail in regulations issued by the Employee Benefit Security Administration ("EBSA") of the U.S. Department of Labor ("DOL") at 29 CFR § 2550.408b-1 (the "Plan Loan Rules").  The Plan Loan Rules are well-known among benefit plan professionals and satisfactorily complied with by virtually all 401(k) plans in the country (which are subject to exactly the same ERISA rules as the Washington University Plan and every other 403(b) plan administered by Defendant) and virtually all 403(b) plans in the country *except* for those 403(b) plans administered by Defendant.

7.     The Plan Loan Rules are so well-known, so thoroughly understood, and so universally complied with – except with respect to plans administered by Defendant -- that no reasonable fiduciary could have approved of Defendant's loan program except in complete abdication of its responsibility to act as a "prudent expert."

8.     As described above and in further detail in the allegations following, the ways in which Defendant's loan program violates  ERISA  are so blatant and obvious that one could reasonably infer that Washington University, as the named fiduciary for the Washington University Plan, knows or should know, and at all relevant times knew or should have known:

a.   that the loan program constitutes a prohibited loan in violation of the Plan Loan Rules and a prohibited loan or other extension of credit between a plan and a party in interest in violation of ERISA § 406(a)(1)(B);

b.   that the loan program entails furnishing of goods, services, or facilities between the plan and Defendant, a party in interest, in violation of ERISA § 406(a)(1)(C);

c.   that the requirement to transfer collateral from participants' chosen investments into Defendant's general account product, which collateral Defendant invests for its own benefit or its own account, results in a prohibited transfer of participants' plan assets to, or use by or for the benefit of, Defendant, a party in interest, in violation of ERISA § 406(a)(1)(D); and

d.   and that the compensation earned by Defendant in connection with the loan program is unreasonable in relation to the services being provided.

9.     Defendant is a pre-eminent provider of administrative services to qualified retirement plans.  It beggars the imagination to suppose that TIAA is not and was not aware of the conditions required by federal regulations for a plan loan program to comply with ERISA's

prohibited transaction rules.  In fact, an examination of two features of Defendant's plan program, in comparison to the loan programs offered by virtually every other major provider of individual account plan administrative services ("platform provider"), demonstrates that Defendant conceived and implemented an elaborate scheme designed to ensure that Defendant skims off for itself a significant percentage of the total aggregate portfolio of participant loans for its entire 403(b) plan customer base:

      a.   The requirement to post collateral as security for repayment of the loan is completely unnecessary and irrelevant to and unsupported by the regulatory requirement that the loan be adequately secured.  Adequate security against default in the plan loan programs of virtually every other platform provider is obtained through the ability simply to reduce the value of a participant's account by the amount of the outstanding balance in the event of default.  There is no need to post any collateral at all.  As previously alleged, the only purpose for the collateral requirement is to boost the amount invested in Defendant's general account, from which it earns the spread between actual earnings and interest credited.

      b.   In order to make it appear that Defendant's loan program offers something of value not provided by a normal plan loan program, Defendant created a special annuity contract that contorts a simple plan loan into an annuity purchase.  The annuity provides imaginary benefits such as a death benefit with respect to a defaulted loan. On information and belief, there is no mortality risk associated with a plan loan, including plan loans obtained by participants in plans administered by Defendant, and absolutely no purpose for an annuity contract other than to increase the value of the assets held in Defendant's general account.

10.     These elaborate features add significant and unnecessary complexity to a plan loan program and suggest strongly that Defendant is and at all relevant times has been well-aware of the Plan Loan Rules and designed these features as a mechanism to circumvent those rules.

### JURISDICTION

11.     Plaintiff brings this action pursuant to ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2), and (3). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides "district courts of the United States shall have exclusive jurisdiction of civil actions" that bring claims for violations of ERISA.

### VENUE

12.     Venue is proper in this District under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. §§ 1391(b) and (c), which provides that in an action bringing claims for violation of ERISA, venue is proper in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found. Here, the Defendant has its principal place of business in the District and Defendant's alleged breaches took place in this District.

### PARTIES

13.     Plaintiff is a participant (as defined by ERISA § (7), 29 U.S.C. § 1002(7)) in the Washington University Plan. The Washington University Plan is an employee pension benefit plan within the meaning of ERSIA §3(2)(A), 29 U.S.C. § 1002(2)(A). Washington University offers to its employees the ability to participate in the Washington University Plan. The Washington University Plan is an individual account plan within the meaning of ERSIA §3(34), 29 U.S.C. § 1002(34).

- 6 -

14.     Plaintiff took four loans from her Washington University Plan individual account. Plaintiff took the first loan on May 10, 2011 in the principal amount of $ 1,612.01. The loan carried an interest rate of 4.42%. She repaid the loan in full on August 29, 2014. Plaintiff took the second loan on January 8, 2013 in the principal amount of $1,000.00. That loan carried an interest rate of 4.22%. She repaid the loan in full on March 10, 2015. Plaintiff took the third loan on September 2, 2014 in the principal amount of $8,500. That loan has a variable interest rate that is currently set at 4.44%. Plaintiff is in the process of paying off the third loan. Plaintiff took the fourth loan on March 17, 2015 in the principal amount of $7,500. The fourth loan has a variable interest rate that is currently set at 4.17%. Plaintiff is in the process of paying off the fourth loan.

15.     Defendant is a life and annuity insurance company organized under the laws of the State of New York with its principal place of business in New York, New York. Defendant provides an array of financial services for employee benefit plans. Defendant provides these services to the Washington University Plan. Defendant also provides these services to similarly situated retirement plans that are within the class as defined below (the "Plans").

## NATURE OF THE ACTION

ERISA Fiduciaries

16.     Defendant is an ERISA fiduciary to Plaintiff, the Washington University Plan, and all other similarly situated retirement plans and retirement plan participants.[1] Fiduciaries to

---

[1] In its March 28, 2018 ruling (the "Ruling", Dkt. 28) on Defendant's motion to dismiss Plaintiff's original complaint, the Court ruled: ". . . Plaintiff cannot establish that TIAA acted as *an ERISA fiduciary*.   Counts I through IV, *which are all asserted against TIAA as a fiduciary*, must be dismissed."  Slip op. at 14 (emphasis added). Plaintiff respectfully repeats the original complaint's allegations that TIAA acted as an ERISA fiduciary, as well as Counts I through IV from the original complaint, for purposes of preserving Plaintiff's appeal rights.   In addition, Plaintiff respectfully repeats Count IV from the original complaint in order to retain the original complaint's allegations, as to which the ruling denied Defendant's motion to dismiss, under ERISA Section

retirement plans owe the plans and their participants duties described as the "highest known to the law." *Braden v. Walmart Stores, Inc.*, 588 F.3d 585, 602 (8th Cir. 2009).

17.     ERISA fiduciaries are required to act with the care, skill, prudence and diligence that would be exercised by someone who is experienced and knowledgeable about choosing such service providers and selecting such investments. Most fundamentally, ERISA fiduciaries are required to act solely in the best interests of plan participants. ERISA § 404(a)(1)(A), 29 U.S.C. 1104(a)(1)(A).

Retirement Plan Loans

18.     More than 20% of all participants in retirement plans have plan loans outstanding. This statistic has held true since the early 2000's. For many retirement plan participants, when the need for short-term liquidity arises, a retirement plan loan provides an attractive solution. Typically, receiving a retirement plan loan is not a taxable event and it has no impact on a participant's credit rating. Assuming the loan is paid back in accordance with its terms (in most cases within five years), it usually will have little impact on retirement savings progress.

19.     In virtually every retirement plan that provides for participant loans, the participant's individual account is the lender and the participant is the borrower. Principal and interest charged on the loan balance is paid by the participant to the participant's own retirement account. As such, the cost of a retirement loan can be minimal, neutral, or even positive (if the market goes down). In sum, when retirement plan participants borrow from their plan account,

502(a)(3) and ERISA Section 406(a)(1)(D), against Defendant as the recipient of an illegal transfer of plan assets. Plaintiff also adds to this amended complaint new Counts V, VI and VII, which, on the basis of the guidance provided by the Ruling, separately allege violations under ERISA Section 502(a)(3) and ERISA Sections 406(a)(1)(B) ("lending of money or other extension of credit between the plan and a party in interest"), 406 (a)(1)(C) ("furnishing of goods, services, or facilities between the plan and a party in interest"), and 406(a)(1)(D) (" . . . use by or for the benefit of a party in interest, of any assets of the plan").

they can obtain funds for short-term needs without incurring any tax liability, and they restore their plan accounts by repaying the loan, and the interest paid on the loan, to their accounts.

20.     Ordinarily, when a plan participant borrows from a plan account, the participant is deemed to have invested the account in the loan. The loan proceeds are derived from liquidating the participant's investment, and the loan effectively becomes a "fund" in which the participant has invested. As an example, suppose that a participant has a current plan account balance of $60,000, allocated equally among three different mutual funds, Fund A, Fund B, and Fund C, and the participant elects to borrow $6,000 from the plan account. The plan trustee will liquidate $2,000 from each of the three investment funds and will distribute the $6,000 to the participant in exchange for a note signed by the participant, obligating the participant to repay the loan at a stated rate of interest.

21.     The usual retirement plan loan process is exemplified by the description in the Charles Schwab standardized loan policy for 401(k) plans:

> ***Each loan shall be an earmarked investment of the Participant's account***. Subject to any restrictions on withdrawals from a particular investment fund, loan proceeds will be taken pro rata from the investment fund or funds in which the Participant's account balance is invested. . . . As a loan is repaid, a Participant's payments will be allocated to the investments he or she has selected under the Plan (or, where appropriate, investments that are considered the Plan's default investment fund(s)) on a pro-rata basis, based on the investment election in effect on the date a payment is deposited to the Plan. (Emphasis added.)

The interest that the participant pays on such loans is the commercial rate for similar loans.

22.     Participant loans are governed by the Plan Loan Rules set forth in 29 CFR § 2550.408b-1, which require, among other conditions, that a loan must bear a reasonable rate of interest. As provided in 29 CFR § 2550.408b-1(e), "[a] loan will be considered to bear a reasonable rate of interest if such loan provides ***the plan*** with a return commensurate with the interest rates charged by persons in the business of lending money for loans which would be made under similar circumstances." (Emphasis added.)

23.     Suppose at the time of the participant's loan, the commercial rate for such loans is 6%. As a result of the loan transaction described in paragraph 19, the participant's account will have $18,000 invested in each of Fund A, Fund B, and Fund C, and will have $6,000 invested in a loan paying 6% interest. All of the installment loan repayments will be credited to the participant's account, and the participant will earn the rate of interest charged on the loan.

Defendant's Retirement Plan Loans

24.     Defendant does not follow this loan process. Instead, Defendant requires a participant to borrow from Defendant's general account rather than from the participant's own account. Defendant requires each participant to transfer 110% of the amount of the loan from the participant's plan account—in our example, Fund A, Fund B, and Fund C—to one of Defendant's general account products[2] as collateral securing repayment of the loan. These general account products pay a fixed rate of interest, which for Plaintiff's loans was set at 3%.

25.     All of the assets held in Defendant's general account are owned by Defendant. Therefore, Defendant also owns all the assets transferred to its general account to "collateralize" the participant loan.

26.     Because the participant loan is made from Defendant's general account, the participant is obligated to repay the loan to Defendant's general account, and the general account earns all of the interest paid on the loan, in contrast to the loan programs for virtually every other retirement plan in the country, where the loan is made from and repaid to the participant's account and the participant earns all of the interest paid on the loan. On information and belief, Defendant's general account earns materially more than the interest that Defendant pays the participant on the collateral securing repayment of the loan. Defendant retains for itself and for its own benefit the

---

[2] Effective in July 2016, loan "collateral" was invested in a TIAA Retirement Loan certificate.

difference between those two amounts – (i) the earnings on the general account and (ii) the interest paid the participant.

27.     As noted above, Plaintiff currently has two outstanding loans from her Washington University Plan account. The first loan bears a current interest rate of 4.44%, and the second bears a current interest rate of 4.17%. The interest rate for both loans, in another break from standard plan loan policy, is variable. By contrast, as an example, the Schwab standardized loan policy states: "The interest rate on the loan will be a reasonable rate of interest to be determined based on current interest rates charged by persons in the business of lending money for similar loans *at the time the loan is made. The interest rate will remain fixed over the loan term and will not be renegotiated.*" (Emphasis added.) Defendant is paying an interest rate of 3% with respect to the collateral. Therefore, Plaintiff's "collateral" invested in the Traditional Annuity, which is 110% of the loan amount, is earning 3% for Plaintiff, while Defendant is charging 4.44% and 4.17% respectively. However, because the participant's collateral is invested by Defendant through its general account, the actual amount Defendant is earning on the loan collateral is the difference between the amount Defendant earns on investments in its general account and the amount that Defendant credits to participants on the posted collateral.

28.     Defendant has engineered a retirement loan process that enables it to earn additional income at the expense of retirement plan participants equal to the spread between the fixed interest rate that participants receive with respect to the loan collateral and the earnings that Defendant earns on the collateral deposited into Defendant's general account. The loan process that is the subject of this lawsuit is the epitome of self-dealing.

29.     In its capacity as fiduciary to the Washington University Plan, Defendant failed to act in a prudent manner and failed to act exclusively in the retirement plan participants' best

interests, in rank violation of ERISA §§ 403 and 404, 29 U.S.C. §§ 1103, 1104, by: (a) requiring collateral for loan repayment to be invested in an investment vehicle in which participants did not benefit from all the investment gain, and in which Defendant profited by taking a portion of the investment return, (b) by charging excessive and unreasonable fees for administering a plan loan program, and (c) requiring a transfer of plan assets to or for the use and benefit of Defendant. That is, there is no legitimate or prudent reason why plan participants who desire to borrow money from their individual accounts are required to first transfer that money, plus 10%, to Defendant's general account, then borrow the money from the general account, and pay Defendant interest on their own borrowed money.

30.     It is worth repeating, Defendant's general account holds ERISA plan assets because participants who borrow money from their retirement plan accounts are required to deposit "collateral" as security for repayment of the money into Defendant's general account.

Washington University Plan Loans

31.     The Washington University Plan offers participants the opportunity to borrow from their retirement accounts, as stated in the Retirement Savings Plan Loan Policy ("Loan Policy") attached as Exhibit 1 to this complaint:

> PARTICIPANT LOANS
> Participants may borrow against a portion of the employee, pre-tax contributions of their plan account. Participants may not borrow against the contributions that have been made by the University. All participant loans are administered by the vendor that holds the participant account, TIAA, and are subject to the rules and requirements established by the vendor.

Loan Policy at 1.

32.     Employees of sponsors of qualified retirement plans are "parties in interest" to the employer's plan. ERISA § 3(14), 29 U.S.C. § 1002(14).

33.     A loan between a plan and a party in interest is prohibited by the prohibited transaction rules of ERISA § 406(a)(1)(B), which prohibit the "lending of money or other

extension of credit between the plan and a party in interest" in the absence of an available exemption.

34.     ERISA section 408(b)(1) provides a statutory exemption for loans to plan participants provided certain conditions are met, as described in ERISA § 408(b)(1) and the regulations issued thereunder.

35.     Of particular relevance to the claims in this case is 29 CFR 2550.408b-1(a)(3)(i):

The term "participant loan" refers to a loan ***which is arranged and approved by the fiduciary administering the loan program primarily in the interest of the participant*** and which otherwise satisfies the criteria set forth in section 408(b)(1) of the [ERISA]. . . . ***[A] loan program containing a precondition designed to benefit a party in interest (other than the participant) is not afforded relief by section 408(b)(1)*** or this regulation. In this regard, section 408(b)(1) recognizes that a program of participant loans, like other plan investments, must be prudently established and administered for the exclusive purpose of providing benefits to participants and beneficiaries of the plan. (Emphasis added.)

36.     The Washington University Plan Loan Policy makes it clear that Defendant is the fiduciary administering the loan program, as quoted above: "All participant loans are administered by the vendor that holds the participant account, TIAA [Defendant], and are subject to the rules and requirements established by the vendor." Exhibit 1, Loan Policy at 1.

37.     Defendant determines what the loan interest rate on participant loans will be: "Participants will be charged a fixed market rate of interest on the loan which is determined by the vendor at the time the loan is initiated." (Loan Policy at 1.) Note, the Washington University Plan Loan Policy provides that the interest rate will be fixed, whereas Plaintiff's loan statement from Defendant states that "Interest on this loan is charged using a variable rate." Therefore, in addition to the other claims made in this Complaint, Defendant is in violation of ERISA § 404(a)(1)(D) requiring plan fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan.  29 U.S.C. § 1104(A)(1)(D).

38.     Defendant requires retirement plan participants who wish to borrow money from the retirement accounts to deposit "collateral" in an amount equal to 110% of the borrowed amount into the TIAA Traditional Annuity or, for loans initiated after May 2016, into a TIAA "Retirement Loan Certificate," as security for repayment of the loan:

> **Collateral**: Participant loans will be secured using the participant's employee, pre-tax contributions in the plan account. The amount of collateral will be 110% of the loan amount. That portion of the participant's account held as collateral will be invested in a TIAA Retirement Loan certificate.
> (Loan Policy at 2.)

39.     Participants' collateral continues to earn interest for the participant's account while the loan is outstanding, but participants do not receive the full amount of interest paid on the loan. Defendant's website states:

> **Does my TIAA loan collateral amount continue to earn interest while my loan is outstanding?**
>
> Yes. The amount held as collateral for your loan will earn TIAA contractual interest, and additional amounts as declared by TIAA's Board of Trustees.
>
> This is not the interest rate to pay back your loan, but rather the rate TIAA will credit your loan collateral.[3]

40.     The rate of return of the Traditional Annuity and the interest rate provided by the Retirement Loan certificate, as well as the interest rate paid by participants for the participant loans, are set at the discretion of Defendant.  Defendant determines its compensation for all retirement loans, because Defendant earns the spread between the rate provided by the general account product in which the collateral is held and the interest rate of the loan, but also the even greater spread between the rate of return on the assets contained in Defendant's general account and the interest rate of the loan.

---

[3] Available at  https://www.tiaa.org/public/support/faqs/loans (last viewed December 20, 2016).

41.     One of the conditions for the exemption is that "no more than 50% of the present value of a participant's vested accrued benefit may be considered by a plan as security for the outstanding balance of all plan loans made to that participant." 29 CFR 2550.408b-1(f)(2)(i).  The Washington University Plan Loan Policy states that a participant cannot borrow more than 45% of the value of the participant's account. The purpose of this limitation is so the remaining 55% of the participant's account can serve as security for repayment of the plan loan.  And even this provision is overmuch security for repayment of the loan. For example, if a participant borrows $9,000 from her account valued at $20,000 and then defaults on repayment of the loan, her account will be reduced by the $9,000 loan amount, and her account will then be valued at $11,000. The only way the Washington University Plan could suffer a loss (if at all) would be if the remaining value of the participant's account were reduced to zero due to investment losses. Even in that case, the participant's account would be reduced to zero but the Washington University Plan itself would not have suffered any actual loss.

42.     There is no reason for requiring participants who take a loan from their retirement plan account to deposit collateral other than to permit Defendant to extract additional fees from plan participants who take loans from their accounts and for Defendant to earn additional compensation for itself, at the expense of retirement plan participants who should receive the entire benefit of interest they have paid on money they borrowed from their retirement plan accounts.

43.     Defendant's loan procedure is a direct violation of the provisions of 29 CFR 2550.408b-1(a)(3)(i).

44.     Under ERISA § 404, a fiduciary is obligated to investigate all decisions that will affect the pension plan, and must act solely in the best interests of the participants and beneficiaries. Washington University, with Defendant's knowing participation, by approving a loan program

that so clearly operates in violation of the Plan Loan Rules in ways that benefit Defendant at the expense of participants, and engaging in the activities identified herein with respect to retirement plan loans, has violated and continues to violate Section 404 of ERISA.

45.     Prior to July, 2016, the Washington University Plan utilized two record keepers and two custodians. The Washington University Plan Forms 5500 during this period identify Defendant and Vanguard as both record keepers and custodians to the plan. The Washington University Plan's 2014 Form 5500 states:

> The Plan provides for a separate accumulation account for each Participant that meets the requirements of Internal Revenue Code (IRC) Section 403(b). Plan contributions are invested, at the direction of each Participant, in one or more of the Funding Vehicles available to Participants under the Plan. "Funding Vehicles" means any group or individual annuity contract that meets the requirements of Code Section 403(b)(l) or custodial account that meets the requirements of Code Section 403(b)(7) that are approved by the Plan Administrator and issued by **TIAA-CREF or Vanguard Fiduciary Trust Company ("Vanguard"), collectively the "Plan Custodians"**, with respect to a Participant or the Plan.

Washington University Savings Plan 2014 Form 5500, Independent Auditor's Report at p. 5. (Emphasis added).

46.     Participants who chose to invest in the Vanguard menu of investment choices, and who took a loan from their retirement accounts, were not subject to the same self-dealing procedures imposed by Defendant. Instead, principal loan repayments and all interest payments were credited entirely by Vanguard to participants' account.

47.     29 C.F.R. 2550.408b-2(c) states in no uncertain terms that, "*[n]o contract* or arrangement for services between a covered plan and a covered service provider, nor any extension or renewal, *is reasonable within the meaning of section 408(b)(2) of the Act* and paragraph (a)(2) of this section *unless* the "covered service provider" (specifically defined to include plan record keepers, custodians, brokers and investment platform providers) receives no more than reasonable compensation in relation to the services provided. *Id*. (Emphasis added).

- 16 -

48.     More specifically, a covered service provider must disclose to the responsible plan fiduciary, *inter alia*, all indirect compensation, including:

> ***A description of all indirect compensation*** (as defined in paragraph (c)(1)(viii)(B)(2) of this section) that the covered service provider, an affiliate, or a subcontractor reasonably expects to receive in connection with the services described pursuant to paragraph (c)(1)(iv)(A) of this section; including identification of the services for which the indirect compensation will be received, identification of the payer of the indirect compensation, and a description of the arrangement between the payer and the covered service provider, an affiliate, or a subcontractor, as applicable, pursuant to which such indirect compensation is paid.
>
> …
>
> If the covered service provider reasonably expects ***recordkeeping services*** to be provided, in whole or in part, without explicit compensation for such recordkeeping services, ***or when compensation for recordkeeping services is offset or rebated based on other compensation received by the covered service provider, an affiliate, or a subcontractor, a reasonable and good faith estimate of the cost to the covered plan of such recordkeeping services***, including an explanation of the methodology and assumptions used to prepare the estimate and a detailed explanation of the recordkeeping services that ***will be provided to the covered plan***. The estimate shall take into account, as applicable, the rates that the covered service provider, an affiliate, or a subcontractor would charge to, or be paid by, third parties, or the prevailing market rates charged, for similar recordkeeping services for a similar plan with a similar number of covered participants and beneficiaries.

29 C.F.R. 2550.408b-2(c)(1)(iv)(C)(2), (D)(2) (Emphasis added.)

49.     If the requirements of 29 C.F.R. 2550.408b-2(c) are not met, the responsible plan fiduciary's decision to enter into a contract with a service provider to provide services to the plan constitutes a non-exempt prohibited transaction, in violation 29 U.S.C. § 1106, unless the responsible plan fiduciary can establish:

> The responsible plan fiduciary did not know that the covered service provider failed or would fail to make required disclosures ***and reasonably believed*** that the covered service provider disclosed the information required by paragraph (c)(1)(iv) or (vi) of this section;
> The responsible plan fiduciary, ***upon discovering that the covered service provider failed to disclose the required information, requests in writing that the covered service provider furnish such information***; and

If the covered service provider fails to comply with such written request within 90 days of the request, then the ***responsible plan fiduciary notifies the Department of Labor*** of the covered service provider's failure, in accordance with paragraph (c)(1)(ix)(E) of this section.

29 C.F.R. 2550.408b-2(c)(1)(ix) (emphasis added).

50.     None of the Annual Returns for the Washington University Plan filed with the US Department of Labor on Form 5500 contain any information or disclosure that Defendant is receiving indirect compensation with respect to the loan program by keeping a portion of the interest on paid by plan participants on amounts borrowed from their own accounts.

## CLASS ACTION ALLEGATIONS

51.     29 U.S.C. §1132(a)(2) authorizes any participant or beneficiary of a qualified retirement plan to bring an action individually on behalf of the plan to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109(a).

52.     In acting in this representative capacity, and to enhance the due process protections of unnamed retirement plan participants and beneficiaries of such plans, as an alternative to direct individual actions on behalf of the plan under 29 U.S.C. §§1132(a)(2) and (3), Plaintiff seeks to certify this matter as a class action on behalf of the Washington University Savings Plan and all other similarly situated retirement plans that are serviced by Defendant and that offer participant loans. Plaintiff seeks to certify, and to be appointed as representative of, the following class ("Class"):

All individual account retirement plans qualified under Code section 403(b) and serviced by Teacher Investment and Annuity Association ("TIAA") that have offered the TIAA participant loan program at any time from February 5, 2011 through the date of judgment.

53.     This action meets the requirements of Rule 23 and is certifiable as a class action for the following reasons:

a. The proposed Class includes tens of thousands of individuals and is so large that joinder of all its members is impracticable.

b. There are questions of law and fact common to the Class because the illegal participant loan procedures described in the preceding allegations were applied universally to all 403(b) plans for which Defendant provides investment, record keeping and other services.  Thus, common questions of law and fact include the following, without limitation: whether Defendant arranged and administered a loan program that contained elements designed to benefit Defendant at the expense of Plaintiff and putative Class members in violation of ERISA Section 408(b)(1); the damages suffered by Plaintiff and putative Class members; and what Class-wide equitable and other relief the Court should impose in light of Defendant's ERISA violations.

c. Plaintiff's claims are typical of the claims of the Class because Plaintiff was a participant in the Washington University Plan during the time period at issue in this action, and all similarly situated plans and plan participants were harmed in a similar fashion by Defendant's ERISA violations.

d. Plaintiff is an adequate representative of the Class because she was a participant in the Washington University Plan, she took several participant loans from the Washington University Plan, she has no interest that is in conflict with the Class, she is committed to the vigorous representation of the Class, and she has engaged experienced and highly qualified ERISA and class action attorneys to represent the Class.

54.     Prosecution of separate actions by individual participants or beneficiaries for these breaches of fiduciary duties would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendant in respect to the discharge of its fiduciary duties to the Plaintiff and putative Class members.

55.     A class action is the superior method for the fair and efficient adjudication of this controversy because joinder of all putative Class members is impracticable, the losses suffered by individual retirement plan participants and individual plans may be small and it would be impracticable to enforce their rights through individual actions, and the common questions of law and fact predominate over individual questions. Given the nature of the allegations, no Class member has an interest in individually controlling the prosecution of this matter, and Plaintiff is aware of no difficulties likely to be encountered in the management of this matter as a class action. Alternatively, then, this action may be certified as a class under Rule 23(b)(3) if it is not certified under Rule 23(b)(1)(A) or (B).

56.     Plaintiff's counsel will fairly and adequately represent the interests of the Class and is best able to represent the interests of the Class under Rule 23(g).

## COUNT I

**Prohibited Transaction – Lending of Money or Other Extension of Credit Between a Plan and a Party in Interest; Breach of Duties of Loyalty and Prudence; Excessive Investment and Service Provider Fees**

57.     Plaintiff repeats and re-alleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

58.     ERISA § 406(a)(1)(B), 29 U.S.C. §1106(a)(1)(B), provides that a fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know

that such transaction constitutes a direct or indirect lending of money or other extension of credit between the plan and a party in interest.

59.     Defendant is a fiduciary responsible for arranging for and administering the participant loan program with respect to the Plans.

60.     Defendant is a fiduciary responsible for determining the interest rate for participant loans, for transferring assets from the accounts of participants who take loans from their retirement accounts to the Defendant's Traditional Annuity or to a Retirement Loan certificate, and for determining the interest rate participants will receive on their loan "collateral" invested in the Traditional Annuity or in Retirement Loan certificate.

61.     By designing and administering a loan program in a manner intended to benefit Defendant at the expense of Plaintiff and Class members, Defendant engaged in prohibited transactions in violation of ERISA § 406(a).

62.     Defendant is liable under 29 U.S.C. §1109(a) to make good to Plaintiff and the Class losses resulting from the prohibited transactions alleged in this Count and is subject to other equitable or remedial relief as appropriate.

**<u>COUNT II</u>**
**Prohibited Transaction—Transfer of Plan Assets to or for the Use of a Party in Interest;**
**Dealing With the Assets of a Plan in Its Own Interest or Its Own Account**

63.     Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs as if fully set forth herein.

64.     ERISA § 406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D), prohibits a plan fiduciary from "caus[ing] the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect… transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."

- 21 -

65.    ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B) provides that a "party in interest" includes "a person providing services to [a] plan."

66.    ERISA § 406(b)(1), 29 U.S.C. §1106(b)(1) prohibits a plan fiduciary from dealing with the assets of a plan in its own interest or for its own account.

67.    Defendant is a party in interest with respect to Plaintiff and the Class, providing record keeping, custodial, and other investment and administrative services to qualified 403(b) retirement plans across the country.

68.    The requirement that retirement plans must transfer a portion of a participant's account to Defendant as security for repayment participant plan loan constitutes a prohibited transfer of plan assets to or for the use and benefit of Defendant, a party in interest, in violation of ERISA § 406(a)(1)(D), 29 U.S.C. §1106(a)(1)(D).

69.    By requiring that the Plaintiff and Class members transfer a portion of a participant's retirement savings to Defendant as security for repayment of a participant loan, as a result of which Defendant will earn the spread between the interest charged to the participant for the loan and the interest paid by Defendant to the plan participant through the Traditional Annuity or the Retirement Loan certificate, Defendant is dealing with plan assets for its own interest or its own account in violation of ERISA § 406(b)(1), 29 U.S.C. §1106(b)(1).

70.    Defendant is liable under 29 U.S.C. §1109(a) for all losses to Plaintiff and Class members resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

### COUNT III

**Prohibited Transaction - Excessive and Unreasonable Compensation for Services in Violation of ERISA §408(b)(2)**

71.    Plaintiff repeats and realleges each of the allegations in the foregoing paragraphs

as if fully set forth herein.

72.     Section 406(a)(1)(C) of ERISA, 29 USC § 1106(a)(1)(C), generally prohibits the direct or indirect furnishing of services between a plan and a party-in-interest.

73.     Section 408(b)(2) of ERISA, 29 USC § 1108(b)(2)  exempts from the prohibitions of ERISA § 406(a)(1)(C) "contracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, *if no more than reasonable compensation is paid therefor*" (emphasis added).

74.     Defendant sets its own compensation for administering retirement participant plan loans by determining the interest rate to be charged for participant loans and determining the interest rate that would be paid by the Traditional Annuity or the Retirement Loan certificate, earning as compensation the spread between those two interest rates.

75.     The spread between the interest rates charged for participant loans and the interest rates that would be paid by the Traditional Annuity or the Retirement Loan certificate constitutes excessive and unreasonable compensation in relation to the services provided.

76.     By creating a process that measured Defendant's compensation for the loan program as the spread between the rate charged for a participant loan the rate paid on participants' collateral, Defendant is effectively earning an asset-based fee for a fixed level of service, which constitutes excessive and unreasonable compensation.

77.     Defendant is liable under 29 U.S.C. §1109(a) for any losses to Plaintiff and the Class resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

## COUNT V

### Non-Fiduciary Liability for Fiduciary Breach Regarding Specifically ERISA 406(a)(1)(B)

78.     Plaintiff repeats and realleges the allegations contained above as if fully stated herein.

79.     Washington University, as Plan Administrator and named fiduciary to the Washington University Plan, bears fiduciary responsibility with respect to the selection of Defendant as the record keeper, investment manager and retirement plan participant loan administrator, and with respect to the approval and acceptance of the terms and conditions of Defendant's loan program.

80.     The authority provided in ERISA Section 502(a)(3) to a plan participant, beneficiary, or fiduciary to bring a civil action for appropriate equitable relief extends to a suit against a non-fiduciary "party in interest" to a prohibited transaction barred by section 406.[4]

81.     ERISA Section 406(a)(1)(B) prohibits any loans or extension of credit between a plan and any party in interest.  "Party in interest" is defined in ERISA § 3(14) to include a person providing services to the plan, such as Defendant, and any employee participating in the plan.

82.     One of the principal obligations of Washington University as the named fiduciary to the Washington University Plan, as prescribed by ERISA § 404(a)(1)(D), is to discharge its duties with respect to the plan solely in the interest of the participants and beneficiaries ***and consistent with the provisions of ERISA***.  Accordingly, Washington University must be presumed to know the law as set forth in the Plan Loan Rules and, specifically, that the interest on plan loans

---

[4] *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

must be paid to the Plan, not Defendant, and that the collateral requirement violates the rule prohibiting loan program features that are designed to benefit Defendant.

83.     Defendant, as alleged, intentionally designed the loan program to provide itself a significant financial benefit at the expense of plan participants. Further, having been advised by counsel, with decades of experience as the preeminent provider of administrative services to 403(b) plans, and as the designer and administrator of the plan loan program, Defendant must -- as surely as Washington University -- be presumed to know and understand the Plan Loan Rules and, therefore, that features of Defendant's loan program directly violate express conditions for compliance.

84.     Defendant's loan program on its face, violates the Plan Loan Rules in the specific ways enumerated.  Therefore, both Washington University and Defendant know or should know, and at all relevant times knew or should have known, that loans under Defendant's loan program constituted prohibited transactions in violation of ERISA § 406(a)(1)(B).  Further, both Washington University and Defendant know or should know, and at all relevant times knew or should have known, that the requirement to transfer collateral to Defendant's general account was designed to benefit Defendant at the expense of participants and that the approval by Washington University of that program constituted a breach of Washington University's duties of loyalty and prudence.

85.     Defendant is liable under 29 U.S.C. §1109(a) for losses to Plaintiff and the Class resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

## COUNT VI
### Non-Fiduciary Liability for Fiduciary Breach Regarding Specifically
### ERISA 406(a)(1)(D) ("use")

86.     Plaintiff repeats and realleges the allegations contained above as if fully stated herein.

87.     Washington University, as Plan Administrator and named fiduciary to the Washington University Plan, bears fiduciary responsibility with respect to the selection of Defendant as the record keeper, investment manager and retirement plan participant loan administrator, and with respect to the approval and acceptance of the terms and conditions of Defendant's loan program.

88.     The authority provided in ERISA Section 502(a)(3) to a plan participant, beneficiary, or fiduciary to bring a civil action for appropriate equitable relief extends to a suit against a non-fiduciary "party in interest" to a prohibited transaction barred by section 406.[5]

89.     ERISA § 406(a)(1)(D) prohibits (i) the transfer of plan assets to, or (ii) the use of plan assets by or for the benefit of, a party in interest.  Defendant is a party in interest by providing services to the Plan.

90.     Defendant's loan program on its face requires a transfer of plan assets, or use of plan assets by or for the benefit of Defendant, resulting from the mandatory transfer of plan assets from a borrowing participant's selected investment choices into Defendant's general account, which Defendant invests along with the other assets of its general account for its own benefit, keeping for itself the excess of investment earnings of the general account over the interest credited to participants on their collateral.  Therefore, both Washington University and Defendant know or should know, and at all relevant times knew or should have known, that implementation of the

---

[5] *Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000).

collateral provisions of the Defendant's loan program results in prohibited transactions in violation of ERISA § 406(a)(1)(D), for which no exemption was available. [6]

91.     Advised by legal counsel, and experienced in the role as plan sponsor, Washington University as plan fiduciary used Vanguard as well as TIAA as record keeper and custodian prior to July, 2016. Washington University Savings Plan 2014 Form 5500, Independent Auditor's Report at p. 5. As a result, Washington University was put on notice of the critical features of the TIAA loan program, because those features starkly contrast with Vanguard loan program for plan participants. The Vanguard program, unlike the TIAA program, involves no use of plan assets as collateral, but instead allows the participant to borrow from the participant's own account rather than the record keeper's general account.

92.     Defendant, as alleged, intentionally designed the loan program to provide itself a significant financial benefit at the expense of plan participants by requiring a transfer of plan assets from borrowing participants' accounts to Defendant's general account and, therefore, cannot deny knowledge of the transfer of plan assets.

---

[6] Under ERISA Section 406(a)(1), the "knows or should know" requirement with respect to the plan fiduciary concerns only the *structure* of the transaction – is it "lending of money or other extension of credit", or "furnishing of goods, services or facilities", between plan and service provider, and/or is it "use by or for the benefit of a party in interest, of any assets of the plan". The "knows or should know" requirement does not pertain to ERISA Section 408, concerning exemptions. That is, as a matter of pleading, plaintiff need not allege that the plan fiduciary was aware that the charges that TIAA levied in connection with the loan program were excessive. *See Harris Trust and Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000). To the extent that the Court might possibly come to the conclusion – incorrectly, Plaintiff would submit – that Plaintiff must allege the plan fiduciary's knowledge that no exemption under ERISA Section 408 applies, Plaintiff would respectfully request leave to amend for purposes of supplying such allegations.

93.     Defendant is liable under 29 U.S.C. §1109(a) for losses to Plaintiff and the Class resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

## COUNT VII

### Non-Fiduciary Liability for Fiduciary Breach Regarding Specifically
### ERISA 406(a)(1)(C) (unreasonable compensation for services)

94.     Plaintiff repeats and realleges the allegations contained above as if fully stated herein.

95.     Washington University, as Plan Administrator and named fiduciary, has a fiduciary obligation to understand and evaluate the compensation that Defendant receives for the administration of the plan loan program, and to determine whether the compensation is reasonable in relation to the services being provided.

96.     ERISA § 406(a)(1)(C) prohibits the furnishing of services between a plan and a party in interest unless the arrangement meets the requirements of a reasonable contract under 29 CFR § 2550.408b-2 and pays no more than reasonable compensation.

97.     Defendant's loan program, on its face, results in Defendant's receipt of unreasonable compensation.  By effectively requiring an asset-based fee for a simple, fixed recordkeeping service, the bigger the loan, the larger the fee for exactly the same service.  Based only on the obvious difference between the interest rate charged on the loan and the interest rate credited to the collateral, and based on Plaintiff's actual experience, assuming a participant borrowed $5,000, in the first year, he or she would pay an excessive fee of roughly $75 a year for loan servicing, whereas another participant who we assume had borrowed $10,000 at the same time, would pay roughly $150 in the first year of the loan for exactly the same service.  To the extent that Defendant's earnings in its general account exceed the interest rate charged on

participant loans, the actual compensation is significantly more.  On information and belief, the general account earnings are greater than the interest rate charged on the loans.

98.     Beginning in 2012, Washington University would have possessed even greater knowledge than before of Defendant's excessive compensation with respect to the loan program due to the enhanced reporting obligation imposed by 29 CFR § 2550.408b-2(c), requiring Defendant to disclose all direct and indirect compensation it expected to receive in connection with the loan program.   Clearly, Defendant knew exactly how much compensation it was receiving in connection with the loan program, having created an elaborate structure designed to maximize its compensation for administering loans.  Therefore, both Washington University and Defendant knew or should have known that administration of the loan program generated excessive and unreasonable compensation for Defendant, resulting in prohibited transactions in violation of ERISA § 406(a)(1)(C). [7]

99.     Defendant is liable under 29 U.S.C. §1109(a) for losses to Plaintiff and the Class resulting from the breaches of fiduciary duty alleged in this Count and is subject to other equitable or remedial relief as appropriate.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment as follows:

A.     Certify this action as a class action as stated here and appoint Plaintiff's counsel as Class Counsel pursuant to Federal Rule of Civil Procedure 23;

B.     Declare that Defendant breached its fiduciary duties to Plaintiff and the Class;

C.     Enjoin Defendant from further violations of its fiduciary responsibilities, obligations, and duties and from further engaging in transactions prohibited by ERISA;

---

[7] *See* fn. 6, p 26.

D.      Order that Defendant restore to Plaintiff and the Class all losses resulting from its serial breaches of fiduciary duty;

E.       Award Plaintiff reasonable attorney's fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the Class;

F.      Order Defendant to pay prejudgment interest; and

G.      Award such other and further relief as the Court deems equitable and just.

DATED this 27th day of April, 2018.

By:     */s/ John J. Nestico*_____
John J. Nestico (JN8156)
Garrett W. Wotkyns (*Pro Hac Vice*)
Michael McKay (*Pro Hac Vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
8501 N. Scottsdale Road, Suite 270
Scottsdale, Arizona  85253
Telephone: (480) 428-0145
Facsimile: (866) 505-8036
gwotkyns@schneiderwallace.com
mmckay@schneiderwallace.com
jnestico@schneiderwallace.com

Todd Schneider (*Pro Hac Vice*)
SCHNEIDER WALLACE COTTRELL
KONECKY WOTKYNS LLP
2000 Powell Street, Suite 1400
Emeryville, California  94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
tschneider@schneiderwallace.com

Todd S. Collins (*Pro Hac Vice*)
Shanon J. Carson (*Pro Hac Vice*)
Ellen T. Noteware (*Pro Hac Vice*)
BERGER & MONTAGUE, P.C.
1622 Locust Street
Philadelphia, Pennsylvania 19103-6365
Telephone: (215) 875-3000
tcollins@bm.net
scarson@bm.net
enoteware@bm.net
*Attorneys for Plaintiff*

- 30 -

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

By: */s/ Kelle J. Winter*
     Kelle J. Winter