UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA HALEY, *individually and on
behalf of all others similarly situated*,

Plaintiff,

-v-

TEACHERS INSURANCE AND
ANNUITY ASSOCIATION OF
AMERICA,

Defendant.

17-CV-855 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiff Melissa Haley brings this putative class action against Defendant Teachers

Insurance and Annuity Association of America ("TIAA"), alleging that TIAA engaged in

prohibited transactions with the Washington University Retirement Savings Plan in violation of

§ 406 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1106.

After the Court dismissed several of the claims in an earlier complaint (Dkt. No. 28), Haley filed

the operative First Amended Class Action Complaint (Dkt. No. 35). TIAA now moves to

dismiss the operative complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and to

strike certain class allegations. (Dkt. No. 38.) For the reasons that follow, the motion to dismiss

and the motion to strike are denied.

I.      **Background**

The Court assumes familiarity with this case, on the basis of the Court's Opinion

addressing TIAA's prior motion to dismiss. *See Haley v. Teachers Ins. & Annuity Ass'n of Am.*,

No. 17 Civ. 855, 2018 WL 1585673, at *1–2 (S.D.N.Y. Mar. 28, 2018). The following facts are

taken from the First Amended Class Action Complaint (the "Amended Complaint") and are

assumed true for purposes of this motion.

Plaintiff Melissa Haley is an employee of Washington University ("WashU") and a participant in the Washington University Retirement Savings Plan ("the Plan"), an employee pension benefit plan regulated by ERISA. (Dkt. No. 35 ("Compl.") ¶¶ 1, 13.) The Plan offers participants the opportunity to take out a loan against a portion of their retirement accounts. (Compl. ¶ 31; Dkt. No. 35-1 at 2.) The Plan contracted with two outside vendors, Vanguard and Defendant TIAA, to administer these loans. (Compl. ¶ 45; Dkt. No. 35-1 at 3.).

For loans administered by TIAA, participants are required "to borrow from Defendant's general account rather than from the participant's own account." (Compl. ¶ 24.) Thus, participants must first "transfer 110% of the amount of the loan from the participant's plan account . . . to one of Defendant's general account products," which "pay a fixed rate of interest." (*Id.*) The amount transferred to a general account product serves as the collateral securing the loan. (*Id.*) The participant then repays the loan to Defendant's general account, which also earns the interest paid on the loan. (Compl. ¶ 26.) TIAA retains for itself the difference, or "spread," between (a) the interest rate paid to participants with respect to the loan collateral and (b) the amounts earned by TIAA on investments from its general account and from interest paid by participants on the loans.[1] (Compl. ¶¶ 5, 26–28.) In other words, participants do not receive the full amount of the interest they earn on their collateral, because some of it (*i.e.*, the "spread") is taken by TIAA as compensation for administering the loan. (Compl. ¶¶ 39–40.)

---

[1] In the prior complaint, Haley alleged that the "spread" earned by TIAA was limited to the difference between "the loan interest rate paid by participants" to TIAA—4.44% or 4.17%— "and the interest rate received by participants" from TIAA as interest on the collateral—3%. (Dkt. No. 5 ¶¶ 18–19.) In the Amended Complaint, Haley frames the spread slightly differently as encompassing not only "the spread between the rate provided by the general account product in which the collateral is held and the interest rate of the loan, but also the even greater spread between the rate of return on the assets contained in Defendant's general account and the interest rate of the loan." (Compl. ¶ 40.)

Between 2011 and 2015, Plaintiff took out four separate participant loans, which TIAA has administered. (Compl. ¶¶ 1, 14.) Plaintiff has fully repaid the first two loans, and she is in the process of repaying the two outstanding loans. (Compl. ¶ 14.)

Plaintiff filed this putative class action in February 2017, claiming that Defendant's administration of retirement loans to Plan participants (the "loan program") violates ERISA. (Dkt. No. 1.) Plaintiff alleged both that TIAA itself violated its duties as an ERISA fiduciary, and that TIAA is liable as a nonfiduciary for breaches by the Plan Administrator, WashU. (Dkt. No. 5 ¶¶ 48–80.) TIAA moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim. (Dkt. No. 20.) On March 28, 2018, the Court granted the motion to dismiss in part, holding that Plaintiff had standing to bring this action, but that she had not plausibly alleged that TIAA qualified as an ERISA fiduciary. (Dkt. No. 28 at 6, 14.) With respect to Plaintiff's claims for equitable relief against TIAA as a nonfiduciary, the Court granted in part and denied in part the motion to dismiss, and granted Plaintiff leave to amend. (*Id.* at 18–23.)

Plaintiff filed the First Amended Class Action Complaint on May 3, 2018. (Dkt. No. 35.) Counts I through III of the Amended Complaint again allege that TIAA itself violated its duties as an ERISA fiduciary. (Compl. ¶¶ 57–77.) And Counts V through VII allege that TIAA is liable as a nonfiduciary for breaches by the Plan Administrator. (Compl. ¶¶ 48–80.)[2] TIAA now moves to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6), or for an order striking the class allegations in the Amended Complaint under Rule 12(f). (Dkt. No. 38.)

---

[2] The Court notes that the Amended Complaint alleges only six counts. But because the Amended Complaint omits a "Count IV," it delineates the six counts as I through III and V through VII. (Dkt. No. 35.) The Court will use this numbering from the Amended Complaint.

## II.     Motion to Dismiss

TIAA moves to dismiss the Amended Complaint for failure to state a claim under Rule

12(b)(6).[3]  ERISA § 502(a)(3) "authorizes a 'participant, beneficiary, or fiduciary' of a plan to

bring a civil action to obtain 'appropriate equitable relief' to redress violations of ERISA Title I."

*Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 241 (2000) (quoting 29

U.S.C. § 1132(a)(3)).  One such category of violations for which participants can bring suit are

prohibited transactions under § 406, 29 U.S.C. § 1106.  And although § 406 speaks in terms of

restrictions on fiduciaries, "[t]he Supreme Court has held that equitable claims based on § 406(a)

violations may be brought against non-fiduciaries under ERISA § 502(a)(3)."  *Patrico v. Voya*

*Fin., Inc.*, No. 16 Civ. 7070, 2017 WL 2684065, at *4 (S.D.N.Y. June 20, 2017) (citing *Harris*,

530 U.S. at 245–51).

Plaintiff attempts to bring such a claim here, alleging in Counts V through VII that TIAA

is liable as a non-fiduciary for engaging in prohibited transactions through the administration of

its participant loan program, in violation of § 406(a)(1)(B), (C), and (D).  (Compl. ¶¶ 78–99.)

TIAA seeks to dismiss these counts on two grounds: (1) Plaintiff's failure to adequately allege

---

[3]      With respect to the first three counts of the Amended Complaint, which allege that TIAA is liable as an ERISA fiduciary, TIAA argues that the Court already dismissed these claims without leave to replead in the Opinion of March 28, 2018.  (Dkt. No. 39 at 6.)  The Amended Complaint acknowledges as much, but explains that "Plaintiff respectfully repeats the original complaint's allegations that TIAA acted as an ERISA fiduciary, as well as Counts I through IV from the original complaint, for purposes of preserving Plaintiff's appeal rights." (Compl. at 7 n.1.)  Haley makes this preservation point again in her opposition brief, and states that she "acknowledges that the Court's prior order mandates dismissal of Counts I through III and is not seeking to relitigate issues already decided."  (Dkt. No. 40 at 7 n.6.)

In dismissing these claims in its previous Opinion, the Court held that "leave to amend would be futile."  (Dkt. No. 28 at 22.)  Seeing no reason to revisit that conclusion, the Court dismisses Counts I through III for the reasons stated in the Opinion of March 28, 2018.

required elements of claims for non-fiduciary liability; and (2) Plaintiff's request for impermissible legal remedies.  The Court addresses each in turn.

## A.    Legal Standard

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.

## B.    Whether Haley Has Plausibly Alleged Her Non-Fiduciary Liability Claims

Section 406(a)(1) provides in relevant part that, "[e]xcept as provided in [§ 408],"

A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
. . .
    (B) lending of money or other extension of credit between the plan and a party in interest;
    (C) furnishing of goods, services, or facilities between the plan and a party in interest; [or]
    (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan[.]

29 U.S.C. § 1106(a)(1).  Section 408(b) enumerates certain requirements in order for transactions to be statutorily exempt from the prohibitions in § 406.  *See* 29 U.S.C. § 1108(b).

To prevail on a claim for a violation of § 406(a) against a non-fiduciary, "a plaintiff must prove all of the elements of a § 406(a) claim . . . , including that a plan fiduciary had 'actual or constructive knowledge of the facts' that give rise to the § 406(a) violation." *Patrico*, 2017 WL 2684065, at *4 (quoting *Harris*, 530 U.S. at 251). A plaintiff must also demonstrate that the non-fiduciary defendant "had actual or constructive knowledge of the circumstances that rendered the transaction unlawful," which "involve a showing that the plan fiduciary, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction." *Harris*, 530 U.S. at 251 (emphasis omitted).

### 1.     Threshold Issues

Before addressing whether Haley has plausibly alleged each of her claims, the Court must resolve a threshold disagreement between the parties about the elements of these claims and the framework for assessing them at the motion to dismiss stage. This disagreement has two facets: (1) which party bears the burden with regard to demonstrating that any § 408 exemptions are satisfied; and (2) what level of knowledge plaintiffs must allege as to a nonfiduciary participating in a prohibited transaction under § 406.

### i.     Section 408 Exemption as an Affirmative Defense

Haley takes the position that she need not "plead facts that refute Defendant['s] affirmative defenses that TIAA's loan program falls within a Section 408(b) exemption," because "such exemptions are affirmative defenses" that the Defendant "bears the burden of proving by a preponderance." (Dkt. No. 40 at 13–14; *see also id*. at 9 n.9.) TIAA counters that "an ERISA plaintiff has the burden of pleading *all* elements of a non-fiduciary claim," including that the § 408 exemptions are inapplicable in a particular case. (Dkt. No. 41 at 2.)

District courts in this Circuit have repeatedly affirmed that the § 408 exemptions are considered "affirmative defenses that a defendant bears the burden of proving by a

preponderance of the evidence if their applicability is in dispute." *Sacerdote v. N.Y. Univ.*, No. 16 Civ. 6284, 2017 WL 3701482, at *4 (S.D.N.Y. Aug. 25, 2017); *see Bekker v. Neuberger Berman Grp. LLC*, No. 16 Civ. 6123, 2018 WL 4636841, at *8 (S.D.N.Y. Sept. 27, 2018); *see also Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006) (holding that the defendant "fiduciary bears the burden of proving by a preponderance of the evidence" that the § 408(e) exemption is satisfied).

TIAA argues, nonetheless, that although fiduciary defendants bear this burden because "they have a duty not to engage in self-interested transactions," a non-fiduciary defendant has "no such duty and, thus, no such burden." (Dkt. No. 41 at 2 n.3.) The Court disagrees.

TIAA identifies no cases that have squarely considered the issue and held that, inconsistent with the treatment of *fiduciary* defendants, the applicability of a § 408 exemption is not an affirmative defense for *non-fiduciary* defendants, and *non-fiduciary* defendants do not bear the ultimate burden of satisfying the exemption. Nor does the Court see any good justification for creating this distinction. Non-fiduciary defendants charged with knowing participation in prohibited transactions are equally well-suited to invoke a § 408 exemption to avoid liability. As to TIAA's argument that non-fiduciaries have no duty to avoid prohibited transactions, *Harris* established that non-fiduciaries have a duty "imposed by § 502(a)(3) itself" not to knowingly participate in violations of ERISA. *Harris*, 530 U.S. at 247. Non-fiduciaries can thus invoke § 408 exemptions to demonstrate that this duty was not breached.

Additionally, it makes little sense to require a plaintiff to identify and refute each potentially applicable exemption in the complaint. First, there are over twenty discrete statutory exemptions that could apply to a prohibited transaction under § 406. *See* 29 U.S.C. § 1108(b)–

(c). And the list expands greatly when one considers the additional administrative exemptions that the Secretary of Labor can exercise statutory authority to craft. *See* 29 U.S.C. § 1108(a).

Second, it is often the case that plaintiffs bring these prohibited transaction claims against both fiduciary and non-fiduciary defendants, *see, e.g.*, *Leber v. Citigroup, Inc.*, No. 07 Civ. 9329, 2010 WL 935442, at *9–11, *14 (S.D.N.Y. Mar. 16, 2010), or against an alleged-fiduciary defendant that a court later determines to be a non-fiduciary, *see Haley*, 2018 WL 1585673, at *8–9; *Bekker*, 2018 WL 4636841, at *11. It would be unnecessarily complicated and duplicative to require plaintiffs to bear the burden of alleging and proving the non-applicability of a § 408 exemption as to some defendants but not others; or to require plaintiffs to adequately plead the non-applicability prophylactically, in the event that they lose on the argument that defendant is a fiduciary.

The conclusion that fiduciary and non-fiduciary defendants should bear the same burden of demonstrating the applicability of a § 408 exemption is consistent with cases that have treated the exemptions as an affirmative defense. The justification for such treatment rests on a desire to "rightly place[] the burden on the party with access to the necessary information to demonstrate that the allegedly prohibited transaction is indeed permitted by the exemption." *Bekker*, 2018 WL 4636841, at *8.[4] This reasoning is divorced from any concern about the fiduciary's duty. And particularly where the non-fiduciary is the transferee of plan assets in the alleged prohibited transaction, as here, it is the party with the necessary information to demonstrate the satisfaction of a § 408 exemption. *But see Rozo v. Principal Life Ins. Co.*, 344 F. Supp. 3d 1025, 1038–39

---

[4]     Furthermore, in holding that § 408 is an affirmative defense which a plaintiff need not negate in her pleading, the *Bekker* court did not expressly limit its holding to *fiduciary* defendants. *See Bekker*, 2018 WL 4636841, at *7–9 (dealing with the § 408 burden issue before assessing the Defendants' fiduciary status).

(S.D. Iowa 2018) (rejecting this argument and holding that plaintiffs bear the burden of proving that a non-fiduciary's conduct does not fall within a § 408 exemption), *appeal docketed*, No. 18-3310 (8th Cir. Oct 30, 2018).

Overall, defendants who are transferees in an alleged prohibited transaction are similarly situated to fiduciary defendants with respect to information relevant to § 408 exemptions, they have similar incentives to argue in favor of the applicability of § 408 exemptions, and it makes little administrative sense to impose different burdens on such defendants due to their non-fiduciary status. Accordingly, the Court concludes that the applicability of a § 408 exemption is an affirmative defense on which such non-fiduciary defendants bear the ultimate burden. As such, dismissal under Rule 12(b)(6) based on the application of a § 408 exemption is warranted only if it is "clear from the face of the Complaint or judicially noticed court filings that the Plan's use of proprietary funds falls within an available exemption." *Moreno v. Deutsche Bank Ams. Holding Corp.*, No. 15 Civ. 9936, 2016 WL 5957307, at *6 (S.D.N.Y. Oct. 13, 2016).

### ii. Interplay of Knowledge Requirement with § 408 Exemption

The crux of TIAA's argument in support of its motion to dismiss is that Haley's complaint fails to allege the requisite knowledge. But in order to determine whether that is indeed the case, the Court must first establish the contours of the applicable knowledge requirement. TIAA contends that the complaint must include "non-conclusory allegations that WashU and TIAA knew not only that the transactions occurred, but also that the transactions were not exempt under 408(b)." (Dkt. No. 39 at 8.) Haley takes the contrasting position that a plaintiff need not allege awareness of the non-applicability of a § 408 exemption on the part of

the fiduciary or non-fiduciary defendant. (Compl. at 27 n.6; *see also* Dkt. No. 41 at 2–3 (characterizing Haley's position on this point).) Haley has the better argument.[5]

To determine the knowledge requirement for a § 406 non-fiduciary liability claim, the Court first surveys the relevant case law. The Supreme Court has stated that, in a case against a non-fiduciary part in interest to a prohibited transaction under § 406(a),

> the transferee must be demonstrated to have had actual or constructive knowledge of the circumstances that rendered the transaction unlawful. Those circumstances, in turn, involve a showing that the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction.

*Harris*, 530 U.S. at 251. Under its most natural reading, this language suggests that the non-fiduciary needs to know: (1) that the transferor is an ERISA plan fiduciary; (2) that the fiduciary caused the plan to engage in the transaction; (3) that the fiduciary had knowledge of the facts underlying the transaction that subjected it to § 406(a); and (4) any facts relevant to the transaction that bring it under § 406(a). Additionally, the fiduciary needs to know the facts underlying the transaction that bring it within the purview of § 406(a). But nothing in *Harris* requires the fiduciary transferor or the non-fiduciary transferee to have knowledge of the law, *i.e.*, knowledge that the transaction violated ERISA. *See Neil v. Zell*, 753 F. Supp. 2d 724, 731

---

[5]     TIAA argues that the Court's Opinion of March 28, 2018, dictates a ruling in its favor on this question. (Dkt. No. 39 at 8; Dkt. No. 41 at 3.) In that Opinion, the Court held that Plaintiff had not adequately alleged that both WashU and TIAA knew that TIAA was receiving unreasonably excessive compensation, so as to fall outside the § 408(b)(2) exemption. (Dkt. No. 28 at 18–19.) The Court notes, however, that the requisite knowledge requirement for non-fiduciary claims was not addressed by the parties' briefing on the first motion to dismiss. (*See* Dkt. No. 21 at 20–22; Dkt. No. 26.) Here, with the question squarely presented and raised by the parties for the first time, the Court concludes that plaintiffs asserting a prohibited transaction claim under § 406(a) need not allege that the fiduciary or non-fiduciary defendant knew that the conduct was not exempted by § 408(b) in order to survive a motion to dismiss.

(N.D. Ill. 2010) (interpreting *Harris* to mean that fiduciary and non-fiduciary defendants need only "actual or constructive knowledge of the deal's details").

Other district courts that have considered the matter have agreed that *Harris* does not require the fiduciary transferor to have knowledge that the transaction violated ERISA. *See Teets v. Great-W. Life & Annuity Ins. Co.*, 286 F. Supp. 3d 1192, 1208–09 (D. Colo. 2017) ("As to a plan fiduciary, 'facts satisfying the elements of a 29 U.S.C. § 1106(a) transaction' seems plainly aimed at requiring only a knowledge of basic facts[.]" (brackets omitted)); *Rozo*, 344 F. Supp. 3d at 1037–38. This approach is consistent with the knowledge requirement as it is expressed in the statute. *See* 29 U.S.C. § 1106(a)(1)(C) ("A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . furnishing of goods, services, or facilities between the plan and a party in interest," etc.).

However, at least two district courts have held that *Harris* requires the non-fiduciary transferee to have both "knowledge of the underlying facts," and "knowledge of their potential unlawfulness." *Teets*, 286 F. Supp. 3d at 1208; *see Rozo*, 344 F. Supp. 3d at 1037. For this conclusion, these cases rely on the language of *Harris* and the treatises it cites.

But the most natural reading of "actual or constructive knowledge of the circumstances that rendered the transaction unlawful" requires knowledge of the underlying *factual* circumstances relevant to lawfulness, not knowledge of the *legal conclusion* that the transaction was unlawful. *Harris*, 530 U.S. at 251. Nothing about the phrase "circumstances that rendered the transaction unlawful" requires knowledge that the transaction was indeed unlawful under § 406(a), any more than "actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction" requires knowledge that the transaction violated § 406(a). If the Supreme

Court intended to require non-fiduciary defendants to have knowledge that the transaction they were engaged in violated ERISA, the Court could have used clear language to do so. But the standard as described in *Harris*—requiring knowledge of only the "circumstances" or "facts" of a transaction—does not mandate that level of scienter.

With respect to the treatises that some courts have relied on to support a different interpretation of *Harris*, the Court notes that *Harris* does not specifically rely on them in describing the applicable knowledge standard for non-fiduciary transferee defendants. *See* 530 U.S. at 250. At any rate, *Harris* cites these treatises for the general principle that "when a trustee in breach of his fiduciary duty to the beneficiaries transfers trust property to a third person, the third person takes the property subject to the trust, unless he has purchased the property for value and without notice of the fiduciary's breach of duty." *Id*. Within that proposition, it is the concept of "notice" that is relevant to the non-fiduciary's requisite knowledge; and in laying out the knowledge standard for non-fiduciaries, the Court clarified what "notice" entails under these particular circumstances. To the extent that the common law of trusts required transferees to have some level of knowledge of a violation of law, *Harris* signaled that constructive notice of such a violation is achieved by "actual or constructive knowledge of the circumstances that rendered the transaction unlawful," including knowledge that "the *plan fiduciary*, with actual or constructive knowledge of the facts satisfying the elements of a § 406(a) transaction, caused the plan to engage in the transaction." *Id*. at 251. The Court thus reads *Harris* to implement the common law of trusts, as reflected in the treatises, by delineating a knowledge requirement for non-fiduciaries that satisfies the requisite level of constructive notice.

The Court thus reads *Harris* to instruct that the fiduciary transferor and non-fiduciary transferee defendant must have knowledge of certain facts underlying the prohibited transaction, but need not have knowledge that the transaction violated ERISA, to be liable under § 406(a).[6]

The Court has not found any precedent from the Second Circuit to contradict this reading of *Harris*. In *Diduck v. Kaszycki & Sons Contractors, Inc.*, which predates *Harris*, the Second Circuit held that a non-fiduciary defendant can be liable for breach of a fiduciary duty under ERISA § 404, if plaintiffs can demonstrate "defendant's knowing participation in the breach." 974 F.2d 270, 281–82 (2d Cir. 1992), *partial abrogation on other grounds recognized by Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317 (2d Cir. 2003). *Diduck* defined the "relevant 'knowledge' for liability to attach for knowingly participating in a fiduciary's breach of duty" as both "knowledge as to the primary violator's status as a fiduciary and knowledge that the primary's conduct contravenes a fiduciary duty." *Id.* at 282–83. The knowledge standard articulated in *Diduck* thus requires something akin to *legal* knowledge: knowledge that conduct violated a fiduciary duty.

At least one court in this District has applied the *Diduck* knowledge standard to § 406 knowing participation claims. *See Leber*, 2010 WL 935442, at *14 (applying the *Diduck* knowledge standard to knowing participation claims under both § 404 and § 406, without any differentiation). Another court declined to apply the *Diduck* knowledge standard from § 404

---

[6]     The Court's reading of *Harris* is supported by an additional aspect of that opinion as well. *Harris* reasoned that the fact that both "the harmed beneficiaries" and "the *culpable* fiduciary" could "seek restitution from the arguably *less culpable* [non-fiduciary]-transferee" as a result of the opinion would not be an incongruous outcome. *Id*. at 252 (emphasis added). But if the non-fiduciary defendant were required to participate in the transaction knowing that it violated ERISA—whereas the fiduciary could be liable for knowing only the underlying facts— the non-fiduciary could hardly be said to be *less* culpable than the fiduciary. The relative levels of culpability in this hypothetical supports the conclusion that the transferee is not required to have a higher degree of knowledge of the unlawfulness of the transaction than the transferor.

claims to § 406 claims. *Gray v. Briggs*, 45 F. Supp. 2d 316, 329 (S.D.N.Y. 1999) ("*Diduck* addressed liability for breaches of Section 404, and not prohibited transactions under Section 406."). The Court declines to extend the *Diduck* standard to the context of § 406 claims, given its apparent inconsistency with *Harris*, which requires knowledge of only the *factual* circumstances underlying the violation of law.

Turning to relevant precedent from district courts in this Circuit: The Court has not found any cases that have squarely addressed the effect of *Harris* on the scienter requirements for § 406 claims against non-fiduciaries. Before *Harris*, one court held that in a § 406 knowing participation claim, "the nonfiduciary, like the fiduciary, must have known or should have known at least what actually occurred, if not [also] that it was prohibited." *Gray*, 45 F. Supp. 2d at 329. And another court held that such claims had no scienter requirement for the non-fiduciary defendant. *Liss v. Smith*, 991 F. Supp. 278, 307 n.30 (S.D.N.Y. 1998) (reasoning that "knowledge with respect to the prohibited nature of the transactions is irrelevant" for non-fiduciary defendants, because such transactions are *per se* ERISA violations).

Additionally, at least two courts have assumed that plaintiffs must allege that both the fiduciary and non-fiduciary defendants knew the transaction was unlawful, specifically in the context of excessive compensation claims under § 406(a)(1)(C) and § 408(b)(2). *See Allen v. Bank of Am. Corp.*, No. 15 Civ. 4285, 2016 WL 4446373, at *9 (S.D.N.Y. Aug. 23, 2016) ("To state a claim under § 406(a) . . . , Plaintiffs must allege not only that the non-fiduciary defendants knew that they received excessive compensation, but also that the plan fiduciaries knew or should have known that the payment tendered to Defendants was unreasonable." (ellipsis in original) (brackets omitted) (quoting *Laborers' Pension Fund v. Arnold*, No. 00 Civ. 4113, 2001 WL 197634, at *8 (N.D. Ill. Feb. 27, 2001))); *Patrico*, 2017 WL 2684065, at *4 ("[T]he

Complaint fails to allege that any ERISA fiduciary had actual or constructive knowledge that the fees paid . . . are excessive.").  But these courts did not expressly consider the consistency of such a scienter requirement with *Harris*.

Having surveyed this precedent, the Court sees no reason to depart from its reading of *Harris*.  Accordingly, contrary to Defendant's argument, the Court holds that plaintiffs bringing § 406(a) knowing participation claims need not demonstrate that the fiduciary or the non-fiduciary defendant knew or should have known that the transaction at issue violated ERISA.  In other words, to survive a motion to dismiss, plaintiffs need not plausibly allege that the fiduciary and non-fiduciaries involved knew that the transaction at issue was a "prohibited transaction" under § 406(a) that did not fall within an exemption under § 408(b).[7]  Instead, as explained above, *Harris* generally requires plaintiffs to plausibly allege that non-fiduciary transferee defendants knew they were transacting with an ERISA fiduciary, and knew the factual circumstances underlying the transaction that are relevant to the application of § 406(a).

This result is supported by the Court's conclusion above regarding the status of § 408 exemptions as an affirmative defense.  Fiduciary and non-fiduciary defendants bear the ultimate burden of proving that their conduct was exempt from § 406 liability under § 408, and at the motion to dismiss stage a plaintiff need only allege sufficient facts in the complaint such that it is not clear that an exemption applies.  It would be incongruous to require plaintiffs to allege

---

[7]	The Court notes that this conclusion differs slightly from the knowledge standard Haley proposes, whereby plaintiffs would be required to allege that the non-fiduciary and fiduciary knew (or should have known) that their conduct fell within § 406(a), but plaintiffs would not be required to allege knowledge that conduct was not exempt under § 408(b).  (*See* Dkt. No. 40 at 20 ("[A] *Harris Trust* claim against a non-fiduciary requires allegations that the non-fiduciary defendant as well as the plan fiduciary knew (or should have known) about the conduct at issue and the fact that it violated ERISA's prohibited transaction rules.").)  The Court does not read the case law to support such a compromise.  But even if it did, the Court would hold that the Amended Complaint satisfies that requirement.

sufficient facts only to put the application of a § 408 exemption in question at the motion to dismiss stage, but to simultaneously require plaintiffs to plausibly allege that defendants knew their conduct was *not* covered by an exemption. Declining to impose such a scienter requirement is thus consistent with the allocation of the ultimate burden of proving that an otherwise prohibited transaction is exempt, which lies with the defendants.

The Court's holding regarding the applicable knowledge requirement is also consistent with the nature of prohibited transactions under ERISA. "Congress enacted ERISA § 406(a)(1), which supplements the fiduciary's general duty of loyalty to the plan's beneficiaries, § 404(a), by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Harris*, 530 U.S. at 241–42 (quoting *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)); *see also Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) ("Section 406 of ERISA supplements the general fiduciary obligations set forth in § 404 by prohibiting certain categories of transactions believed to pose a high risk of fiduciary self-dealing."). "Generally, § 406(a) concerns 'commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length.'" *Patrico v. Voya Fin., Inc.*, No. 16 Civ. 7070, 2018 WL 1319028, at \*6 (S.D.N.Y. Mar. 13, 2018) (quoting *Lockheed Corp. v. Spink*, 517 U.S. 882, 893 (1996)). "The transactions covered by Section 406(a)(1) 'are per se violations of ERISA regardless of the motivation which initiated the transaction, the prudence of the transaction, or the absence of any harm arising from the transaction.'" *Gray*, 45 F. Supp. 2d at 326 (quoting *Reich v. Polera Bldg. Corp.*, No. 95 Civ. 3205, 1996 WL 67172, \*2 (S.D.N.Y. Feb. 15, 1996)).

Requiring plaintiffs to demonstrate that fiduciary transferors and non-fiduciary transferees knew their transaction violated ERISA would erect a significant barrier to the ability

of plaintiffs in such cases to survive a motion to dismiss or ultimately prevail.  This would

impede plan beneficiaries in their efforts to police prohibited transactions between plan

fiduciaries and plan servicers.  Conversely, declining to impose a scienter requirement on

fiduciaries and non-fiduciary defendants is consistent with the treatment of § 406 prohibited

transactions as *per se* violations of ERISA which pose unique risks to the health of the plans.

*See Liss*, 991 F. Supp. at 306 n.30.[8]

 TIAA raises two arguments against this result, which the Court finds unpersuasive.  First,

TIAA contends that these knowledge standards, coupled with the broad text of § 406(a), would

impermissibly "force[ non-fiduciary transferees] into discovery in every single case."  (Dkt. No.

41 at 3; *see also* Dkt. No. 39 at 8 n.6 (arguing that such a regime would cast too wide a net and

be "an exceptionally poor way of identifying fiduciaries and non-fiduciaries engaged in

malfeasance").)  But this will not necessarily be true.  Although plaintiffs have "no duty to

negate the availability of [a] section 408(b)[] affirmative defense," and need not demonstrate that

defendants knew the transaction violated § 406 or did not satisfy an exemption under § 408,

courts "must still consider whether the facts alleged in the Complaint plainly establish [an]

exemption's applicability."  *Bekker*, 2018 WL 4636841, at *9 (emphasis omitted).  If plaintiffs

have alleged no facts that would bring the transaction outside the safe harbor of the exemptions,

the claims must be dismissed.  *See Sacerdote*, 2017 WL 3701482, at *13–14 (holding that

although allegations satisfied broad language of § 406(a)(1)(C), they were insufficient to survive

---

 [8] Moreover, knowing participation claims under ERISA § 406 "do not require proof of willfulness, and good faith is not a defense." *Gray*, 45 F. Supp. 2d at 330; *id*. at 326 (noting that the motivation for such a transaction was irrelevant).  But to require plaintiffs to demonstrate that fiduciary transferors and non-fiduciary transferees knew the transaction violated ERISA would come close to creating just such a good faith defense; and such a defense would be inconsistent with ERISA's treatment of prohibited transactions as *per se* violations of the statute.

motion to dismiss); *Cunningham v. Cornell Univ.*, No. 16 Civ. 6525, 2017 WL 4358769, at *10 (S.D.N.Y. Sept. 29, 2017) (same). Non-fiduciary defendants will still be able to rely on the lesser knowledge requirements established by *Harris*, and the existence of the § 408 safe harbor, to defeat claims that should not survive a motion to dismiss.

Second, TIAA contends that it would "expose non-fiduciaries to the same litigation risks and expenses as fiduciaries, which is the opposite of Congress's intent." (Dkt. No. 41 at 3.) But the Court's interpretation of *Harris* imposes a greater knowledge requirement on non-fiduciaries. Whereas plaintiffs must plausibly allege that a fiduciary transferor knew only the facts underlying the § 406 violation, plaintiffs must allege that the non-fiduciary transferee also knew those factual circumstances, in addition to the facts that the transferor was an ERISA fiduciary and caused the transaction with the knowledge of the underlying facts. And concerns that § 406 would impose too high a burden on the non-fiduciary defendants can be accommodated by "inform[ing] courts' determinations of what a transferee should (or should not) be expected to know when engaging in a transaction with a fiduciary." *Harris*, 530 U.S. at 253.

### iii.    Conclusion

In accordance with the nature of the § 408 exemptions and the knowledge requirements, as discussed above, plaintiffs must plausibly allege the following elements of a § 406(a) knowing participation claim against a non-fiduciary transferee to survive a motion to dismiss:

1) the fiduciary caused the plan to engage in a prohibited transaction as defined by § 406(a)(1);
2) the factual circumstances of the transaction, which are such that a § 408 exemption does not clearly apply;
3) in causing the transaction, the fiduciary knew or should have known the factual circumstances underlying the transaction that satisfied § 406(a)(1);
4) the non-fiduciary knew that the transferor is an ERISA fiduciary;
5) the non-fiduciary knew that the fiduciary caused the transaction with the knowledge of the underlying facts that bring the transaction within § 406(a)(1); and

6) the non-fiduciary knew or should have known the factual circumstances underlying the transaction that satisfied § 406(a)(1).

The Court will address whether Haley has sufficiently alleged facts to establish these elements in the Amended Complaint, for each of the three claims asserted under § 406(a)(1).

## 2.    Section 406(a)(1)(B) Claim

First, Haley contends that in causing the plan to lend money to plan participants through TIAA's loan program, WashU has violated ERISA § 406(a)(1)(B) and TIAA has knowingly participated in that violation.  (Compl. ¶¶ 3–4, 78–85.)

Section 406(a)(1)(B) prohibits fiduciaries from causing a plan to engage in a transaction that "constitutes a direct or indirect . . . lending of money or other extension of credit between the plan and a party in interest."  29 U.S.C. § 1106(a)(1)(B).[9]  The corresponding exemption for this conduct can be found in § 408(b)(1), which provides that the prohibitions in § 406 do not apply to "[a]ny loans made by the plan to parties in interest who are participants or beneficiaries of the plan if such loans . . . bear a reasonable rate of interest," and satisfy other enumerated conditions.  29 U.S.C. § 1108(b)(1).  Regulations regarding the application of the § 408(b)(1) exemption provide in part that "a loan program containing a precondition designed to benefit a party in interest (other than the participant) is not afforded relief by section 408(b)(1) or this regulation."  29 C.F.R. § 2550.408b-1(a)(3)(i).

Haley contends that TIAA's loan program is prohibited by § 406(a)(1)(B), and does not satisfy the § 408(b)(1) exemption because it does not bear a reasonable rate of interest, and the requirement that funds be transferred to TIAA to serve as collateral constitutes a precondition

---

[9]     It is undisputed that Haley, as a plan participant, qualifies as the "party in interest" for this claim.  Nor is it disputed that TIAA, as a service provider, qualifies as the "party in interest" for the remaining claims.  (Dkt. No. 28 at 18 n.10.)

designed to benefit TIAA.  (Dkt. No. 40 at 3.)  In seeking dismissal of this claim, TIAA argues

that Haley has not sufficiently alleged: (i) the elements of a § 406(a)(1)(B) violation;

(ii) knowledge; and (iii) the inapplicability of the § 408(b)(1) exemption.

(i)  TIAA argues that its loan program does not fall within § 406(a)(1)(B) because it

involves the lending of money "between two different parties in interest," instead of "between

the Plan and a party in interest."  (Dkt. No. 39 at 17; Dkt. No. 41 at 4.)  The Court rejects this

argument as foreclosed by the statute on its face:  Section 406(a)(1)(B) proscribes both direct and

*indirect* loans from the plan to participants.  Enlisting a service provider to administer loans, with

funds from the plan, constitutes such an "indirect" loan subject to this prohibition.

(ii)  The bulk of TIAA's argument on the § 406(a)(1)(B) claim is directed at knowledge.

TIAA contends that Haley did not sufficiently allege that WashU or TIAA knew that the loan

program was not exempt under § 408(b)(1).  (Dkt. No. 39 at 15–19.)  As the Court explained

above, however, the Amended Complaint must allege knowledge of certain underlying facts, but

not knowledge that the transaction at issue violated ERISA.  The applicable knowledge

requirement is satisfied here:  Haley plausibly alleged that TIAA knew it was transacting with an

ERISA fiduciary, and that WashU and TIAA knew that the loan program involved the indirect

lending of money between the Plan and plan participants.  (Compl. ¶¶ 8–10, 15, 45, 83–84.)

(iii)  Finally, TIAA argues that its loan program is exempt under § 408(b)(1).  In support

of this contention, TIAA notes that its loan program is structured similarly to other permissible

participant loan programs.  (Dkt. No. 39 at 16; *id*. at 10–15 (surveying history of collateralized

loan programs and differences between 403 and 401(k) plans).)  As TIAA observes, Plaintiff

does not respond to this specific argument.[10]  (Dkt. No. 41 at 6.)  And the point is well taken:

that TIAA uses assets in an annuity contract as collateral for its participant loans, and funds the

loans from its general account, alone does not render the administration of its loan program a

nonexempt prohibited transaction.  But the fact that similarly structured programs *can* comply

with ERISA's provisions and regulations does not mean that *this* program is necessarily

compliant.

Additionally, TIAA argues that Haley does not plausibly allege that the interest rate

TIAA receives for the loan was unreasonable.  (Dkt. No. 39 at 17.)  This is tantamount to an

argument that the § 408(b)(1) exemption clearly applies on the face of the Amended Complaint.

As discussed above, dismissal under Rule 12(b)(6) of a § 406(a) claim is appropriate

where a defendant raises a § 408 exemption "as an affirmative defense and it is clear from the

face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's

claims are barred as a matter of law."  *Sewell v. Bernardin*, 795 F.3d 337, 339 (2d Cir. 2015)

(quoting *Staehr v. Hartford Fin. Servs. Grp.*, 547 F.3d 406, 425 (2d Cir. 2008)).  Dismissal of the

§ 406(a)(1)(B) claim is thus inappropriate unless it is clear on the face of the Complaint that the

loans administered by TIAA "bear a reasonable rate of interest."  29 U.S.C. § 1108(b)(1).

Haley contends that the Plan "does not receive a reasonable rate of interest" from the

participant loans because TIAA charged a "loan interest rate of 4.44%" to participants but only

---

[10]     TIAA raises an additional argument to which Haley does not respond:  that
Haley's interpretation of § 408(b)(1) as inapplicable to loan programs containing a "precondition
designed to benefit a party in interest" is both not legally enforceable and overbroad because it
would proscribe conduct that is clearly permissible under ERISA.  (Dkt. No. 39 at 17 (quoting 29
C.F.R. § 2550.408b-1(a)(3)(i)).)  Again, this argument is well taken.  But the Court is mindful
that TIAA bears the ultimate burden of demonstrating the application of the § 408(b)(1)
exemption.  Because the Court is satisfied that the exemption does not clearly apply, as
explained below, the proper interpretation and force of the impermissible precondition discussed
in 29 C.F.R. § 2550.408b-1(a)(3)(i) need not be decided here.

paid a rate of 3% to the Plan. (Dkt. No. 40 at 3.) As the relevant regulations explain, a loan "bear[s] a reasonable rate of interest if such loan provides the plan with a return commensurate with the interest rates charged by persons in the business of lending money for loans which would be made under similar circumstances." 29 C.F.R. § 2550.408b-1(e). It is not clear from the face of the Amended Complaint that the rate of return ultimately paid to the Plan—3%—is commensurate with rates charged for similar loans. The fact that the only other loan interest rates alleged in the Amended Complaint—the 4.44% and 4.17% interest paid to TIAA by plan participants— is noticeably larger supports the inference that the plan loans may not bear a reasonable rate of interest.

For this reason, the Court cannot conclude that § 408(b)(1) clearly exempts TIAA's loan program from liability. Accordingly, because Haley has adequately alleged the application of § 406(a)(1)(B) and the requisite knowledge of the fiduciary and defendant non-fiduciary, TIAA's motion to dismiss the § 406(a)(1)(B) claim is denied.

### 3. Section 406(a)(1)(C) Claim

Next, Haley claims that TIAA's loan program constitutes a service agreement between the Plan and an interested party, prohibited by ERISA § 406(a)(1)(C). (Compl. ¶¶ 6, 8, 94–99.) Section 406(a)(1)(C) prohibits transactions that constitute the direct or indirect "furnishing of goods, services, or facilities between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(C). Section 408(b)(2) exempts certain transactions from the prohibitions of § 406(a)(1)(C), where they comprise contracts "for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan," and where "no more than reasonable compensation is paid therefor." 29 U.S.C. § 1108(b)(2); *see also* 29 C.F.R.

§ 2550.408b-2. TIAA offers two grounds for dismissing this claim: (i) knowledge, and (ii) the application of the § 408(b)(2) exemption.

(i) As with the other claims, TIAA primarily argues that Haley does not sufficiently allege that WashU and TIAA knew that the loan program was not exempt under § 408(b)(2). (Dkt. No. 39 at 19–20.) Applying the proper knowledge standard discussed above, however, the Court concludes that the Amended Complaint plausibly alleges that TIAA knew that WashU was an ERISA fiduciary causing this transaction, and that both entities knew or should have known the underlying facts that bring their service agreement within the prohibition of § 406(a)(1)(C). (Compl. ¶¶ 8–10; 98.)

(ii) TIAA also argues that dismissal is required because the Amended Complaint alleges insufficient facts to demonstrate that the fees paid to TIAA for administering the loan program are unreasonably excessive. (Dkt. No. 39 at 20.) Haley responds, in part, that the structure of the TIAA loan program compared to Vanguard's loan program, and the nature of asset-based fees, supports the conclusion that TIAA received unreasonable compensation for administering its loan program. (Dkt. No. 40 at 16.) As TIAA observes, however, the Court already rejected these allegations in its March 28, 2018 Opinion as "insufficient to state a claim for knowingly excessive compensation." (Dkt. No. 28 at 19; *see* Dkt. No. 41 at 8.) The Court thus considers the two new allegations offered by Haley in the Amended Complaint to determine whether they move her excessive compensation claim over the line from possible to plausible.

First, the Amended Complaint characterizes TIAA's compensation in a new way; instead of the gap between the interest earned by TIAA on the loan and the interest rate TIAA pays on the collateral (Dkt. No. 5 ¶ 18), Haley now alleges that TIAA earns the larger difference between "the amount Defendant earns on investments in its general account and the amount that

Defendant credits to participants on the posted collateral" (Compl. ¶¶ 27). Haley contends that the magnitude of this investment income earned—which is "materially more than the interest that Defendant pays the participant on the collateral securing repayment of the loan" (Compl. ¶ 26)—makes the compensation unreasonably excessive (Dkt. No. 40 at 15).

TIAA counters that the only allegations that it "earned greater interest than it paid to plan participants" are made "on information and belief," which are "inadequate to satisfy *Twombly/ Iqbal*." (Dkt. No. 41 at 7–8; *see also* Compl. ¶¶ 26, 97.) The Court disagrees.

The Second Circuit has held that allegations made "on information and belief" satisfy the *Twombly* pleading threshold under certain circumstances. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010); *Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 461 (S.D.N.Y. 2016). Such circumstances include when the facts pleaded are "peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista*, 604 F.3d at 120 (internal citation omitted). Here, the first exception applies: The investment income that TIAA earns on its general account is information uniquely within TIAA's possession. The Court will thus consider these allegations as supporting Haley's excessive compensation claim.

Second, Haley contends that TIAA's failure to disclose to WashU the total compensation TIAA received in administering the loan program—contrary to the applicable regulations, 29 C.F.R. § 2550.408b-2(c)(1)—supports the inference that those fees were excessive. (Dkt. No. 40 at 15–16.) And the Amended Complaint, after reviewing the relevant regulations, states that "[n]one of the Annual Returns for the Washington University Plan filed with the US Department of Labor on Form 5500 contain any information or disclosure that Defendant is receiving indirect

compensation with respect to the loan program by keeping a portion of the interest on paid [*sic*]

by plan participants on amounts borrowed from their own accounts."  (Compl. ¶ 50.)

TIAA argues that this allegation does not support Haley's claim, because the Amended

Complaint does not allege "that TIAA failed to comply with its regulatory disclosure

requirements," and "TIAA has no responsibility for the Plan's Annual Returns."  (Dkt. No. 41 at

8.)  Again, the Court is unpersuaded.  Haley alleges that WashU is not reporting on its annual

return to the Department of Labor any indirect compensation that TIAA received through

administering the loan program.  (Compl. ¶ 50.)  The reasonable inference from this allegation is

that TIAA is either failing to disclose its indirect compensation to WashU,[11] or WashU is failing

to report this compensation to the government.  Either circumstance raises a red flag about the

propriety of the level of compensation received by TIAA in connection with the loan program.

This allegation thus serves as the kind of "evidence of self-dealing or other disloyal conduct"

that enables plaintiffs to state a claim for excessive compensation.  *Cunningham*, 2017 WL

4358769, at *10.

Overall, the collective allegations in the Amended Complaint plausibly establish that the

§ 408(b)(2) safe harbor does not clearly exempt the conduct at issue.  Accordingly, TIAA's

motion to dismiss the excessive compensation claim is denied.

---

[11]     TIAA argues that its regulatory disclosures were adequate (Dkt. No. 41 at 8), and
it has filed those documents with the Court in support of its motion to dismiss (Dkt. No. 42).
However, the Court may not consider this evidence in ruling on its motion to dismiss, because it
is not clear that Haley previously possessed the documents, and she did not rely "on the terms
and effect of [the] document[s] in drafting the complaint."  *Chambers v. Time Warner, Inc.*, 282
F.3d 147, 153 (2d Cir. 2002).

### 4.  Section 406(a)(1)(D) Claim

Finally, Haley claims that TIAA's loan program violates ERISA § 406(a)(1)(D). (Compl. ¶¶ 5, 8, 86–93.)  Section 406(a)(1)(D) prohibits transactions that constitute a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan."  29 U.S.C. § 1106(a)(1)(D).   Under the corresponding safe harbor, transfers of plan assets to service providers are exempt where, in connection with the transfer, "the plan receives no less, nor pays no more, than adequate consideration."  *Id.* § 1108(b)(17)(A).  "[I]n the case of an asset other than a security for which there is a generally recognized market," adequate consideration means "the fair market value of the asset as determined in good faith by a fiduciary or fiduciaries."  *Id.* § 1108(b)(17)(B)(ii).

In the March 28, 2018 Opinion, the Court held that Haley "adequately alleged that the transfer of [plan] assets to a party in interest was a prohibited transaction under ERISA § 406(a)(1)(D)," and this claim thus survived TIAA's motion to dismiss.  (Dkt. No. 28 at 21.)  Nonetheless, TIAA argues that this claim is deficiently alleged in the Amended Complaint on three bases: (i) existence of a prohibited transaction under § 406(a)(1)(D); (ii) knowledge; (iii) inapplicability of § 408(b)(17).  (Dkt. No. 39 at 21–22.)

(i)  According to TIAA, its loan program does not constitute the "use" for its benefit of "plan assets" as a matter of law, because the loan collateral it is "using" does not constitute a "plan asset" under ERISA's guaranteed benefit policy exception, § 401(b)(2).  (Dkt. No. 39 at 21.)  But in making this argument TIAA is trying to cast Haley as asserting a "use" claim, rather than a "transfer" claim.  (Dkt. No. 39 at 21 n.28; Dkt. No. 41 at 4–5.)  This characterization is contrary to the Amended Complaint, which alleges both prohibited "transfer" and "use." (Compl. ¶ 90 ("Defendant's loan program on its face requires a transfer of plan assets, or use of

plan assets by or for the benefit of Defendant, resulting from the mandatory transfer of plan assets from a borrowing participant's selected investment choices into Defendant's general account, which Defendant invests along with the other assets of its general account for its own benefit[.]").) And in her opposition brief, Haley disclaims any attempt to allege prohibited "use" under § 406(a)(1)(D), arguing that TIAA's argument regarding the status of the collateral was "irrelevant" to her allegations about the unlawful "transfer." (Dkt. No. 40 at 21–22.) Accordingly, the Court construes the Amended Complaint as alleging only a transfer in violation of § 406(a)(1)(D) and rejects TIAA's guaranteed benefit policy argument.

(ii) Again, TIAA argues that Haley was required to—and failed to—allege knowledge that the transfer was not exempt on the part of WashU and TIAA. (Dkt. No. 39 at 21.) But TIAA does not challenge whether WashU and TIAA knew of the facts underlying the transaction that brought it within the scope of § 406(a)(1)(D). Under the Court's formulation of this requirement, Haley has plausibly alleged the requisite knowledge to survive a motion to dismiss. (Compl. ¶¶ 8–10, 91–92.)

(iii) Finally, TIAA claims that the application of the exemption in ERISA § 408(b)(17) is clear from the face of the Amended Complaint, because "the Complaint lacks non-conclusory allegations that the Plan received less or paid more than adequate consideration in connection with TIAA's loan product."[12] (Dkt. No. 41 at 5; Dkt. No. 39 at 22.)

---

[12] In its reply brief, TIAA argues that both the § 406(a)(1)(B) and § 406(a)(1)(D) claims must also be dismissed due to the clear application of the § 408(b)(17) exemption, and that Haley's failure to respond to this argument means that the Court should consider the point conceded. (Dkt. No. 41 at 5.) However, TIAA's opening brief argued only that this particular exemption applied to the § 406(a)(1)(D) claim. (Dkt. No. 39 at 20–21.) Because the application of this exemption to the § 406(a)(1)(B) claim was raised for the first time in the reply brief, the Court does not consider it. *See Bertuglia v. City of New York*, 839 F. Supp. 2d 703, 737 (S.D.N.Y. 2012) ("[A]rguments raised for the first time in reply should not be considered, because the plaintiffs had no opportunity to respond to those new arguments.").

The Court concludes that is it not clear from the face of the Amended Complaint that the Plan received no less and paid no more than adequate consideration for TIAA's administration of participant loans. The complaint contains no allegations regarding the "the fair market value" of the service "as determined in good faith by" WashU. 29 U.S.C. § 1108(b)(17)(B)(ii). Instead, the complaint indicates that TIAA receives different levels of compensation for the same service due to the asset-based nature of its loan program (Compl. ¶ 97), which raises doubts regarding whether that compensation is always no more than "adequate."

Because the Court cannot determine at this stage that § 408(b)(17) exempts the loan program from liability—and Haley has adequately alleged the other elements of a § 40(a)(1)(D) claim—TIAA's motion to dismiss this claim is denied.

### C.    Equitable Remedies

Finally, TIAA moves to dismiss Counts V through VII on the ground that the Amended Complaint seeks relief that is unavailable under ERISA. TIAA contends that this is a suit for legal relief—*i.e.*, monetary damages—but ERISA permits only equitable relief from non-fiduciaries. (Dkt. No. 39 at 22–24.) Notably, however, TIAA's argument ignores the fact that the Court already rejected this argument in its previous Opinion. (Dkt. No. 28 at 14–17.) Reviewing the Amended Complaint, the Court sees no reason to revisit its ruling.

Admittedly, a change was made in the Amended Complaint that pertains to the issue of relief. Whereas the previous complaint specifically requested "disgorgement of the proceeds of

---

Furthermore, TIAA is incorrect that Haley has "conceded" that the § 406(a)(1)(D) claim should be dismissed. Rather, Haley clearly defended this claim in its opposition brief. (Dkt. No. 40 at 21–22.) And because TIAA bears the ultimate burden of proving that § 408(b)(17) exempts its loan program from liability, the Court can look to the Amended Complaint and the arguments Haley offers regarding similar exemptions to assess whether § 408(b)(17) clearly applies here.

the illegal arrangement" (Dkt. No. 5 ¶ 83), the Amended Complaint does not expressly request

disgorgement by name. But this omission seems related to a mistake whereby Plaintiff claimed

that "Defendant is liable under 29 U.S.C. § 1109(a) for losses . . . resulting from the breaches of

fiduciary duty alleged in this Count" (Compl. ¶¶ 85, 93, 99), even though § 1109(a) applies only

to fiduciary defendants. (*See* Dkt. No. 40 at 22 (admitting to the "erroneous[]" citation).)

Regardless, the content of § 1109(a) makes clear that what Plaintiff truly seeks is disgorgement.

*See* 29 U.S.C. § 1109(a) (providing that fiduciaries "shall be personally liable to . . . restore to

such plan any profits of such fiduciary which have been made through use of assets of the plan").

And Plaintiff's reply brief confirms the point. (*See* Dkt. No. 40 at 22.)

Furthermore, the other aspects of the complaint that were relevant to the Court's prior

decision on this question remain the same: Haley seeks to "[e]njoin Defendant from . . . further

engaging in transactions prohibited by ERISA," and requests "other equitable . . . relief as

appropriate." (Compl. at 29 & ¶¶ 85, 93, 99.) And the substance of her claims are unchanged:

"she alleges that TIAA unjustly generated profits from her property after obtaining that property

as loan collateral via a transaction that allegedly violated § 406(a) of ERISA." (Dkt. No. 28 at

16–17.)

Accordingly, for the reasons stated in the Opinion of March 28, 2018, the Court rejects

Defendant's contention that Counts V through VII must be dismissed for seeking legal relief

unauthorized under ERISA.

## III.     Motion to Strike

### A.     Legal Standard

Rule 12(f) states that a "court may strike from a pleading . . . any redundant, immaterial,

impertinent, or scandalous matter," and Rule 23(d)(1) empowers courts to "require that . . .

pleadings be amended to eliminate allegations about representation of absent persons." Fed. R.

Civ. P. 12(f), 23(d)(1)(D).  However, motions to strike class allegations are generally "viewed with disfavor and infrequently granted," *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003), because they "require[ ] a reviewing court to preemptively terminate the class aspects of litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification," *Blagman v. Apple Inc.*, No. 12 Civ. 5453, 2013 WL 2181709, at *2 (S.D.N.Y. May 20, 2013) (alterations omitted) (quoting *Calibuso v. Bank of Am. Corp.*, 893 F. Supp. 2d 374, 383 (E.D.N.Y. 2012)).

As a result, "[d]istrict courts frequently have deferred the Rule 23 determination until the class certification stage, after the development of a 'more complete factual record.'" *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 515 (S.D.N.Y. 2014) (quoting *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012)).  An exception to this general rule exists when the motion to strike "addresses issues 'separate and apart from the issues that will be decided on a class certification motion.'" *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 117 (S.D.N.Y. 2012) (quoting *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06 Civ. 6198, 2008 WL 161230, at *3 (S.D.N.Y. Jan. 16, 2008)).  But, absent this exceptional circumstance, a motion to strike class allegations is generally "procedurally premature."  *Id*.

### B.    Discussion

Haley "seeks to certify, and to be appointed as representative of," a class comprising "[a]ll individual account retirement plans qualified under Code section 403(b) and serviced by Teacher Insurance and Annuity Association ("TIAA") that have offered the TIAA participant loan program at any time from February 5, 2011 through the date of judgment."  (Compl. ¶ 52.)

TIAA argues that the Court should strike the Complaint's class action "allegations on behalf of plans and plan participants other than the WashU plan and its participants."  (Dkt. No.

39 at 24.) Specifically, TIAA claims that striking these allegations is appropriate because the Amended Complaint fails to adequately allege the requisite knowledge on behalf of any other plan fiduciary or for TIAA with respect to any other plan. (Dkt. No. 39 at 25.) Haley responds that TIAA's arguments in support of its motion to strike will be the focus of class certification, and that the Amended Complaint adequately alleges that the practices at issue apply to all TIAA's participant loan programs. (Dkt. No. 40 at 24.) The Court agrees.

TIAA tries to present its objection to the class allegations as an issue "separate" from class certification, framing it as a challenge to whether the class allegations satisfy *Twombly*. (Dkt. No. 39 at 25; Dkt. No. 41 at 10.) But it essentially challenges whether other TIAA plans were "similarly situated" and whether participants in those plans were "harmed in a similar fashion," with Defendant and fiduciary possessing the requisite knowledge. (Dkt. No. 39 at 25.) Such arguments implicate typicality and whether common questions predominate for the class, and thus "rely upon the [Rule 23] factors that would be analyzed and addressed by this Court in the course of deciding a motion for class." *Campbell v. Chadbourne & Parke LLP*, No. 16 Civ. 6832, 2017 WL 2589389, at *4 (S.D.N.Y. June 14, 2017); *see also Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2018 WL 1773142, at *2 (S.D.N.Y. Apr. 12, 2018).

Accordingly, TIAA's motion to strike the class allegations is denied as premature.

## IV. Conclusion

For the foregoing reasons, TIAA's motion dismiss is DENIED, and TIAA's motion to strike is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 38.

SO ORDERED.

Dated: March 27, 2019
New York, New York

_____
J. PAUL OETKEN
United States District Judge