UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MELISSA HALEY, *individually and on behalf of all others similarly situated*,<br><br>                      Plaintiff,<br><br>          -v-<br><br>TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,<br><br>                    Defendant. | 17-CV-855 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiff Melissa Haley brings this putative class action against Defendant Teachers Insurance and Annuity Association of America ("TIAA"), alleging that TIAA engaged in prohibited transactions with the Washington University Retirement Savings Plan in violation of § 406 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1106. After the Court dismissed several of the claims in an earlier complaint (Dkt. No. 28), Haley filed the operative First Amended Class Action Complaint (Dkt. No. 35). The Court then denied TIAA's motion to dismiss the operative complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and to strike certain class allegations (Dkt. No. 50), and Haley brought a motion to certify the class (Dkt. No. 67). Haley also filed a motion to amend the complaint to add plaintiffs and to amend the motion for class certification to add class representatives. (Dkt. No. 81.) For the reasons that follow, the class is certified under Rule 23(b)(3) with Haley as class representative and Berger Montague PC and Schneider Wallace Cottrell Konecky LLP as class counsel, and the motion to amend the complaint and the class certification motion to add plaintiffs and class representatives is granted.

# I.     Background

The Court assumes familiarity with this case, on the basis of the Court's prior opinions addressing TIAA's motions to dismiss.  *See Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 377 F.Supp.3d 250, 255–57 (S.D.N.Y. 2019); *Haley v. Teachers Ins. & Annuity Ass'n of Am.*, No. 17 Civ. 855, 2018 WL 1585673, at *1–2 (S.D.N.Y. Mar. 28, 2018).  The following facts are taken from the First Amended Class Action Complaint ("Amended Complaint") and are assumed true for purposes of this motion.

Plaintiff Melissa Haley is an employee of Washington University ("WashU") and a participant in the Washington University Retirement Savings Plan ("the Plan"), an employee pension benefit plan regulated by ERISA.  (Dkt. No. 35 ("Compl.") ¶¶ 1, 13.)  The Plan offers participants the opportunity to take out a loan against a portion of their retirement accounts.  (Compl. ¶ 31; Dkt. No. 35-1 at 2.)  The Plan contracted with two outside vendors, Vanguard and Defendant TIAA, to administer these loans.  (Compl. ¶ 45; Dkt. No. 35-1 at 3.).

Most retirement loans are taken directly from a participant's retirement plan, with the participant's account as the lender and the participant the borrower.  (Compl. ¶ 19.)  Doing so enables participants to borrow for short-term needs without tax liability, repaying their own account with interest.  (*Id.*)  Federal regulations prohibit more than 50 percent of an individual account from being loaned to a participant, allowing the remainder to serve as security on the loan and preventing loss to the Plan.  (Compl. ¶ 41.)  For loans administered by TIAA, participants are required "to borrow from Defendant's general account rather than from the participant's own account."  (Compl. ¶ 24.)  Thus, participants must first "transfer 110% of the amount of the loan from the participant's plan account . . . to one of Defendant's general account products," which "pay a fixed rate of interest."  (*Id.*)  The amount transferred to a general

account product serves as the collateral securing the loan.  (*Id.*)  Depending on the type of TIAA

loan, no transfer may occur:  For group supplemental retirement annuity loans ("GSRA loans"),

if a participant already has 110% of the requested loan value in a TIAA annuity, no transfer

occurs.  (Dkt. No. 76 at 4–5.)  If not, additional collateral is transferred from the participant's

other investments to bring the participant's investment in a TIAA annuity up to that threshold.

(*Id.*)  Regardless of the type of loan, the participant cannot access or transfer the collateral until

the participant makes loan repayments, and the structure varies dramatically from the typical,

non-collateralized loan.  (*Id.*)

The participant then repays the loan, with interest, to TIAA's general account, which also

earns the interest paid on the loan.  (Compl. ¶ 26.)  TIAA retains for itself the difference, or

"spread," between (a) the interest rate paid to participants with respect to the loan collateral and

(b) the amounts earned by TIAA on investments from its general account and from interest paid

by participants on the loans.[1]  (Compl. ¶¶ 5, 26–28.)  In other words, participants do not receive

the full amount of the interest they earn on their collateral, because some of it (*i.e.*, the "spread")

is taken by TIAA as compensation for administering the loan.  (Compl. ¶¶ 39–40.)

Between 2011 and 2015, Haley took out four separate participant loans, which TIAA has

administered.  (Compl. ¶¶ 1, 14.)  Haley has fully repaid the first three loans, and she is in the

---

[1] In the prior complaint, Haley alleged that the "spread" earned by TIAA was limited to the difference between "the loan interest rate paid by participants" to TIAA — 4.44% or 4.17% — "and the interest rate received by participants" from TIAA as interest on the collateral — 3%. (Dkt. No. 5 ¶¶ 18–19.)  In the Amended Complaint, Haley frames the spread slightly differently as encompassing not only "the spread between the rate provided by the general account product in which the collateral is held and the interest rate of the loan, but also the even greater spread between the rate of return on the assets contained in Defendant's general account and the interest rate of the loan."  (Compl. ¶ 40.)

process of repaying the outstanding loan.  (Dkt. No. 76 at 10.)  In September 2019, two and a half years after the onset of this suit, Haley took out another loan, which is still outstanding.  (*Id*.)

Haley filed this putative class action in February 2017, claiming that Defendant's administration of retirement loans to Plan participants (the "loan program") violates ERISA. (Dkt. No. 1.)  She alleged both that TIAA itself violated its duties as an ERISA fiduciary, and that TIAA is liable as a nonfiduciary for breaches by the Plan Administrator, WashU.  (Dkt. No. 5 ¶¶ 48–80.)  TIAA moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim.  (Dkt. No. 20.)  On March 28, 2018, the Court granted the motion to dismiss in part, holding that Haley had standing to bring this action, but that she had not plausibly alleged that TIAA qualified as an ERISA fiduciary.  (Dkt. No. 28 at 6, 14.)  With respect to Haley's claims for equitable relief against TIAA as a nonfiduciary, the Court granted in part and denied in part the motion to dismiss, and granted Plaintiff leave to amend.  (*Id*. at 18–23.)

Haley filed the First Amended Class Action Complaint on May 3, 2018.  (Compl.) Counts I through III of the Amended Complaint again alleged that TIAA itself violated its duties as an ERISA fiduciary, as Haley noted that she wished to preserve appeal rights. (Compl. ¶¶ 16 n.1, 57–77.)  And Counts V through VII alleged that TIAA is liable as a nonfiduciary for breaches by the Plan Administrator. (Compl. ¶¶ 48–80.)[2]  TIAA moved to dismiss the Amended Complaint for failure to state a claim under Rule 12(b)(6), or for an order striking the class allegations in the Amended Complaint under Rule 12(f).  (Dkt. No. 38.)  This Court granted TIAA's motion with respect to Counts I through III — finding, again, that TIAA is not an ERISA fiduciary — and denied the remainder of TIAA's motion.  (Dkt. No. 50.)

---

[2]  The Court notes that the Amended Complaint alleges only six counts.  But because the Amended Complaint omits a "Count IV," it delineates the six counts as I through III and V through VII. (Dkt. No. 35.)  The Court will use this numbering from the Amended Complaint.

On January 16, 2020, Haley filed a motion to certify the class.  (Dkt. No. 67.)  Three months later, on April 1, 2020, Haley also filed a motion to amend the complaint to add plaintiffs and to amend the motion for class certification to add class representatives.  (Dkt. No. 81.)

## II.    Class Certification

Haley has moved for class certification pursuant to Federal Rule of Civil Procedure 23(b)(1) and (b)(3), seeking to certify a class consisting of:[3]

> All individual account retirement plans governed by ERISA (the "Plans") for which, at any time from February 5, 2011 through the date of judgment:
> (a) Teachers Insurance and Annuity Association ("TIAA") provided services that included collateralized loans (the "Loans") for Plan participants (the "Borrowing Participants");
> (b) TIAA required the Borrowing Participants to provide collateral in the amount of 110% of the principal balance of the Loans, which collateral TIAA invested in its general account; and
> (c) (i) TIAA charged Loan interest at a rate in excess of the interest rate credited to Borrowing Participants on the invested collateral; (ii) TIAA kept for or paid to itself amounts earned on the amount of the invested collateral, equal to the principal amount of the outstanding Loans, that were in excess of the amounts credited to Borrowing Participants; (iii) the amounts that TIAA credited to Borrowing Participants on the invested collateral in excess of the principal amount of the Loan were less than Borrowing Participants would have received had the collateral remained in the Borrowing Participants' designated investment options; and/or (iv) TIAA caused loss to the Participant Borrowers and the Plans.

(Dkt. No. 67 at 1.)

Haley also asks the Court to appoint her, on behalf of the Washington University Retirement Savings Plan, as representative of the certified class, and to appoint the law firms of Berger Montague PC and Schneider Wallace Cottrell Konecky LLP as class counsel.  (*Id*. at 2.)

---

[3] Haley's motion includes references to a class certified under Federal Rule of Civil Procedure 23(b)(2) (Dkt. No. 67 at 1), but that issue remains unbriefed (*see* Dkt. No. 68) and appears to be a mistake.

A.       **Legal Standard**

Class certification is governed by Federal Rule of Civil Procedure 23.  Section (a) of Rule

23 requires the party seeking certification to establish four prerequisites:

(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  A party seeking certification must also satisfy the implied requirement of

ascertainability, "a judicial creation meant to ensure that class definitions are workable when

members of the class will be entitled to damages or require notice for another reason."  *Floyd v.

City of New York*, 283 F.R.D. 153, 171 (S.D.N.Y. 2012).

In addition, "the movant must show that the action is one of three types described in

section (b)." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014). Subsection

(b)(1) provides that a class action may be maintained if separate actions by or against individual

class members risks either (A) "inconsistent or varying adjudications with respect to individual

class members that would establish incompatible standards of conduct for the party opposing the

class" or (B) "adjudications with respect to individual class members that, as a practical matter,

would be dispositive of the interests of the other members not parties to the individual

adjudications or would substantially impair or impede their ability to protect their interests."

Fed. R. Civ. P. 23(b)(1).  Moreover, subsection (b)(3) provides for a class action where a court

"finds that the questions of law or fact common to class members predominate over any

questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Rule 23 requirements are more than a "mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The party seeking class certification must establish Rule 23's requirements by a "preponderance of the evidence." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008).  Courts must "conduct a rigorous analysis to determine whether a class action is appropriate, considering materials outside of the pleadings and weighing conflicting evidence as necessary." *Jackson*, 298 F.R.D. at 159.

### B.  Discussion

#### 1.  Numerosity

Courts in the Second Circuit presume that a class meets the numerosity requirement if the putative class has forty or more members. *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011).  Haley asserts that, since evidence obtained through discovery demonstrates there were 7,926 plans at issue with tens or hundreds of thousands of participants, the proposed class "easily" satisfies numerosity.  (Dkt. No. 68 at 8.)  TIAA, meanwhile, cites one of its experts who claims that no participant can satisfy Haley's class definition.  (Dkt. No. 76 at 19–20.)  This fact, it argues, means that Haley's contention that there were hundreds of thousands of participants in plans at issue does not necessarily translate into a sufficiently numerous class once those participants are filtered through Haley's class definition.  (*Id.* at 20.)  TIAA cites two Third Circuit cases for the proposition that this Court cannot "infer numerosity from the number in the larger pool alone."  *Id.* (quoting *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013)).

The Third Circuit authority is not on point.  *Hayes* featured a putative class of consumers who purchased a "Service Plan to cover as-is products," excluding, *inter alia*, consumers who

purchased a product that was covered by a full manufacturer's warranty or was a "last-one" item. *Id*. at 353. Plaintiffs there failed to submit any evidence beyond 3,500 recorded Service Plan transactions, leaving the *Hayes* court unable to do more than speculate that the number of class members was between zero and 3,500. *Id*. at 357–58. Here, Haley has submitted significantly more evidence demonstrating numerosity, and, as she points out, TIAA has acknowledged the existence over 8,000 plans at issue in making arguments against commonality. (Dkt. No. 68 at 8; Dkt. No. 95 at 8.) Moreover, courts in this Circuit regularly certify ERISA classes based on the large number of potential members alone. *See, e.g.*, *Leber v. Citigroup 401(k) Plan Investment Committee*, 323 F.R.D. 145, 159 (S.D.N.Y. 2017) (plan with 189,470 participants who had "thousands" of their accounts invested in nine proprietary funds satisfied numerosity); *In re J.P. Morgan Stable Value Fund ERISA Litigation*, 2017 WL 1273963, at *7 (S.D.N.Y. Mar. 31, 2017) (finding fact that subclasses "likely" contained thousands of participants sufficient for numerosity).

TIAA also argues that its expert shows that "no plan or participants satisfy [Haley]'s class definition." (Dkt. No. 76 at 19–20 (emphasis removed).) This argument centers around prong (b) of Haley's class definition, applying to individual retirement account plans in which "TIAA required the Borrowing Participants to provide collateral in the amount of 110% of the principal balance of the Loans, which collateral TIAA invested in its general account." (Dkt. No. 67 at 1.) Dr. Strombom, TIAA's expert, opines that such a definition is impossible, since after setting aside the collateral totaling 110 percent of the loan amount, TIAA provided 100 percent of the loan to the borrower, leaving TIAA with no more than a ten-percent increase in General Account assets. Stromborn Dec. ¶ 69. In attempting to defeat Haley's class definition on a technicality, this argument ignores an obvious construction: The 110-percent loan collateral

is invested in TIAA's general account — satisfying the class definition — before TIAA provides the loan. Nowhere in Haley's definition does she claim that a *net* amount of 110 percent of the loan is deposited in the general account.

The proposed class satisfies numerosity.

### 2.    Commonality

A question satisfies the condition of commonality if it is "capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350 "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (citation omitted). A single common question is alone sufficient to satisfy the commonality requirement if the question has the capacity to "materially advance the litigation." *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015).

Haley argues that commonality is satisfied because the class claims are "based on the actions of a single defendant (TIAA), which conducted a uniform practice (the Loan program) that affects all Class members (the Plans) in the same way." (Dkt. No. 68 at 8–9.) The plans encompassed by Haley's class definition all offered the same collateralized loan program from TIAA, under which TIAA bore no risk and borrowers invested 110 percent of the principal balance of their loans in a low-interest TIAA general fund. (Dkt. No. 68 at 9.) TIAA's collateralized loan program, Haley argues, had the same result across plans: interest due on the loans exceeding borrowers' return on the invested collateral. (*Id.*) This result, Haley asserts, creates common questions: (1) whether TIAA's loan program violates § 406(a)(1)(B); (2) whether it violates § 406(a)(1)(C); (3) whether it violates § 406(a)(1)(D); (4) whether the plans

suffered losses; (5) how to calculate those losses; and (6) what equitable relief is necessary. (Dkt. No. 68 at 10.)  These questions are common to all participants and the evidence necessary to answer is Plan-level, Haley asserts.[4]

To this, TIAA levies several arguments claiming, in essence, that the plans at issue are insufficiently uniform to merit classwide resolution.  First, TIAA argues that Haley has offered only one contract — from Washington University in St. Louis — which sheds little light on the others.  (Dkt. No. 76 at 21.)  While it is certainly true that Haley has failed to provide direct evidence of contracts beyond Haley's, the class definition itself takes care of this issue:  The class comprises all plans subscribing to the loan program at issue.  (Dkt. No. 67 at 1.)  Should any plan not provide the same loan program, it will not be included in the class.  While the Court believes resolution of question (4) — whether the plans suffered losses — may be an individualized question, the remainder of the questions posed by Haley are common.  Because "[e]ven a single common legal or factual question will suffice," Haley has met her burden on commonality.  *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. 2006).

Next, TIAA suggests that Haley has neglected to mention that there are, in fact, two types of collateralized loans, and only one requires a transfer of collateral.  (*Id.*)  But as Haley correctly explains, these differences are insufficient to defeat commonality, as both types of loans have the same basic central loan structure at issue.  (Dkt. No. 82 at 12–13.)[5]

Third, TIAA points out that in many cases — over 1,600 loans — TIAA credited borrowers more than TIAA earned in interest payments.  (*Id.*)  But this is only a small fraction of

---

[4] As Haley puts it, "[w]hat matters for purposes of class certification are the core elements of TIAA's collateralized loan program" (Dkt. No. 82 at 1), which TIAA's expert described in terms similar to those used by Haley.  (Dkt. No. 79 ¶ 22.)

[5] Moreover, GSRA loans still require a transfer of collateral if the participant has invested less than 110% of the loan amount in a TIAA traditional annuity.  (Dkt. No. 76 at 4–5.)

the over 460,000 loans at issue, and this issue is potentially one of remedy:  Just because a small percentage of people did not suffer from the allegedly unlawful actions, and thus have no damages, does not mean they were not faced with the same unlawful scheme for purposes of class certification.  *See Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015) (common issues can predominate "even when there are some individualized damage issues").

Next, TIAA argues that the questions at the core of Haley's case (*see* Dkt. No. 68 at 10) cannot be decided with common proof, and that the questions Haley puts forth have already been determined by the Court.  TIAA maintains that this Court's earlier determination that "TIAA's loans involve the lending of money" — a prerequisite for violations of § 406(a)(1)(B) — means resolution of this supposed common question will not "drive the resolution of litigation."  (Dkt. No. 76 at 22–23.)  But that misstates this Court's prior conclusion that Haley pleaded sufficient facts on this issue to survive a Rule 12(b)(6) motion.  Just the opposite is the case, here, where the question of whether such lending of money violated § 406(a)(1)(B) is one of Haley's central claims.  TIAA also asserts that Haley has not shown common evidence for another question she raises — whether the Loan program "involves transfers of Plan assets to, or the use of Plan assets by and for the benefit of, TIAA" in violation of § 406(a)(1)(D) — since some participants were not required to transfer any collateral.  (Dkt. No. 76 at 23.)  As above, however, the class definition excludes such plans, limiting coverage to plans that did transfer collateral (Dkt. No. 67 at 1) — and TIAA does not contend that common evidence is not available for plans that fit that definition.  Moreover, TIAA's assertion misstates Haley's proposed common question by omitting "*or the use of Plan assets by and for the benefit of,*" ignoring a key aspect of § 406(a)(1)(D).  (Dkt. No. 68 at 10.)  TIAA's characterization of Haley's common question does not withstand scrutiny.

TIAA acknowledges that one of Haley's questions — whether TIAA received more than reasonable compensation for its services in violation of § 406(a)(1)(C) — is indeed "apt to drive litigation forward."  (Dkt. No. 76 at 23.)  This question, TIAA argues, is not amenable to common evidence, given how context-specific a reasonableness determination may prove.  (*Id.* (quoting 29 C.F.R. § 2550.408c-2(b)(1) ("Generally, whether compensation is 'reasonable' under [§ 406(a)(1)(C)] depends on the particular facts and circumstances of each case.")  For support, TIAA leans on *Dobson v. Hartford Fin. Servs. Grp., Inc.*, in which the Second Circuit denied class certification on commonality grounds because the claims of each of the 24,000 putative class members would "invariably turn on whether [the benefits provider]'s delay was 'reasonable' in each set of particular circumstances."  342 F. App'x 706, 709–10 (2d Cir. 2009).  But *Dobson* occurred in the disability benefits context, in which the individual determination potentially included each individual's medical history, the need for follow-up, and the difficulty of such determinations.  *Id.* at 709.  In the present case, the reasonableness inquiry is significantly less subjective and complex, calculable with the assistance of an Excel spreadsheet: Haley suggests, persuasively, that reasonableness may be measured simply by determining what participants paid for their TIAA collateralized loans above what they would have paid in a non-collateralized program.  (Dkt. No. 86 at 8.)  This Court is persuaded that such common proof — already estimated by Haley's expert (*see* Dkt. No. 86-1 ¶¶ 49-50) — is sufficient to establish commonality here.[6]

---

[6] TIAA, in discounting the remainder of Haley's common questions, notes that the common questions related to remedy — whether the plans at issue suffered losses, how to calculate such losses, and what equitable relief might be available — are "questions of remedy not liability." (Dkt. No. 76 at 23 n.23.)  But Haley is not seeking certification only on questions of liability, so this distinction is inapt.  And while TIAA claims Haley cannot receive "losses" (*id.*), this Court has held TIAA to be a non-fiduciary and that the equitable relief of disgorgement is potentially available here.  *Haley*, 2018 WL 1585673 at *8.

Finally, TIAA points out that Haley, in suing a non-fiduciary, will be required to prove several elements for each transaction: "(1) that a plan fiduciary caused the transaction to occur, (2) that the fiduciary did so with full knowledge of the relevant facts indicating that the transaction was prohibited, (3) that TIAA knew that the individual who caused the transaction 'is an ERISA fiduciary,' and (4) that TIAA knew that the fiduciary caused the transaction with knowledge of the relevant facts."  (Dkt. No. 76 at 26–27 (emphasis omitted).)  And TIAA is correct that Haley has "provide[d] no road-map to the Court as to how it can make this determination class-wide."  (Dkt. No. 76 at 27.)  Elements (1) and (3) should be simple to determine class-wide:  From the fact of plans' participation in the collateralized loan program it follows that "transaction[s][] occur[ed]," and TIAA presumably knew that the entities with which it conducted business were ERISA fiduciaries.  (2) and (4) are harder, however, and class-wide resolution is not immediately obvious.  However, as Haley has already shown multiple common questions that will "materially advance the litigation," *Ruiz*, 93 F. Supp. 3d at 289, these individual questions do not undermine that conclusion.

Accordingly, the proposed class satisfies commonality.

### 3.    Typicality

To establish typicality, plaintiffs "must show that each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability."  *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation marks omitted); *see also Healthcare Strategies, Inc. v. ING Life Ins. & Annuity Co*, 2012 WL 10242276, at *8 (D. Conn. Sept. 27, 2012) ("Typicality is generally met where the plaintiff demonstrates that the same unlawful conduct was directed at both the named plaintiff and the proposed class.").

Haley argues that her claims are typical of the proposed class:  She was a participant in a TIAA plan that allegedly violated multiple ERISA provisions, and, as TIAA's expert agrees, Haley paid more than she would have for a non-collateralized loan for at least one of her loans. (Dkt. No. 68 at 13–14; Dkt. No. 79 Ex. 26.)  TIAA responds that Haley has made no showing that the characteristics of her loans are typical — claiming that there is "no universe of 'typical' loans" — given that there are differences in the types of loans offered, whether participants actually received more money from the collateralized loan program than they would have received via a non-collateralized loan, and whether participants received a net financial benefit *overall* from the loan program.  (Dkt. No. 76 at 28–29.)  All of these differences render Haley atypical, TIAA contends, defeating certification.[7]

These challenges to Haley's typicality are meritless.  As Haley puts it, "class membership is unaffected by any of the factors that TIAA claims to render [Haley's plan] unique."  (Dkt. No. 82 at 9.)  The type of loan utilized and financial benefit to participants do not affect the "course of events" at the core of TIAA's allegedly unlawful collateralized loan program, not do they affect the legal arguments a participant may make.  Rather, despite TIAA's attempts to distinguish Haley's loans, her claims — that TIAA violated multiple ERISA provisions in providing its collateralized loan program — are typical of the vast majority of plan participants.

Thus, the proposed class has satisfied typicality.

---

[7] TIAA also raises, in a footnote, that Haley, having taken out a fifth loan in September 2019, is uniquely subject to affirmative defenses of ratification and consent, which TIAA raised in its amended answer.  (Dkt. No. 74 at 20; Dkt. No. 76 at 29 n.31.)  The Court need not address this challenge, however, given its ruling, *infra*, on Haley's Motion to Amend.

### 4.     Adequacy

To establish adequacy, plaintiffs must show that "the proposed class representative [has] an interest in vigorously pursuing the claims of the class, and [has] no interests antagonistic to the interests of other class members."  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (citation omitted).

TIAA makes no separate arguments against adequacy that it does not make against typicality.  (Dkt. No. 76 at 28–29.)  Haley, too, echoes her typicality arguments, arguing that she has the same interests as those of all class members.  (Dkt. No. 68 at 14–15.)  Moreover, Haley testified in her deposition that she wants to serve as class representative, is willing to satisfy the responsibilities that come with being a class representative, and devoted roughly 50 hours to the suit alone in 2019, including using vacation time to travel from Missouri to New York City for her deposition.  (Dkt. No. 68-3 at 46–48.)  Because Haley has met her burden, and TIAA cannot point out a specific manner in which Haley would be an inadequate class representative — the differences cited by TIAA are insufficient to defeat typicality and certainly do not rise to the level of presenting an antagonistic interest — Haley satisfies adequacy.

In addition, plaintiffs must demonstrate that "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Flag Telecom*, 574 F.3d at 35 (citation omitted); *see also* Fed. R. Civ. P. 23(g)(2) (requiring courts to consider a prospective class counsel's (1) work in investing claims at issue; (2) experience in class actions; (3) legal knowledge; (4) resources; and (5) ability to adequately represent class interests).  Here, the firms of Berger Montague PC and Schneider Wallace Cottrell Konecky LLP have served as co-class counsel in other ERISA class actions that proved successful, and in at least one instance was recognized by the court for their "vigorous" litigation.  (Dkt. No. 68 at 24 (quotation omitted).)

TIAA does not contest the Berger and Schneider firms' ability to serve as adequate class counsel, and this Court finds no reason to do so, either.

The proposed class satisfies adequacy.

### 5. Ascertainability

An ascertainable class is one "defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.,* 862 F.3d 250, 269 (2d Cir. 2017). A "freestanding administrative feasibility requirement is neither compelled by precedent nor consistent with Rule 23," and the ascertainability requirement "will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *Id.* at 264, 269.

In the present case, TIAA asserts that, "[f]oundationally," the criterion that a plan be governed by ERISA to be within the class defeats ascertainability. (*See* Dkt. No. 76 at 16 ("There is no authoritative checklist that can be consulted to determine conclusively if an employer's obligations rise to the level of an ERISA plan." (quoting *Schonholz v. Long Island Jewish Med. Ctr.*, 87 F.3d 72, 76 (2d Cir. 1996) (citation omitted)))). The context-specific ERISA determination, TIAA argues, is anathema to ascertaining a class, given multiple statutory exemptions from ERISA that require multi-factor analyses. (Dkt. No. 76 at 16–17.) Moreover, TIAA contends, the list of TIAA-administered retirement plans that Haley sought in discovery, which includes a field indicating whether each plan self-identifies as an ERISA plan, is insufficient to establish ascertainability, as employers may wrongly self-identify as ERISA plans for various reasons. (Dkt. No. 76 at 17.) Finally, TIAA maintains that Haley cannot point to any records providing an ascertainble class for the rest of the class definition. (Dkt. No. 76 at 18–19.)

Haley, meanwhile, argues that "whether TIAA's spreadsheet [designating plans as ERISA or non-ERISA] is a merits inquiry." (Dkt. No. 95 at 8.)[8] Haley's expert explains that providing a key to whether a plan is covered by ERISA should "not be difficult" given "TIAA's records and the manner in which TIAA treated them in the due course of its recordkeeping and administration." (Dkt. No. 82-1 ¶ 39.) Indeed, this Court finds it difficult to believe, as TIAA argues, that TIAA does not maintain records regarding whether a plan is governed by ERISA. As Haley points out, such a determination is "essential to the conduct of [TIAA's] business." (Dkt. No. 95 at 8 n.8.) Regardless, Haley has made a sufficient showing of ascertainability for class certification; TIAA's contentions will have to wait for a later stage.

### 6.    Rule 23(b)

Having satisfied the requirements of Rule 23(a), Haley argues that the proposed class satisfies one of three Rule 23(b) requirements: (b)(1)(A), in which separate actions may result in "inconsistent or varying adjudications" establishing "incompatible standards of conduct for the party opposing the class"; (b)(1)(B), in which individual adjudications may practically dispose the interests of non-parties, or "substantially impair or impede" their ability to protect such interests; and (b)(3), in which common questions of law or fact predominate over individual and a class action is superior to other methods of adjudication. Each is considered in turn.

### i.    Rule 23(b)(1)(A)

The proposed class satisfies Rule 23(b)(1)(A), Haley contends, because, should plans or participants litigate individually, there may be varying adjudications with regard to TIAA's liability or damages calculations. (Dkt. No. 68 at 18–19.) Rule 23(b)(1)(A) is designed to cover

---

[8] Haley makes this argument in her reply memorandum in support of her motion to add class representatives, in response to TIAA's having raised the issue in its opposition to the same motion.

cases in which the party is either "obliged by law" or "as a matter of practical necessity" to treat all class members alike.  (*Id*. (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).)  In *Sacerdote v. New York Univ.*, for example, the court found that "[a]llowing 20,000 individual [ERISA] cases could result in varying adjudications over defendant's alleged breach and how to measure the damages."  2018 WL 840364, at *6 (S.D.N.Y. Feb. 13, 2018).  Separate adjudications might force "incompatible standards" upon the *Sacerdote* defendant, New York University, so the court found certification under Rule 23(b)(1)(A) warranted.  *Id*.

TIAA points out, though, that *Sacerdote*, and the other cases cited by Haley in support of Rule 23(b)(1)(A) certification, all involve a single plan line-up — not, as is the case here, multiple plans administered across multiple organizations.  (Dkt. No. 76 at 30.)  While other cases involve a plan fiduciary that is "obliged by law" to treat class members alike, TIAA argues that certifying a Rule 23(b)(1)(A) class requires a showing that TIAA must, "as a matter of practical necessity," treat all plans and participants alike.  *Amchem*, 521 U.S. at 614; *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 2014 WL 6888549, at *20 (C.D. Cal. Sept. 3, 2014) ("Because WellPoint's [usual, customary, and reasonable rate, i.e.] UCR obligations differ between its plans, there is no risk that separate lawsuits would result in 'incompatible standards of conduct' for WellPoint." (quoting Fed. R. Civ. P. 23(b)(1))).

TIAA is correct.  Haley has not shown how determinations that TIAA's collateralized loan program violated ERISA for one plan in the proposed class and did not do so for another plan would be "incompatible."  Fed. R. Civ. P. 23(b)(1)(A).  As TIAA argues, in such a case it could simply stop offering the first plan and continue operating the second.  (Dkt. No. 76 at 30.) Mere variance in outcomes is not sufficient.

As such, certification under Rule 23(b)(1)(A) fails.

ii.       **Rule 23(b)(1)(B)**

Rule 23(b)(1)(B) provides for certification when separate actions would practically dispose of the interests of non-class members, or impede their ability to protect their interests. Fed. R. Civ. P. 23(b)(1)(B).  Courts have held that ERISA "favors" certification under Rule 23(b)(1)(B), due to the statute's creation of a 'shared' set of rights among plan participants, imposed duties on fiduciaries, and structured relief to plans and accounts instead of directly to individual participants.  *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 165 (S.D.N.Y. 2017) (citation omitted).  In such cases, "[b]ecause defendants' alleged mismanagement of the Plan is 'the same as to all Plan participants, resolution of one action against one Plan participant would necessarily affect the resolution of any concurrent or future actions by other Plan participants.'"  *Id.* (quoting *Urakhchin v. Allianz Asset Mgmt. of Am, L.P.*, 2017 WL 2655678, at *8 (C.D. Cal. June 15, 2017)).  Whereas Rule 23(b)(1)(A) "considers possible prejudice to the defendants, [] 23(b)(1)(B) looks to possible prejudice to the putative class members."  *Id.* at 164 (quoting *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004)).

TIAA and Haley largely repeat their arguments regarding Rule 23(b)(1)(A) certification in the Rule (23)(b)(1)(B) context.  (*See* Dkt. No. 68 at 18–21; Dkt. No. 76 at 30–32.)  TIAA maintains that, because this Court has held TIAA not to be a fiduciary in this context, there is no single class of beneficiaries whose interests would be harmed absent certification.  (Dkt. No. 76 at 31.)  Due to variations in each participant's loan, TIAA alleges that a court could offer relief to one participant without affecting other participants' or plans' loan services.  (Dkt. No. 76 at 32.)  And certifying a Rule 23(b)(1)(B) class would violate the due process rights of class members

who were happy with their loans, TIAA argues, particularly those who paid less under the TIAA collateralized loan program than they would have under another structure. (*Id*.)

TIAA is correct for the same reason here as under Rule 23(b)(1)(A): Its non-fiduciary status means that TIAA is under no obligation to treat all plans the same, so non-class members do not risk losing the ability to protect their interests absent certification as Rule 23(b)(1)(B) requires. In the event that Haley is successful at proving her underlying claim, this Court can tailor any remedy to avoid infringing on the rights of other plans — certification of a Rule 23(b)(1)(B) class is unnecessary. If TIAA were a fiduciary, an injunction or declaratory judgment affecting Haley would necessarily affect all other plans; absent fiduciary status, such remedy would only bear on Haley and the WashU Plan.

Certification under Rule 23(b)(1)(B) fails.

### iii.     Rule 23(b)(3)

Certification under Rule 23(b)(3) is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and [] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making this assessment, courts are to consider (i) class members' interests in controlling separate actions; (ii) the extent of litigation already begun by class members; (iii) the desirability of concentrating litigation in a single forum; and (iv) the likely difficulties of managing such an action. *Id*. The Second Circuit has found predominance met "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 240 (2d Cir. 2012) (citation and internal quotation marks

omitted); *see also In re Nassau County Strip Search Cases,* 461 F.3d 219, 227 (2d Cir. 2006) ("[A]n issue is common to the class when it is susceptible to generalized, class-wide proof.").

Haley argues, as she must, that common questions overwhelm individualized questions and that class-wide proof is available.  (Dkt. No. 76 at 21–22.)  TIAA responds that individual differences abound: "loan terms, structures, interest rates, and credit rates" all differed by plan and individual loan.  (Dkt. No. 76 at 33.)  These differences, TIAA argues, are directly relevant to the question of whether TIAA's compensation was reasonable and adequate and whether participants received reasonable interest — a core of Haley's case.  TIAA here reiterates its arguments against ascertainability, maintaining that determining whether ERISA governs a plan will be an individual, fact-intensive inquiry.  (Dkt. No. 76 at 34.)  Calculating certain aspects of the collateralized loan program, TIAA continues, are similarly difficult, and not susceptible to class-wide proof.  Finally, TIAA says, determining whether ERISA's participant loan exception applies will also require an individualized assessment.  (Dkt. No. 76 at 34–35.)

The Court recognizes several questions that will drive forward this litigation:

(1) whether a plan is governed by ERISA;
(2) whether a plan fiduciary caused the transaction to occur;
(3) whether the fiduciary did so knowing facts demonstrating the transaction was prohibited;
(4) whether TIAA knew the individual causing the transaction is an ERISA fiduciary;
(5) whether TIAA knew the fiduciary caused the transaction with knowledge of the relevant facts;
(6) whether TIAA violated ERISA § 406(a)(1)(B) by engaging in a prohibited loan between a plan and party in interest;
(7) whether TIAA is exempt from § 406(a)(1)(B) because it provided a reasonable rate of interest under § 408(b)(1);
(8) whether the § 408(b)(1) safe harbor is inapposite because TIAA's loans contained a precondition designed to benefit it as per 29 C.F.R. § 2250.408b-1(a)(3)(i);
(9) whether TIAA's loan program constituted a service agreement in violation of § 406(a)(1)(C);
(10) whether TIAA is exempt from § 406(a)(1)(C) because its contracts were necessary and it received reasonable compensation under § 408(b)(2) and 29 C.F.R. § 2550.408b-2;
(11) whether TIAA violated § 406(a)(1)(D) by using plan assets for its benefit;

(12) whether TIAA is exempt from § 406(a)(1)(D) because the plan received adequate consideration as per § 408(b)(17);
(13) whether the plans suffered resulting losses;
(14) how to calculate such losses;
(15) what equitable relief should be imposed in the event of liability.

(Dkt. No. 50 at 18; Dkt. No. 68 at 10.)

Certainly, this list is long.  But a number of the questions are subject to common proof: question (1), addressed by this Court in the ascertainability analysis, certainly is, as are (6), (8), (9), (11), (13), (14), and (15), all of which are applicable to all plans and participants in TIAA's collateralized loan program.  By virtue of the class definition, all of the plans in the putative class will have the same material terms involving the collateralized loan.  *See, e.g., Hanks v. Lincoln Life & Annuity Co. of New York*, 330 F.R.D. 374, 382–83 (S.D.N.Y. 2019) (common issues predominated when contract language was not materially different across eighteen policies, analyzed under laws of forty nine states). *Cf. Med. Soc'y of the State of New York v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 156 (S.D.N.Y. 2019) (declining to certify class of 2,300 ERISA plans because of "substantial individualized inquiry into plan language" regarding core aspect of plans).  Haley's expert has demonstrated that it is possible to calculate, using common evidence, not only plan losses, but how "reasonable" compensation or interest rates are, as required by questions (7) and (10). (Dkt. No. 68-3 ¶¶ 34–36, Dkt. No. 86 at 8; Dkt. No. 86-1 ¶¶ 49–50.)

Question (12), regarding adequate compensation, is not quite as easy for Haley.  But as this Court has already concluded, exceptions under § 408 are affirmative defenses for which non-fiduciary defendants carry the ultimate burden.  (Dkt. No. 50 at 9.)  Moreover, "[a]lthough a defense may arise and may affect different class members differently, this does not compel a finding that individual issues predominate over common ones."  *Yi Xiang v. Inovalon Holdings,*

*Inc.*, 327 F.R.D. 510, 526 (S.D.N.Y. 2018) (citing *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotation marks omitted).

Questions (2) through (5), concerning the actions and knowledge of the relevant fiduciaries and TIAA, pose a larger hurdle for Haley.  As this Court has already noted, TIAA is correct that Haley has "provide[d] no road-map to the Court as to how it can make [these] determination[s] class-wide."  (Dkt. No. 76 at 27.)  And to repeat, this Court believes that (2) and (4) are potentially ripe for common proof.  But no matter:  Given the number of questions that can be resolved with common proof, the Court finds Haley has satisfied predominance.

This finding is bolstered by the superiority of a class action to address so many claims at once; TIAA does not argue that a class action is not a superior mechanism for adjudicating the class claims.  For good reason, as certification here will "achieve significant economies of time, effort and expense, and promote uniformity of decision."  *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130 (2d Cir. 2013).  Moreover, given the low-dollar value of many of these losses to individual participants, the claims may not even be litigated absent certification.  *See, e.g.*, *Sykes v. Mel Harris & Assocs., LLC*, 285 F.R.D. 279, 294 (S.D.N.Y. 2012), *aff'd sub nom. Sykes v. Mel Harris & Assocs., LLC*, 780 F.3d 70 (2d Cir. 2015).

Because Haley has satisfied predominance and superiority, certification is warranted under Rule 23(b)(3).

## III.    Motion to Amend

### A.    Legal Standard

To the extent that a proposed amendment would add new parties, the motion is governed by Rule 21, which provides that "the court may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21; *Otegbade v. New York City Admin. for Children Servs.*, 2015 WL

851631 at *2 (S.D.N.Y. Feb. 27, 2015).  "[T]he same standard of liberality" that applies to a motion to amend applies under Rule 21.  *Id.* at *2; *see also Sly Magazine, LLC v. Weider Publ'ns L.L.C.*, 241 F.R.D. 527, 532 (S.D.N.Y. 2007).  Following the issuance of a scheduling order governing amendments to the complaint, however, Rule 15's "lenient standard" must be balanced against Rule 16(b)'s requirement that the Court's scheduling order not be modified except upon a showing of good cause.  *Holmes v. Grubman*, 568 F.3d 329, 334–35 (2d Cir. 2009).  Good cause turns on a party's diligence, *id.* at 335, including whether such deadline can "reasonably be met," *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000).  Courts also consider whether adding a new party would prejudice the nonmoving party, a finding "particularly likely" after discovery and motions for summary judgment.  *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013).

### B.    Discussion

Haley seeks to amend the complaint, as well as the class certification motion, to add two new plaintiffs and class representatives, alleging that she only learned of their existence in February 2020.  (Dkt. No. 83 at 6.)  Their addition, Haley maintains, would address potential deficiencies in Haley's representation of the class:  (1) the affirmative defense of consent and ratification, unique to Haley due to her having taken out a fifth collateralized loan in September 2019 and raised for the first time in TIAA's amended answer; and (2) the "low dollar value" of Haley's loans which may have resulted in her paying less in aggregate for her loans.  (Dkt. No. 83 at 1–2.)

TIAA opposes the motion to amend, arguing that Haley cannot receive leave to amend due to her own conduct — taking out a fifth loan — and that she waited too long to amend, causing prejudice to TIAA.  It claims that Haley must show that she "(i) learned of 'new facts'

24

during discovery *and also* (ii) moved promptly to amend after those new facts were discovered."
(Dkt. No. 93 at 5 (quoting *Youngers v. Virtus Inv. Partners Inc.*, 2017 WL 5991800, at *6
(S.D.N.Y. Dec. 4, 2017)).)  The "new facts," TIAA contends, are that Haley's loans resulted in
her paying less in aggregate, the affirmative defense TIAA raised in its amended answer, and the
loan Haley took out in September 2019.  (Dkt. No. 93 at 5–8.)  Haley, however, alleges that the
"new facts" are the two new plaintiffs who signed retainer agreements in late February and early
March, 2020.[9]  (Dkt. No. 95 at 3.)  TIAA attempts to characterize Haley as having waited six
weeks between the first new client's signing of the retainer agreement and her seeking leave to
amend, but the timeline is not so.  (Dkt. No. 93 at 9.)  Instead, Haley's counsel began discussing
the case with the new plaintiffs in February 2020, signing retainer agreements with one on
February 24, 2020 and the other on March 5, 2020.  (Dkt. No. 95-1 ¶¶ 4, 6.)  Haley's counsel
emailed TIAA's counsel on March 19, 2020, informing them of the new plaintiffs, asking them
to stipulate to the new plaintiffs' joining the case, and setting forth opportunities for depositions
and additional class certification briefing restricted to the adequacy of the new plaintiffs.  (Dkt.
No. 95-1 ¶ 7.)  TIAA declined to so stipulate, and Haley moved to amend on April 1, 2020.

 The Court determines that Haley discovered sufficient "new facts" to merit amendment,
and promptly moved to amend, with a mere two-week delay in informing counsel about the new
plaintiffs and another two weeks before moving to amend.

 Amendment is particularly warranted given that courts seek to address any concerns with
a class representative's adequacy as expeditiously as possible.  *See, e.g.*, *Kinkead v. Humana at
Home, Inc.*, 330 F.R.D. 338, 350 (D. Conn. 2019) ("In the class action context, plaintiffs can

---

[9] Haley also appears to argue that a new affirmative defense in TIAA's amended pleading also
established new facts, but such defense is reasonably foreseeable, given Haley's actions, to a
diligent lawyer.

show sufficient diligence if they move to amend once they become aware of the 'need to fill a class representative gap.'" (quotation omitted)); *In re Gen. Motors LLC Ignition Switch Litig.*, 2017 WL 5504531, at *1 (S.D.N.Y. Nov. 15, 2017) ("In general, when a certified or putative class is left without adequate representation, courts hold that adding a new class representative is appropriate, even required, to protect class interests."); *In re Currency Conversion Fee Antitrust Litig.*, 2005 WL 3304605, at *3 (S.D.N.Y. 2005) ("The putative class members' rights in this litigation were protected as of the filing date of the complaint . . . should the class representative become inadequate, substitution of an adequate representative is appropriate to protect the interests of the class."). In the event that Haley proves to be an inadequate plaintiff due to the consent or ratification defense, the addition of the new plaintiffs will support "[t]he procedure favored by the Second Circuit," which requires that where the named plaintiff is no longer an adequate class representative of the class, "rather than decertifying the instant class on the ground that the named plaintiffs are no longer adequate representatives of the class, [the court should] afford[ ] plaintiffs' counsel a reasonable period of time for the substitution or intervention of a new class representative." *In re Initial Pub. Offering Sec. Litig.*, 2008 WL 2050781, at *2 (S.D.N.Y. May 13, 2008).

Still, however, Haley must show that amendment would not unduly prejudice TIAA.[10] TIAA argues that, coming at the tail end of fact discovery, due on May 29, 2020, and toward the end of the class certification briefing, such a motion will cause such prejudice. (Dkt. No. 55; Dkt. No. 93 at 10.) Relevant to this, TIAA argues, is that Haley sought to "jam as much work as possible into the final weeks of discovery," and that the amendment will force TIAA to re-

---

[10] TIAA also argues that amendment would be futile because certification is likely to fail. In light of the Court's conclusion that class certification succeeds, this argument is moot.

analyze the record, loan data, commission an additional expert report, and conduct additional

class certification briefing.  (Dkt. No. 93 at 10–11.)

Haley responds that adding two new plaintiffs is not unduly prejudicial.  For one, Haley

argues, she advances no new theory of the case, and the loans taken out by the two new plaintiffs

are identical to those taken by Haley in all characteristics except size, which, given the wide

variety of loans sizes in the class, is functionally immaterial to the prejudice analysis.  (Dkt. No.

95 at 5–6.)  This is particularly so because, as Haley points out, even TIAA's expert agrees that

at least one of Haley's loans was sufficiently large for TIAA's compensation to exceed what it

would have been in a non-collateralized loan program.  (Dkt. No. 95 at 6.)  Since the loans taken

out by the new plaintiffs were even larger, such a conclusion would not change, and the work of

TIAA's expert is arguably lessened.  (*Id.*)  Indeed, aside from stating that it will have to conduct

additional discovery, TIAA has made no showing regarding how such discovery will be more

than *de minimis*, as most of the relevant documents are in its control and it will have the

opportunity to depose both new class plaintiffs.  *See Duling v. Gristede's Operating Corp.*, 265

F.R.D. 91, 101 (S.D.N.Y. 2010) ("[T]he fact that an amendment will require a party to invest

additional resources in litigation is not sufficient grounds for its denial." (citing *Middle Atl. Utils.*

*Co. v. S.M.W. Dev. Corp., supra,* 392 F.2d 380, 386 (2d Cir. 1968))); *A.V. by Versace, Inc. v.*

*Gianni Versace S.p.A.*, 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (holding, because addition of

new parties would not raise unrelated factual claims, that "even if discovery were prolonged, the

adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant

denial of a motion to amend a pleading." (internal quotation marks omitted) (citing *United States*

*v. Continental Ill. Nat'l Bank & Trust Co.,* 889 F.2d 1248, 1255 (2d Cir. 1989))); *Block v. First*

*Blood Assocs.*, 988 F.2d 344, 351 (2d Cir. 1993) (allegations that an amendment will require the

expenditure of additional time, effort, or money do not constitute undue prejudice (citations omitted)).

The additional discovery required by adding two new plaintiffs — whom Haley attempted to add to the case over two months before the close of fact discovery — is insufficient, without more (such as allegations of bad faith), to render doing so unduly prejudicial.

Because Haley was diligent in seeking to add two new plaintiffs, and their addition to the case will not unduly prejudice TIAA, Haley's motion to amend her complaint and class certification motion to add the two additional named plaintiffs and class representatives is granted.

**IV.    Conclusion**

For the foregoing reasons, Haley's motion for class certification is GRANTED under Rule 23(b)(3), with Haley as class representative and the firms of Berger Montague PC and Schneider Wallace Cottrell Konecky LLP as class counsel.  Haley's motion to amend the complaint and class certification motion is also GRANTED.

The Clerk of Court is directed to close the motion at Docket Number 67 and 81.

SO ORDERED.

Dated: November 25, 2020
       New York, New York

_____
       J. PAUL OETKEN
     United States District Judge

28