UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELISSA HALEY, *individually and on behalf of all others similarly situated*,
            Plaintiff,

-v-

TEACHERS INSURANCE AND ANNUITY ASSOCIATION OF AMERICA,
            Defendant.

17-CV-855 (JPO)

OPINION AND ORDER

---

J. PAUL OETKEN, District Judge:

Plaintiff and class representative Melissa Haley filed a motion for partial summary judgment in this ERISA class action on November 24, 2020. (Dkt. No. 129.)[1] Defendant Teachers Insurance and Annuity Association of America ("TIAA" or "Defendant") cross-moved for full summary judgment on January 8, 2021. (Dkt. No. 141.) TIAA also moved to strike or preclude the opinions of Haley's expert. (Dkt. No. 126.) For the reasons that follow, the Court denies Haley's motion for summary judgment; grants in part and denies in part Defendant's motion; and denies Defendant's motion to strike as moot for purposes of the summary judgment motions.

**I.     Background**

The Court assumes familiarity with this case based on the Court's prior opinions addressing TIAA's motions to dismiss and Haley's motion for class certification. *See Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 337 F.R.D. 462, 466–468 (S.D.N.Y. 2020); *Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 377 F. Supp. 3d 250, 255–57 (S.D.N.Y. 2019); *Haley v.*

---

[1] Haley re-filed her briefing, so the operative briefing is at Docket Number 138.

1

*Teachers Ins. & Annuity Ass'n of Am.*, No. 17 Civ. 855, 2018 WL 1585673, at *1–2 (S.D.N.Y. Mar. 28, 2018).

## II.     Legal Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, i.e., that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

## III.     Plaintiff's Motion for Summary Judgment

Haley moves for summary judgment on Count V of her first amended complaint, alleging a violation of ERISA § 406(a)(1)(B). (Dkt. No. 138 at 1.) Her motion is flawed from the start.

Haley's briefing focuses exclusively on whether TIAA's loan plans are covered under the exemption in ERISA § 408(b)(1).  (Dkt. No. 138 at 2–10.)  But as this Court has previously explained, a claim under ERISA § 406(a)(1)(B) against a non-fiduciary transferee requires a showing of at least the following elements:

> 1) the fiduciary caused the plan to engage in a prohibited transaction as defined by § 406(a)(1);
> 2) the factual circumstances of the transaction, which are such that a § 408 exemption does not clearly apply;
> 3) in causing the transaction, the fiduciary knew or should have known the factual circumstances underlying the transaction that satisfied § 406(a)(1);
> 4) the non-fiduciary knew that the transferor is an ERISA fiduciary;
> 5) the non-fiduciary knew that the fiduciary caused the transaction with the knowledge of the underlying facts that bring the transaction within § 406(a)(1); and
> 6) the non-fiduciary knew or should have known the factual circumstances underlying the transaction that satisfied § 406(a)(1).

*Haley*, 377 F. Supp. 3d at 265–66.  Haley has not "provide[d] evidence on each element of [her] claim," as required.  *Cohen Lans LLP*, 2017 WL 477775, at *3.  Her motion for summary judgment is therefore denied.

**IV.     Defendant's Motion for Summary Judgment**

TIAA cross moves for summary judgment on all claims.[2]  It argues that: (1) its loans satisfy ERISA § 408(b)(1), requiring judgment on Haley's Section 406(a)(1)(B) claim; (2) its loans satisfy ERISA § 408(b)(2), requiring judgment on Haley's Section 406(a)(1)(C) claim; (3) its loans satisfy ERISA § 408(b)(17), requiring judgment on Haley's Section 406(a)(1)(D)

---

[2] Haley's amended complaint includes three counts against TIAA as an ERISA fiduciary, but this Court dismissed those claims without leave to replead on the basis that TIAA is not an ERISA fiduciary.  *See Haley*, 2018 WL 1585673, at *5–*8.  Haley acknowledged as much in the amended complaint but repeated these allegations to preserve her appeal rights.  (Dkt. No. 40 at 7 n.6.)

3

claim;³ and (4) Haley is not entitled to the money damages she seeks, requiring judgment on all her claims.

### A.     ERISA § 406(a)(1)(B) Claim

ERISA § 406(a)(1)(B) provides in relevant part that, "[e]xcept as provided in [§ 408],"

> A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
> ...
> (B) lending of money or other extension of credit between the plan and a party in interest.

29 U.S.C. § 1106(a)(1)(B).

Section 408(b)(1) excludes "[a]ny loans made by the plan to parties in interest who are participants or beneficiaries of the plan if such loans . . . (D) bear a reasonable rate of interest, and (E) are adequately secured."  29 U.S.C. § 1108(b)(1).

ERISA regulations specify that "a loan program containing a precondition designed to benefit a party in interest (other than the participant) is not afforded relief by section 408(b)(1)," and that such loan program "must be prudently established and administered for the exclusive purpose of providing benefits to participants and beneficiaries of the plan."  29 C.F.R. § 2550.408b-1(a)(3)(i).  The regulations further explain that a loan bears a "reasonable rate of interest if such loan provides the plan with a return commensurate with the interest rates charged by persons in the business of lending money for loans which would be made under similar circumstances."  29 C.F.R. § 2550.408b-1(e).  And a loan is considered adequately secured if the posted security is "so pledged to the plan that it may be sold, foreclosed upon, or otherwise disposed of upon default."  29 C.F.R. § 2550.408b-1(f).

---

³ TIAA contends in a footnote that this exemption also forecloses Haley's claim under ERISA § 406(a)(1)(B).  (Dkt. No. 142 at 23 n.12.)

4

Haley contends that TIAA's collateralized loan program violates these regulations for the following reasons: (1) the program's "exclusive purpose" is not to benefit participants because TIAA requires collateral to be deposited in TIAA's General Account; (2) TIAA, not the plans, receives the reasonable rate of interest on the loan and the plan only receives returns on the investment of the collateral; and (3) the collateral is not "pledged to the plan" but instead to TIAA, since loan proceeds are funded from TIAA's General Account.

### 1. Whether TIAA's loan program is administered for the "exclusive purpose" of providing benefits to borrowers

As a threshold matter, TIAA argues that the regulation's "exclusive purpose" language should be read in the context of ERISA § 404(a)(1)(A)(i), which uses the same language to describe fiduciary duties. Courts have read § 404(a)(1)(A)(i) to require a subjective test, including circumstantial evidence and reasonable inferences, to determine "whether a defendant was attempting to also satisfy [his] own desires and needs." *Hugler v. Byrnes*, 247 F. Supp. 3d 223, 230 (N.D.N.Y. 2017) (internal quotation marks and citation omitted); *see also In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 842 F. Supp. 2d 614, 649–50 (S.D.N.Y. 2012). Accordingly, TIAA contends that Haley has failed to provide any evidence that the subjective motivation behind TIAA's structuring of the loan program was to benefit itself. (Dkt. No. 142 at 8–10.)

But breach of fiduciary duty and prohibited transaction cases raise different considerations, and courts have treated them accordingly. "The transactions enumerated in § 406(a)(1) are per se violations of ERISA regardless of the motivation which initiated the transaction, the prudence of the transaction, or the absence of any harm arising from the transaction." *Reich v. Polera Bldg. Corp.*, No. 95 Civ. 3205, 1996 WL 67172, at *2 (S.D.N.Y. Feb. 15, 1996); *see also Gray v. Briggs*, 45 F. Supp. 2d 316, 326 (S.D.N.Y. 1999) ("Good faith is

5

not a defense to violations of this provision and liability must be imposed 'even where there is no taint of scandal, no hint of self-dealing, no trace of bad faith.'" (quoting *Lowen v. Tower Asset Management, Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987)). This Court determined in an earlier opinion that § 406(a)(1) does not require non-fiduciary defendants to know that a transaction violated ERISA. *Haley*, 377 F. Supp. 3d at 261–62.

TIAA next argues that since ERISA and its regulations require participant loans to be secured, *see* ERISA § 408(b)(1)(E), and contemplate "collateral" as one possible manner of doing so, *see* 29 C.F.R. § 2550.408b-1(d)(vi), the fact that TIAA uses collateralized loans is lawful. (Dkt. No. 142 at 10–12.) This misses the central point of Haley's argument. Her argument is not that collateral is an improper form of security; rather, it is that TIAA's loan program is structured such that the collateral is pledged to TIAA, *not* the plan, and paid out to TIAA in the event of default, running afoul of the "exclusive purpose" requirement. (Dkt. No. 155 at 15–17.) As Haley explains, TIAA also offers non-collateralized loans, which borrow from a participant's own account instead of requiring that security be held in TIAA's General Account. (*See, e.g.*, Dkt. Nos. 138-4, -5.) It is therefore of no moment for purposes of satisfying the "exclusive purpose" requirement that the regulations contemplate collateral as an option for securing a loan. Haley's primary contention is that the exclusive purpose of the loan program is not to benefit the plan participants because the collateral secures TIAA, not the participants. (Dkt. No. 155 at 15–17.) Defendant's response that requiring collateral to secure a loan is lawful does not address Haley's argument. TIAA has therefore failed to establish that there is no genuine issue of material fact that its loan program is covered under the ERISA § 801(b)(1) exemption.

### 2. Whether TIAA, not the plans, receives the interest on the loan

Haley contends that TIAA's loan program is not exempted under ERISA § 801(b)(1) because the loan does not provide a "reasonable rate of interest" for the plan. (Dkt. No. 138 at 9–10.) Rather, only TIAA receives the interest on the loan. (Dkt. No. 138 at 9.) Defendant counters that this is simply incorrect because the plan participants do receive interest. (Dkt. No. 142 at 12–13.) The Court agrees with Defendant.

It is undisputed that participants' plan accounts are guaranteed at least a three-percent rate of interest. (Dkt. No. 142 at 12; Dkt. No. 143 ¶ 67.) Haley argues, however, that this is not interest from the loan but interest from some of the earnings on the invested collateral. (Dkt. No. 155 at 12.) She claims that under the plain language of the relevant regulation, the returns received by plan participants *must* be from the loan interest. (Dkt. No. 155 at 12.)

The plain language of the relevant regulation, 29 C.F.R. § 2550.408b-1(e), that Haley points to states: "A loan will be considered to bear a reasonable rate of interest if such loan provides the plan with a return commensurate with the interest rates charged by persons in the business of lending money for loans which would be made under similar circumstances." Nothing in this provision requires that the interest provided to plan participants be from interest on the loans. Indeed, it simply requires that the loan provides the plan with a reasonable rate of interest. *See* 29 C.F.R. § 2550.408b-1(e).

### 3. Whether the collateral is not "pledged to the plan" but instead to TIAA

Haley finally contends that TIAA, not the plan, is secured because collateralized loans are funded from the TIAA General Account. (Dkt No. 138 at 10.). But she cites no authority, nor does she provide any explanation, as to why this arrangement would preclude TIAA's loan program from being exempted under ERISA § 801(b)(1). The Court concludes that this

7

argument is simply too undeveloped to be considered. *See, e.g.*, *In re Gen. Motors LLC Ignition Switch Litig.*, No. 18 Civ. 1019, 2021 WL 1415121, at *3 (S.D.N.Y. Apr. 14, 2021).

    **B.**    **ERISA § 406(a)(1)(C) Claim**

TIAA argues that Haley's ERISA § 406(a)(1)(C) claim — that TIAA received excessive compensation for its administration of the loans — fails as a matter of law because the ERISA § 801(b)(2) exemption applies. (Dkt. No. 142 at 18–22.) ERISA § 406(a)(1)(C) prohibits transactions that constitute a "furnishing of goods, services, or facilities between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(C).

Haley contends that TIAA has not established the reasonableness of its spread compensation because it has failed to show that its comparators' compensations were themselves reasonable and because compensations for non-collateralized loans are lower. (Dkt. No. 155 at 17.) She additionally argues that TIAA's asset-based structure, in which a participant who takes out a larger loan pays a higher servicing fee than a participant who takes out a smaller loan, even though the services provided to both participants is virtually identical, is invalid. (Dkt. No. 155 at 18–19.)

ERISA § 408(b)(2)(A) exempts transactions "[c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor." The applicable regulations explain that whether compensation is reasonable generally "depends on the particular facts and circumstances of each case," 29 C.F.R. § 2550.408c-2(b)(1), but the Department of Labor explained that reasonableness can be determined by comparing "the expected compensation with compensation that would be received by competing broker-dealers for similar investment services." 77 Fed. Reg. 5632, 5637 (Feb. 3, 2012).

TIAA has established that its compensation spread was reasonable as a matter of law. Its compensation spread is lower than or comparable to those of insurance companies that offer similar collateralized loan services. (Dkt. No. 147, Ex. 1; Dkt. No 143 ¶ 174.) Haley counters that providers of non-collateralized loan services offer *lower* fees, but it is undisputed that non-collateralized loans and collateralized loans are simply not comparable. (Dkt. No. 143 ¶ 129.)[4] Furthermore, as TIAA points out, even if there were a genuine dispute as to whether the non-collateralized loan services were appropriate comparators for collateralized loan services, Defendant has submitted sufficient evidence to demonstrate that TIAA received less compensation even when compared to service providers for non-collateralized loans. (Dkt. No. 147, Ex. 2 ¶ 17–18.) Haley also contends that TIAA must provide evidence that its comparators' compensation spreads were reasonable themselves. (Dkt. No. 155 at 17.) But that is not what is required by law.

Finally, Haley takes issues with Defendant's asset-based structure for determining service fees. She claims that because ERISA § 408(b)(2) requires compensation to be determined "in light of the services provided," service fees should not vary by the size of the loan. (Dkt. No. 155 at 18.) But Haley's support for this statement, a Department of Labor bulletin, does not actually state what Haley asserts. Rather, the Bulletin provides that in selecting a service provider, a plan fiduciary must elicit information to assess "the reasonableness of the fees charged in light of the services provided." DOL Field Assistance Bulletin 2002-3, available at

---

[4] In her counterstatement to Defendant's statement of material facts, Haley contends that the statement made by one of TIAA's experts that non-collateral and collateral loans are different types of loans is "speculative." (Dkt. No. 157 ¶ 129.) However, as Defendant correctly points out, this response is deficient because it is not "followed by citation to evidence which would be admissible," as required by Local Civil Rule 56.1(d). Thus, Defendant's material fact "will be deemed to be admitted for purposes of the motion under Local Civ. R. 56.1(c)." *Blackmon v. UNITEA*, No. 03 Civ. 9214, 2005 WL 2038482, at *2 (S.D.N.Y. Aug. 25, 2005).

9

https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/field-assistance-bulletins/2002-03.  Thus, this Bulletin is best construed to provide guidance for plan fiduciaries on the type of *information* it should gather when selecting service providers.  Furthermore, this Court has already rejected Haley's arguments that asset-based fee structures are a *per se* violation of ERISA.  (*See* Dkt. No. 28 at 19.)

TIAA's motion for summary judgment on the ERISA § 406(a)(1)(C) claim is therefore granted.

C.     **ERISA § 406(a)(1)(D) Claim**

Section 406(a)(1)(D) prohibits transactions that constitute a "transfer to, or use by or for the benefit of a party in interest, of any assets of the plan." 29 U.S.C. § 1106(a)(1)(D).  Haley's basis for the ERISA § 406(a)(1)(D) claim is TIAA's requirement to post collateral into the General TIIA account.  (Dkt. No. 155 at 21.)  TIAA argues that any transfers in the loan program are exempt under ERISA § 408(b)(17), which provides that the prohibitions in § 406 do not apply to transactions between a plan and a party in interest "if in connection with such transaction the plan receives no less, nor pays no more, than adequate consideration."  The term "adequate consideration" is defined in the statute for assets other than a security as follows:  "the fair market value of the asset as determined in good faith by a fiduciary or fiduciaries in accordance with regulations prescribed by the Secretary." 28 U.S.C. § 1108(b)(17)(B)(ii).

TIAA contends that because the crediting rate paid to plans is reasonable, it necessarily satisfies the "adequate consideration" requirement. (Dkt. No. 142 at 22–23.)  Haley counters that Defendant has not established that the exemption even applies because TIAA's transfer of collateral is not a "sale or exchange transaction clearly contemplated by the very terms of the exemption." (Dkt. No. 155 at 20.)  Further, Haley argues that TIAA is functioning as an investment manager, not a party in interest who solely provides services to the plan, as is

10

required to be covered under the exemption (Dkt. No. 155 at 21–22), and that it is unclear what constitutes "adequate consideration" (Dkt. No. 155 at 22).

The Court concludes that TIAA has failed to establish as a matter of law that the crediting rate paid to the plan constitutes "adequate consideration."  Defendant points to no case law or regulation that equates "adequate consideration" to the "reasonableness" requirement under ERISA § 406(a)(1)(C); rather, it relies on an article in a law journal by an attorney covering changes to ERISA by the Pension Protection Act of 2006.  See Frank A. Daniele, *Pension Protection Act of 2006 Makes Major Changes to ERISA Fiduciary Requirements*, Corporate Counsel Bus. J. (Nov. 1, 2006).  (Dkt. No. 142 at 22 n.11.)

And indeed, related regulations suggest that the requirements to satisfy adequate consideration and reasonableness may be different.  The definition of "adequate consideration" under § 408(b)(17) is equivalent verbatim to the definition of "adequate consideration" under 29 U.S.C. § 1002(18)(B).  And in 1988 (prior to the enactment of § 408(b)(17)), the Department of Labor proposed a regulation to elaborate on this definition.  This regulation states:

> First, the value assigned to an asset must reflect its fair market value. . . . Second, the value assigned to an asset must be the product of a determination made by the fiduciary in good faith. . . . The Department will consider that a fiduciary has determined adequate consideration in accordance with section 3(18)(B) of the Act . . . only if both of these requirements are satisfied.

*See* Proposed Regulation Relating to the Definition of Adequate Consideration, 53 Fed. Reg. 17,632, 17,633 (May 17, 1988) (to be codified at 29 C.F.R. § 2510-3(18)(b)) ("Proposed Regulation").  Although proposed regulations do not have legal effect, *Sweet v. Sheahan*, 235 F.3d 80, 87 (2d Cir. 2000), the Second Circuit has relied on this proposed definition of adequate consideration in at least one decision.  *See Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006).

11

Defendant has not provided any authority establishing that the dual requirements of "fair market value" and "good faith" are met if the reasonableness requirement is met. Its motion for summary judgment on the ERISA § 406(a)(1)(D) claim is therefore denied.

### D.     Equitable Relief Under ERISA § 502(a)(3)

TIAA argues that because Haley is not entitled to the relief she seeks – monetary damages – this provides an alternative ground for awarding summary judgment on all her claims. (*See* Dkt. No. 142 at 23–26.) Under ERISA § 502(a)(3), TIIA claims, only the equitable remedies of disgorgement and restitution are available. (Dkt. No. 142 at 23–26.)

TIAA has already put forth this argument twice in its motion to dismiss the complaint (*see* Dkt. No. 21 at 20–22) and in its motion to dismiss the first amended complaint (Dkt. No. 39 22–24.) The Court concluded in two prior decisions that disgorgement of TIAA's profits from its loan program is an appropriate equitable remedy under ERISA § 502(a)(3). For the reasons stated in the Court's prior opinions, *see Haley* 377 F. Supp. 3d at 271–72; *Haley*, 2018 WL 1585673, at *8–*9, the Court finds this argument to be without merit.

## V.     Defendant's Motion to Strike

TIAA moves to strike or preclude the opinions of Haley's expert, Dr. Ethan Kra. (Dkt. No. 126.) It argues that Dr. Kra's opinions are deficient for several reasons, including that Dr. Kra (1) provides legal arguments and legal conclusions, which are inappropriate topics of expert testimony; (2) asserts facts that amount to no more than speculation; and (3) simply repeats assumptions that counsel requested that he make. (Dkt. No. 127 at 4–13.) TIAA additionally argues that Dr. Kra failed to comply with the disclosure requirements of Federal Rule of Civil Procedure 26(a)(2)(B). (Dkt. No. 127 at 13–18.)

Because the Court does not rely on Dr. Kra's expert reports and opinions to decide the summary judgment motions, Defendant's motion to strike is denied as moot. However, the

Court reserves decision on the admissibility of Dr. Kra's opinions should this case proceed to trial.

## VI. Conclusion

For the foregoing reasons, it is hereby ORDERED that:

- Plaintiff's motion for summary judgment is DENIED;
- Defendant's motion for summary judgment on the ERISA § 406(a)(1)(B) claim is DENIED;
- Defendants motion for summary judgment on the ERISA § 406(a)(1)(C) claim is GRANTED;
- Defendant's motion for summary judgment on the ERISA § 406(a)(1)(D) claim is DENIED; and
- Defendant's motion to strike Plaintiff's expert is DENIED as moot for purposes of the summary judgment motion.

The Clerk of Court is directed to close the motion at Docket Numbers 126 and 141.

SO ORDERED.

Dated: September 30, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge