UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MELISSA HALEY, *individually and on behalf of all others similarly situated*,
　　　　　　　　　　　　　　　Plaintiffs,

-v-

TEACHERS INSURANCE AND
ANNUITY ASSOCIATION,
　　　　　　　　　　　　　　　Defendant.

17-CV-855 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

　　This is a putative class action brought by Melissa Haley against Teachers Insurance and Annuity Association of America ("TIAA") alleging that TIAA engaged in prohibited transactions with the Washington University Retirement Savings Plan and other retirement plans in violation of section 406 of the Employee Retirement Security Act of 1974 ("ERISA"). This Court previously granted class certification under Federal Rule of Civil Procedure 23(b)(3). The Second Circuit vacated and remanded, instructing the Court to consider whether certain ERISA affirmative defenses raised by TIAA would make class treatment unwarranted because individual issues raised by the defenses predominate over those common to the class. Following further briefing by the parties and reconsideration of the issues in light of the Second Circuit's opinion, the Court denies Plaintiff's motion for class certification.

**I.　Background**

　　The Court assumes familiarity with this case from the Court's prior opinions addressing Haley's motion for class certification, *see Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 337 F.R.D. 462 (S.D.N.Y. 2020), and TIAA's motions to dismiss the complaint, *see Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 377 F. Supp. 3d 250 (S.D.N.Y. 2019); *Haley v. Teachers*

1

*Ins. & Annuity Ass'n of Am.*, 2018 WL 1585673 (S.D.N.Y. Mar. 28, 2018), as well as the Second Circuit's opinion vacating and remanding on class certification, *see Haley v. Teachers Ins. & Annuity Ass'n of Am.*, 54 F.4th 115 (2d Cir. 2022).

### A.   Factual Background

Plaintiff Melissa Haley is an employee of Washington University ("WashU") and a participant in the Washington University Retirement Savings Plan (the "Plan"), an employee benefit plan regulated by ERISA, 29 U.S.C. § 1106. (*See* ECF No. 35 ("AC") ¶¶ 1, 13.) WashU was the official Plan Administrator for Haley's Plan. (AC ¶ 13.) The Plan, like many other retirement plans, contracted with TIAA to offer Plan participants the chance to take out a loan against their savings. (*See* AC ¶¶ 21, 45.)

TIAA structured the loans in a manner alleged to depart from industry practice. Typically, loans like this are structured so that a participant lends money to itself as beneficiary, avoiding fees. (AC ¶¶ 9, 9(a), 9(b).) For retirement loans administered by TIAA, participants were required to "borrow from [TIAA's] general account rather than from the participant's own account." (AC ¶ 24.) The amount transferred to a general account would serve as the collateral securing the Plan participant's loan. (AC ¶ 41.) The TIAA loans required participants to "transfer 110% of the amount of the loan from the participant's plan account . . . to one of [TIAA's] general account products, which pay a fixed rate of interest." (AC ¶ 24.)

TIAA offered loans to many plans which were governed by separate contracts, administered by separate ERISA fiduciaries, and had different terms for repayment. Additionally, TIAA's conduct spans time and space: It made loans across ten years and throughout the United States. And the terms of these loans were not identical. Of particular importance, uncontested evidence reveals that there were multiple types of TIAA loans with different terms, and depending on type, no transfer occurred for some transactions. For group

supplemental retirement annuity loans, if a participant already has 110% of the requested loan value in a TIAA annuity, no transfer occurs. (ECF No. 76 at 4 – 5.) If not, then additional collateral would need to be transferred from the participant's other investments to bring the participant's investment in a TIAA annuity up to that threshold. (*Id.*) A participant could not access or transfer the collateral until they had made loan repayments. (*Id.*)

TIAA profits from this because a participant is required to repay the loan, with interest, to TIAA's general account, which also earns the interest paid on the loan. (*See* AC ¶ 26.) Put differently, for the TIAA loans, a participant does not receive the full amount of interest they earned on their collateral at the time of repayment, because some of it is retained by TIAA as compensation for administering the loan. (*See* AC ¶¶ 5, 26, 28, 39 – 40.)

**B.     Procedural Background**

On February 3, 2017, Haley filed this putative class action against TIAA, claiming its administration of the retirement loans violated section 406 of ERISA. (ECF No. 1.) Plaintiff alleged both that TIAA was liable as an ERISA fiduciary and that TIAA was liable as a nonfiduciary for breaches by the Plan Administrator, WashU. (ECF No. 5 ¶¶ 48 – 80.) On March 28, 2018, the Court granted TIAA's motion to dismiss in part, holding that Haley had not plausibly alleged that TIAA was an ERISA fiduciary. *Haley*, 2018 WL 1585673, at *1. The Court sustained in part Plaintiff's claims against TIAA as a non-fiduciary, permitting leave to amend. Evaluating the Amended Complaint, the Court again denied TIAA's Rule 12(b) motions on March 27, 2019. *Haley*, 377 F. Supp. at 255.

Haley then moved for class certification, seeking certification of mandatory classes under Federal Rules of Civil Procedure 23(b)(1) and 23(b)(2) as well as an opt-out class under Rule 23(b)(3). The Court first denied class certification under 23(b)(1) and (b)(2), but it certified a Rule 23(b)(3) class. *See Haley*, 337 F.R.D. 474 – 76. The class consisted of:

3

> All individual account retirement plans governed by ERISA (the "Plans") for which, at any time from February 5, 2011 through the date of judgment: (a) Teachers Insurance and Annuity Association ("TIAA") provided services that included collateralized loans for Plan participants (the "Borrowing Participants"); (b) TIAA required the Borrowing Participants to provide collateral in the amount of 110% of the principal balance of the Loans, which collateral TIAA invested in its general account; and (c) (i) TIAA charged Loan interest at a rate in excess of the interest rate credited to Borrowing Participants on the invested collateral; (ii) TIAA kept for or paid to itself amounts earned on the amount of the invested collateral, equal to the principal amount of the outstanding Loans, that were in excess of the amounts credited to Borrowing Participants; (iii) the amounts that TIAA credited to Borrowing Participants on the invested collateral in excess of the principal amount of the Loan would have received had the collateral remained in the Borrowing Participants' designated investment options; and/or (iv) TIAA caused loss to the Participant Borrowers and the Plans.

*Haley*, 54 F.4th at 119 n. 5. The class certified by the Court included almost one million individual loan transactions and approximately 8,000 plans that engaged TIAA's services during the class period. (*See* ECF No. 182 – 183 ("Def. Supp. Brief" or "DSB") at 8.)

The Court held the predominance requirement to be satisfied because, though a non-fiduciary itself, TIAA's collateralized loan program had the same *result* across all plans, participants, loans, and transactions, since interest due on the TIAA loans exceeded the borrowers' return on invested capital, even if there were differences in the loans offered. (*See, e.g.*, ECF No. 68 at 9.) The Court did not consider whether certain affirmative defenses under ERISA impacted predominance. *Haley*, 337 F.R.D. at 476.

On December 22, 2022, the Second Circuit vacated and remanded, holding that this Court erred in failing to consider individual issues generated by the section 408 statutory defenses in its predominance analysis in addition to evaluating whether the elements of a plaintiff's section 406 claims alone raise such issues. (ECF No. 173.) Remanding the case, the Court of Appeals specifically noted that that "a complete assessment of predominance demands that a district court

'consider *all* factual or legal issues' and classify them as subject either to common or individual proof," including in this analysis "any affirmative defenses, such as the § 408 exemptions." *Haley*, 54 F.4th at 121 – 22.

On remand, this Court directed the parties to file supplemental briefs addressing the Second Circuit's decision and denied Plaintiff's motion to reopen discovery. (ECF No. 177.) On March 10, 2023, Plaintiff moved for certification of substantially the same class =again under Rule 23(b)(3) and again requested supplemental discovery if certification were to be denied. (ECF No. 181 – 182 ("Pl. Supp. Brief" or "PSB") at 17 – 18.) On March 31, 2023, TIAA filed its supplemental brief opposing certification and further discovery. (DSB at 1.)

## II.     Legal Standards

### A.     Non-Fiduciary Section 406(a) Liability

While section 406 is most often asserted against actual ERISA *fiduciaries*, the Supreme Court has recognized a parallel cause of action against certain non-fiduciary defendants within strict limitations. A plaintiff suing a non-fiduciary under section 406 is required to prove five elements: that (1) an actual plan fiduciary caused the challenged transaction to occur; (2) the fiduciary did so with full knowledge of the relevant facts indicating that the transaction was prohibited; (3) the defendant knew that the individual who caused the transaction is an ERISA fiduciary; and (4) the defendant knew that the fiduciary caused the transaction with the knowledge of the relevant facts. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (recognizing non-fiduciary liability under ERISA and explaining requirements to state a claim).

"ERISA § 406(a)(1) . . . supplements the fiduciary's general duty of loyalty to the plan's beneficiaries . . . by categorically barring certain transactions deemed 'likely to injure the pension plan.'" *Id.* at 241 – 42 (quoting *Comm'r v. Keystone Consl. Inds., Inc.*, 508 U.S. 152,

5

160 (1993)). Section 406(a)(1) is understood to be purposefully overbroad, providing that a fiduciary shall not enter any transactions with a third party if that fiduciary knows the transaction would be a sale between the plan and a "party at interest." 29 U.S.C. § 1106(a)(1)(A). And "Congress defined 'party in interest' to encompass those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries." *Harris*, 503 U.S. at 241. Due to the breadth of the provision, the Supreme Court and Second Circuit have repeatedly emphasized that the thrust of liability lies not with section 406(a)'s categorical prohibition on transactions with "interested parties," but with a court's assessment of the applicability of any of ERISA section 408's "statutory and regulatory exemptions," which permit a wider range of transactions by plan fiduciaries and non-fiduciaries than section 406 would otherwise permit. *See id.* at 247 – 49.

B.  **Federal Rule 23(b)(3)**[1]

Certification of a Rule 23(b)(3) class is proper only if "questions of law or fact common to the class members *predominate* over any questions affecting only individual members, and . . . a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). The Supreme Court recognizes common questions in cases where all class members' "claims . . . depend upon a common contention . . . capable of class-wide resolution—which means the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). A "complete assessment of predominance demands that a district court 'consider *all* factual or legal issues' and classify them as subject either to common or individual proof." *Haley*, 54 F.4th at 121 (quoting *Myers v. Hertz*

---

[1] Like the Second Circuit, this Court need only consider the predominance issue on remand to comply with the circuit's instructions for reasons explained below. *See Haley*, 54 F.4th at 121.

6

*Corp.*, 623 F.3d 537, 550 (2d Cir. 2010) (emphasis in original)). And as the Second Circuit has made clear, "this exercise includes any affirmative defenses, such as the [ERISA] § 408 exceptions." *Id.* at 121–22 (citing, *inter alia*, *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 619 (2d Cir. 2006) (explaining that section 408 defenses negate an element).

Rather than "take the plaintiff's word that no material differences exist" in a class, "district courts themselves must undertake a considered analysis" of the elements of the claims *and* defenses to determine which, if any, are amenable to classwide proof. *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 97 (2d Cir. 2018). Moreover, a court must perform such considered analysis for both steps of the inquiry, which are "satisfied '*if* [1] resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and [2] if these particular issues are more substantial than the issues subject only to individualized proof." *Myers*, 624 F.3d at 547.

### III. Discussion

To assess whether common questions predominate in an ERISA case, a "[c]ourt must begin with the terms of the relevant plans, to determine if the 'essential elements of the cause of action' are common throughout the class." *In re Aetna UCR Litig.*, 2018 WL 10419839, at *12 (D.N.J. June 30, 2019) (quoting *Dukes*, 564 U.S. at 350). TIAA argues that two statutory exemptions in section 408 — the "adequate consideration" defense, *see* § 408(b)(1), and the "participant loan program" defense, *see* § 408(b)(1) — raise significant individualized issues and defeat predominance. (DSB at 1.) Haley urges re-certification of substantially the same class on remand, arguing that the section 408 defenses at issue can be resolved on a classwide basis. (*See* ECF No. 180 ("Plaintiff's Supp. Brief" or "PSB") at 3 – 5.) For that to be true, Haley must establish that the two section 408 defenses at issue are amenable to general, class-wide proof.

7

The Second Circuit has clarified that common issues, such as liability, "may be certified, consistent with Rule 23, even where other issues—such as damages—do not lend themselves to classwide proof." *Johnson v. Nextel Commc'ns, Inc.*, 780 F.3d 128, 138 (2d Cir. 2015). While affirmative defenses that apply to the claims of some class members but not others are certainly individual rather than common issues, even if they "affect different class members differently," that fact does not alone "compel a finding that individual issues predominate over common ones." *Id.* (quoting *Augustin v. Jablonsky*, 461 F.3d 219, 227 (2d Cir. 2006)). That is especially the case where, as here, the proffered affirmative defenses go so fundamentally to an element of liability that they, in effect, determine liability. *See Myers*, 624 F.3d at 551 (recognizing that the existence of a non-common defense is particularly likely to negate predominance when that defense is a "mirror image" of an element). For example, if a beneficiary received adequate consideration in exchange for a loan transaction involving an interested party, then, within the language of section 406, that beneficiary is not "likely to be injured," and they lack a claim.

When plaintiffs sue under section 406, the key questions often driving the litigation are, counterintuitively, not contained in 406 itself. Those questions are the exemption defenses recognized under section 408. Section 406 broadly sweeps in wide swaths of transactions; section 408 then protects certain otherwise covered transactions. A plain reading of "[s]ection 406(a)'s broad language would ban most transactions involving service providers, like TIAA. [So] § 406(a) is expressly limited by § 408, which authorizes the Secretary of Labor to exempt certain transactions so long as they are in the 'interests of the plan's participants and beneficiaries.'" *Haley*, 54 F.4th at 120.

A.   Section 408(b)(17) Adequate Consideration Defense

Section 408(b)(17) permits transactions that otherwise would be prohibited by section 406 as long as the plan pays no more and receives no less than "adequate consideration." 29

8

U.S.C. § 1108(b)(17)(A).  When an ERISA defendant invokes the adequate consideration defense, the inquiry tends to become individualized and contextual because "ERISA defines 'adequate consideration' as 'the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with [Department of Labor] regulations . . . ." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (internal citations omitted).

Thus, "the definition of adequate consideration has two distinct parts.  First, there is the 'fair market value' part, then there is the 'as determined in good faith by the trustee' part," though these two requirements "are often intertwined." *Id.* (quoting *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 436 (6th Cir. 2002)).  In this circuit, both the "fair market value" and "good faith" components of the inquiry are "expressly focused on the [context-specific] *conduct* of the [defendant]." *Id.* (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) (emphasis in original).  "The focal point of our inquiry under ERISA['s adequate consideration defense] is not whether a [defendant] took adequate notes of its investigation, but whether it acted with the prudence required . . . under the prevailing circumstances at the time of the transaction." *Id.* at 620 (citing 29 U.S.C. § 1104(a)(1)(B)).  In sum, "[t]here is no rule that clearly defines what consideration is 'adequate'; it is instead a standard that takes into account whether the [defendant] exercised 'good faith' in approving the amount the plan pays or receives," while focusing on "the conduct" of a fiduciary. *Haley,* 54 F.4th at 122.

As a threshold matter, a court must ask "whether [the defendant] 'at the time [it] engaged in the challenged transactions employed the appropriate methods to investigate the merits of the investment and to structure the investment." *Id.* (quoting *Katsaros v. Cody*, 744 F.3d 270, 279 (2d Cir. 1984)).  To assess good faith, a court must identify some "area where [the defendant]

9

was ill-informed" about the market for a transaction, or "identify . . . flaws that [the defendant] should have detected in the assumptions or methodologies . . . used to determine . . . fair market value." *Id.* at 621. Each component of this raises questions that can be answered only by individualized proof, which will necessarily be geographically, temporally, economically, and methodologically different rather than common.

Even if the record bore out the Plaintiff's contention that all plans in the class share a common "defect" in that TIAA engaged in some conduct common to the class, the underlying differences among the various plans, loans, and transactions raised by assessing the adequacy of consideration in many thousands of transactions would still preclude a finding of predominance. Courts confront this problem frequently in products liability class actions, which are illustrative. In those cases, courts recognize that the fact that "these products . . . [all] share the same defects" cannot, alone, satisfy predominance and that Rule 23 is far more readily satisfied if classes proceed on a "product-by-product" basis. *See Benner v. Becton Dickinson & Co.*, 214 F.R.D. 157, 166 (S.D.N.Y. 2003); *cf. Brown v. Nationwide Life Ins. Co.*, 2019 WL 4543538, at *7 (E.D. Ohio Sept. 19, 2019) (analogizing ERISA action with multiple loan structures and plans in decertifying civil rights class in which one plaintiff challenged different policies on sole basis of "common injury"). In this context, Haley bears "the burden of showing that" the plans in the proposed class are not "materially different." *See Kaczmarek v. Int'l Bus. Machines Corp.*, 186 F.R.D. 307, 312 (S.D.N.Y. 1999) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 – 18 (D.C. Cir. 1986)). But Haley fails to substantiate her assertions of common questions that predominate. This precludes certification because "Rule 23 does not set out a mere pleading standard"; it requires Haley to "prove that there are *in fact* sufficiently . . . common questions of law[] or fact." *Dukes*, 564 U.S. at 350 (emphasis in original).

The adequacy-of-consideration defense would fracture the class with individual issues. As in *Johnson*, a class-wide assessment of this question "will require individualized inquiries into questions such as: What information was provided to each [beneficiary] about [their ERISA plan]? What information was provided with respect to each [beneficiary's] option not to participate in [the plan]? What, if any, advice did [relevant] attorneys give to each [class member] regarding" comparisons of this ERISA plan to others, and to what extend did the Defendant — which lacked any fiduciary relationship with the beneficiaries in this case — have knowledge regarding each of these issues, and when. *Id.* Here, as in *Johnson*, the individual questions raised by the defenses "are not collateral issues" but rather "go to the heart of defendants' liability for each class member's alleged injury." *Id.*

The common issues that Plaintiff identifies as satisfying predominance are insufficient to overcome the individual issues raised by section 408(b)(17). In *Johnson*, the Second Circuit examined similar arguments to those raised here by Plaintiff. Like the *Johnson* plaintiffs, Haley essentially rests certification on the predominance of the common issue of TIAA's "role in the negotiation and execution of the [ERISA plans] is . . . a piece of every class member's claim." *Id.* at 147. Comparing the virtually identical common and individual issues highlighted by the parties in *Johnson*, the Second Circuit suggested that when a "single bellwether trial . . . [employing] special interrogatories would have the same consequence as trying common issues on a classwide basis through its collateral estoppel effects," there can be no proper justification for class certification because there would be "no advantage" to class treatment. *Id.* Here, a bellwether trial on the affirmative defenses would, if TIAA were found liable, have the same effect as a class. Plaintiff suggests no other benefit to class treatment to an individual trial under modern collateral estoppel rules. Rather, it is clear that "differences in fees, [plan] structure, and

11

assignment of responsibility among the many plans negate[s] the possibility of common answers to [any major] issues." *Chavez v. Plan Benefit Servs., Inc.*, 957 F.3d 542, 548 (5th Cir. 2020).

Additional considerations confirm the lack of predominance. The Second Circuit has avoided rule-like formulations of the Rule 23(b)(3) factors, but it has embraced the guidepost that it would be "primarily when there are significant individualized questions going to liability that the need for individualized assessments of damages is enough to preclude 23(b)(3) certification." *Johnson*, 780 F.3d at 138 (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1260 (11th Cir. 2004)). The court further emphasizes that it is not just about damage assessments; rather, if a case involves "individual *liability* issues," those issues will frequently "predominate over common ones even without considering the individual issues concerning damages." *Id.* at 139 n. 11. Here, it is beyond dispute that the myriad individual issues implicated by the adequate consideration defense go to liability, creating the most serious obstacles to certification.

Any adjudication of the adequate consideration defense will raise a series of "highly context specific inquir[ies]," especially given that the putatively aggregated ERISA plans "differed substantially" from each other across time, space, value, and jurisdiction. *Glatt v. Fox Searchlight Pictures, Inc.*, 811 F.3d 528, 539 (2d Cir. 2016). As such, the "plethora of diverse contractual standards involved in this case" would result in "highly individualized inquiries." *Aetna*, 2018 WL 10419839, at *19. Determining the adequacy of consideration for each transaction, concerning a variety of ERISA plans, loans of differing amounts and differing time periods, and localized or regional assessments of prevailing interest rates for similar transactions in space and time — all recognized on appeal as being required for the Court to evaluate this defense, *see Haley*, 54 F.4th at 123 — swamp common issues.

Plaintiff also fails to respond to TIAA's evidence showing that, at minimum, some covered loans involved transfers, while others did not (and so their beneficiaries suffered no injury). (DSB at 9 n. 10 – 12.) Further, no centralized records exist differentiating transfer and non-transfer loan accounts, requiring individual examination of all 8,000 plans. (*Id.*) This failure is especially glaring in light of the lack of any development of what these plans actually say, save Haley's threadbare assertions that all plans were governed by terms identical, or sufficiently similar, to Haley's WashU Plan. (*See* PSB at 1, 6 – 7, 8, 13.) But there is no evidence in the record to permit that inference because the only plan in the record is Haley's. Haley fails the "require[ment of] proof of written plan documents" showing core terms remained "constant" across the class, which some courts additionally recognize as an independent reason to deny certification. *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 457 (11th Cir. 1996).

Haley's final attempt to show that the adequacy of consideration can be determined via generalized evidence on a classwide basis is her proposal of a mean interest rate formula based on certain averages or "targets" of interest and crediting rates across the nearly one million transactions and approximately 8,000 plans which would supposedly indicate inadequate consideration. (PSB at 3, 7, 9, 13.)

But this showing is insufficient. In *Walmart v. Dukes*, as here, the plaintiffs attempted to rely on "statistical evidence about pay and promotion disparities between men and women at the company," a "form[] of proof" directly parallel to Plaintiff's averaging of plan value throughout the class and market rather than based on proof of harm to each plan. 564 U.S. at 346. The impermissible *Dukes* averages represented a number that there is no evidence that any actual class member was paid. Haley's deployment of such statistical averages, rather than actual identification of common issues, amounts to an impermissible attempt at "trial by formula,"

13

prohibited by both Rule 23 and the Due Process Clause. *See id.* at 367. As in *Dukes,* Plaintiff here seeks to rely on a statistical average of loans and rates, which may *or may not* represent the actual amounts anyone received and paid, to paper over the "varied nature of the terms" present in each plan which otherwise "pose[] insurmountable odds against class certification." *Aetna*, 2018 WL 10419839, at *14. Plaintiff claims that "evidence common to all plans establishes that Class plan participants paid an average of 4.66% to receive a 1.66% return." (PSB at 3.) Yet this statement tells the Court nothing important about the class because this evidence does not establish that any class member in particular paid 4.66% or received 1.66% in return. The evidence shows that some paid more, and some less, while some received more, and some less. The averages are probative of the parameters of the statistical sample, not common traits within it.

      **B.**      **Section 408(b)(1) Reasonable Rate and Adequately Secured Defense**

Section 408(b)(1) exempts loans from liability under section 406 provided that they are made in accordance with "specific provisions" of the plan document, "bear a reasonable rate of interest," and are "adequately secured." 29 U.S.C. § 1108(b)(1). However, the Court need not reach the issue of whether this defense also defeats predominance because the individualized issues raised by the adequate consideration defense are sufficient alone to defeat predominance.

      **C.**      **Subclasses; Leave for Additional Discovery**

Plaintiff requests leave to seek certification under Rule 23(c)(5) with subclasses to account for differences within the class that would otherwise defeat predominance. (*See* PSB at 18 – 19.) The Court denies this request. There is no reasonable justification for Plaintiff's failure to brief subclasses on *this* motion, if not in the initial class certification briefing. The Second Circuit took pains to recognize that "district courts have various 'management tools' at their disposal," which might permit certification despite the individual issues raised by the

defenses. *Haley*, 54 F.4th at 123 n. 43. Indeed, the court recognized that this case could be ripe for class treatment using tools permitting courts to "identify[] subclasses of 'more homogenous groups defined by common legal or factual questions.'" *Id.* (quoting *In re Petrobras Sec.*, 862 F.3d 250, 276 (2d Cir. 2017)); *see also* Fed R. Civ. P. 23(c)(5).

Plaintiff did not avail herself of this opportunity. Instead, in her supplement briefing, Plaintiff again sought a class definition identical to that which the Second Circuit vacated, and Plaintiff relies on a virtually indistinguishable set of arguments as before, even though the Second Circuit has rejected them. *See id.* She has made no showing that subclasses would adequately address the predominance issues identified by the Second Circuit. As TIAA puts it, "[e]nough is enough. Plaintiff had 20 pages to address issues relevant to the Second Circuit's opinion, which identified subclasses as an available tool." (DSB at 20.) Given that context, the Court agrees with Defendants: Haley is not entitled to yet "another do-over." (*Id.*)

While it may or may not have been possible to use subclasses to overcome otherwise fatal predominance problems posed by the size and scope of the class in this case, Plaintiff failed to raise this argument or to conduct discovery to facilitate it, despite having the opportunity to do so for five years. Plaintiff's request for leave to move again on these issues is thus denied.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for class certification is DENIED.

SO ORDERED.

Dated: June 27, 2023
New York, New York

_____
J. PAUL OETKEN
United States District Judge